1  Elayna J. Youchah, Bar No. 5837
   youchahe@jacksonlewis.com
2  JACKSON LEWIS LLP
   3800 Howard Hughes Parkway, Suite 600
3  Las Vegas, Nevada 89169
   Tel: (702) 921-2460
4  Fax: (702) 921-2461

5  *Attorneys for Defendant*
   *Nevada Property 1, LLC*

6

                    UNITED STATES DISTRICT COURT
7
                          DISTRICT OF NEVADA
8

9  DARLENE LEWIS, on behalf of herself and     )  Case No.: 2:12-cv-01564-LRH-GWF
   all others similarly situated,               )
                                                )
10                Plaintiff,                     )  **DEFENDANT NEVADA PROPERTY 1, LLC'S**
                                                )  **MOTION TO DISMISS PURSUANT TO THE**
11         vs.                                   )  ***COLORADO RIVER* DOCTRINE;**
                                                )  **MEMORANDUM OF POINTS AND**
12 NEVADA PROPERTY 1, LLC, d/b/a the            )  **AUTHORITIES IN SUPPORT OF ITS**
   Cosmopolitan of Las Vegas; and DOES 1        )  **MOTION TO DISMISS**
13 through 50, inclusive,                        )
                                                )
14                Defendants.                    )
                                                )
15

16      Defendant Nevada Property 1, LLC ("Defendant") will move and hereby does move this court,

17 pursuant to Federal Rule of Civil Procedure 12(b)(3), for an order dismissing the instant action in its

18 entirety based upon the *Colorado River* doctrine, a generally recognized doctrine of federal comity,

19 efficiency and conservation of resources permitting this Court to decline jurisdiction over claims

20 involving the same parties already filed in state court. *See Colorado River Water Conservation Dist. v.*

21 *United States*, 424 U.S. 800, 813 (1976); *St. Paul Fire & Marine Ins. Co. v. Vedatech Int'l, Inc.*, 245

22 Fed.Appx. 588, 591 (9th Cir. 2007).

23      Specifically, the Court has the authority to—and should—dismiss Plaintiff's instant action as a

24 result of a nearly identical earlier-filed consolidated action captioned *Melodee Megia v. The*

25 *Cosmopolitan Resort and Casino*, in the District Court for Clark County, Nevada, Case Number A-12-

26 661665-C (the "*Megia* action"). If the Court allows Plaintiff's instant action to proceed, the present

27 action will create piecemeal and duplicative litigation. Defendant also will be forced to expend

28 resources in substantially similar and concurrent actions involving the same parties and the same claims.

Moreover, the state court has already assumed jurisdiction over the earlier-filed *Megia* action and the state court's determination in the *Megia* action could conflict with this Court's rulings on Plaintiff's instant claims for relief. Finally, the instant action and the *Megia* action are largely based on state law. As a result, a single state forum is adequate—and should—protect Plaintiff's rights. Accordingly, Defendant respectfully requests that the Court dismiss the instant action in its entirety. In the alternative, Defendant respectfully requests that the Court stay these proceedings to the extent that they are duplicative of the *Megia* action, pending an outcome in that matter.

This Motion is made pursuant to Fed. R. Civ. P. 12(b)(3) and is based upon the foregoing Memorandum of Points and Authorities, all pleadings and documents on file with the Court, and any argument that the Court deems proper.

Dated this 15th day of October, 2012.

JACKSON LEWIS LLP

_/s/ Elayna J. Youchah_____
Elayna J. Youchah, Bar #5837
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169

*Attorneys for Defendant*
*Nevada Property 1, LLC*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Well before Plaintiff Darlene Lewis ("Plaintiff") filed the instant action against Defendant Nevada Property 1, LLC, d/b/a the Cosmopolitan of Las Vegas ("Defendant" or the "Cosmopolitan"), Melodee Megia filed a nearly identical class action against the Cosmopolitan alleging that the Cosmopolitan violated Nevada wage and hour laws. Plaintiffs in both actions are represented by the same counsel. Despite the earlier *Megia* action, which seeks to represent a putative class of which Plaintiff Lewis is a member, Plaintiff now seeks to represent a nearly identical putative class of former and current hourly employees of the Cosmopolitan. Not only is the putative class that Plaintiff seeks to represent and the class period largely encompassed in the *Megia* action, the claims for relief Plaintiff

alleges in the instant action are nearly identical to the claims for relief in the *Megia* action. Accordingly, this Court has the authority to—and should—dismiss the instant action for improper venue pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(3) based upon the *Colorado River* doctrine. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).

## II.    STATEMENT OF FACTS[1]

### A.    THE *MEGIA* ACTION ALLEGES WAGE AND HOUR VIOLATIONS ON BEHALF OF CURRENT AND FORMER COSMOPOLITAN CASINO WORKERS IN NEVADA

The *Megia* action was filed in District Court for Clark County, Nevada on May 11, 2012, by the same counsel who filed the instant action. The plaintiffs in *Megia* bring suit against Defendant Cosmopolitan Hotels & Resorts, Inc. (referred to throughout as "Defendant" or "Cosmopolitan"), the same defendant in the instant action. The *Megia* action sets forth the following six claims and theories for class relief:  (1) failure to pay wages for all hours worked in violation of NRS 608.016, under the theory that Defendant required that the putative class members changed into a designated uniform at the employer's designated changing room without compensation for this time; (2) failure to pay wages for "rounded off" time worked in violation of NRS 608.016, under the theory that Defendant's time keeping system rounded putative class members' in and out time in a manner that benefited Defendant; (3) failure to pay minimum wages in violation of NRS 608.140 and 608.250, under the theory that the alleged failure to pay putative class members for all of their time worked, they were therefore not paid the minimum wage for all hours worked; (4) failure to pay overtime wages in violation of NRS 608.018, under the theory that putative class members were not paid for all time worked on account of changing at the designated location off-the-clock and the rounded off, they were therefore not paid all overtime when due; (5) failure to pay the correct overtime rate in violation of NRS 608.018, under the theory that certain non-discretionary bonuses were not included in the regular rate of pay of putative class members;

---

[1]    A Motion to Dismiss pursuant to FRCP Rue 12(b)(3) may be based upon extrinsic evidence. *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) (Rule 12(b)(3) motion may be based on extrinsic evidence); *Travelers Cas. & Sur. Co. of America v. Telstar Const. Co., Inc.*, 252 F.Supp.2d 917, 922 (D. Ariz. 2003 (Rule 12(b)(2)-(5) motions may be based on affidavits and other extrinsic written material).

and (6) failure to timely pay all wages due and owing, under the theory that Defendant did not properly pay terminated individuals within the appropriate amount of time.[2] *See Megia* Complaint, Exhibit 1.

The *Megia* action seeks relief on behalf of a class of all hourly non-exempt workers employed by Defendant at anytime during the three years prior to the filing of the Complaint until the entry of judgment. *Id.* The *Megia* action divides the class into four subclasses, defined as (1) the Overtime Rate Subclass; (2) the Uniformed Subclass; (3) the Rounding Error Subclass; and (4) the Waiting Time Penalty Subclass. *See Megia* Complaint, Exhibit 1. The definitions of each of these purported classes only differ from each other only as to the relief sought. Simply put, all four subclasses seek to represent Nevada-based workers who worked for Defendant from approximately May 11, 2009 up to and through the time of trial.

The *Megia* action seeks damages including compensatory damages for the payment of unpaid wages at the regular rate or minimum rate, whichever is higher, for all hours worked pursuant to Nevada law, compensatory damages for the payment of overtime premium pay pursuant to Nevada law, and for waiting time penalties pursuant to Nevada law. *See Megia* Complaint, Exhibit 1, at Prayer For Relief.

**B. THE INSTANT ACTION ALSO SEEKS RECOVERY FOR WAGE AND HOUR VIOLATIONS ON BEHALF OF FORMER AND CURRENT COSMOPOLITAN CASINO WORKERS IN NEVADA**

The instant case was filed on September 24, 2012, in the United States District Court for the District of Nevada. Plaintiff's counsel is also counsel to the Plaintiff in the *Megia* action. This action adds a class claim for wages and a claim for overtime under federal law, and includes five class claims that are nearly identical to the claims in the *Megia* action. Specifically, this action includes the following seven claims and theories for class relief: (1) failure to pay wages in violation of the FLSA, under the theory that Defendant required that the putative class members changed into a designated uniform at the employer's designated changing room without compensation for this time; (2) failure to pay overtime wages in violation of the FLSA, under the theory that putative class members were not paid for all time worked on account of changing at the designated location off-the-clock, and were therefore not paid all overtime when due; (3) failure to pay wages for all hours worked in violation of NRS 6608.140 608.016, under the theories that Defendant required that the putative class members

---

[2] The *Megia* Action also includes four counts for individual relief.

changed into a designated uniform at the employer's designated changing room without compensation for this time, and that putative class members were not paid for pre- and –post shift activities relating to the retrieval of their cash bank at the "satellite bank";[3] (4) failure to pay minimum wages in violation of NRS 608.140 and 608.250, under the theory that by requiring the uniformed and satellite bank class members to work off-the-clock, they were not paid the minimum wage for all hours worked; (5) failure to pay overtime wages in violation of NRS 608.140 and 608.018, under the theory that putative class members were not paid for all time worked were therefore not paid overtime when due; (6) failure to pay correct overtime rate in violation of NRS 608.018, under the theory that certain non-discretionary bonuses were not included in the regular rate of pay of putative class members; and (7) waiting time penalties pursuant to NRS 608.140 and 608.020-.050, for failure to properly pay terminated individuals within the appropriate amount of time. Dkt # 6.

Here, Plaintiff identically seeks relief on behalf of a putative class defined as all hourly non-exempt workers employed by Defendant at anytime during the three years prior to the filing of the Complaint until the entry of judgment. Dkt. # 6 ¶ 15. Likewise, here, Plaintiff also divides the class into four subclasses, defines as (1) the Uniformed Subclass; (2) the Satellite Bank Subclass; (3) the Overtime Rate Subclass; and (4) the Wages Due and Owing Subclass.

Like the *Megia* action, this action seeks damages including compensatory damages for the payment of unpaid wages at the regular rate or minimum rate, whichever is higher, for all hours worked pursuant to Nevada law, compensatory damages for the payment of overtime premium pay pursuant to Nevada law, and for waiting time penalties pursuant to Nevada law. In addition, this action seeks damages of the regular rate of pay, minimum wage, and overtime pursuant to federal law, and for liquidated damages under federal law. Dkt. # 6, Prayer For Relief.

## III.   LEGAL ANALYSIS

### A.   THE COURT IS AUTHORIZED TO—AND SHOULD—DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY UNDER THE *COLORADO RIVER* DOCTRINE TO AVOID DUPLICATIVE LITIGATION

The instant action is duplicative of the earlier-filed *Megia* action and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) based upon the *Colorado River* doctrine. The

---

[3]   Defendant acknowledges that this "satellite bank" claim is not part of the *Megia* action.

*Colorado River* doctrine is a judicially created doctrine applied in circumstances such as this, where a later-filed federal lawsuit concerns the same parties and raises essentially the same issues as a presently pending state court action. *Colorado River*, 424 U.S. at 813. The *Colorado River* doctrine was designed to avoid duplicative and potentially inconsistent litigation which is antithetical to the principles of comity, conservation of resources and judicial efficiency upon which the *Colorado River* doctrine is based. *United States v. Morros*, 268 F.3d 695 (9th Cir. 2001) (the Court's chief concern was to avoid piecemeal litigation). Federal courts may apply the *Colorado River* doctrine to effectuate "wise judicial administration" and do so when there is a concurrent state action pending in which the same issues are raised. *Colorado River*, 424 U.S. at 813.

Under the *Colorado River* doctrine and its progeny, federal courts weigh the following factors in determining whether to dismiss an action or certain claims pending the outcome of a concurrent state proceeding: (1) the desirability of avoiding piecemeal litigation; (2) substantial similarity between the two actions ("parallel proceedings"); (3) the order in which jurisdiction was obtained by the concurrent forums; (4) if either court has assumed jurisdiction over a res; (5) if federal or state law provides the rule of decision on the merits; and (6) whether the state court proceedings are adequate to protect the federal litigant's rights and the relative convenience of the forums. *Colorado River*, 424 U.S. at 818-19; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983); and *Nakash v. Marciano*, 882 F.2d 1411 (9th Cir. 1989).

"No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818-19 (citations omitted). Nonetheless, district courts should be guided by the admonition that "[t]he general principle is to avoid duplicative litigation" (emphasis added). *Id.* at 817.

As explained below, the circumstances of the present case require application of the *Colorado River* doctrine to the *Megia* action and the instant action.

### 1.    Dismissing The Present Action Will Avoid Piecemeal Litigation

Because this action is nearly identical to the already-pending *Megia* action, dismissal is necessary to avoid piecemeal litigation. Piecemeal litigation arises "when different tribunals consider

the same issues, thereby duplicating efforts and possibly reaching different results." *American Int'l Underwriters, Inc. v. Continental Insurance Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). If the instant action is permitted to move forward, Defendant will be forced to replicate its efforts in two different forums which undoubtedly will lead to duplicative and possibly inconsistent rulings on identical issues as they are litigated. Specifically, both actions allege (1) failure to pay wages for all hours worked in violation of NRS 608.016; (2) failure to pay minimum wages in violation of NRS 608.140 and 608.250; (3) failure to pay overtime wages in violation of NRS 608.018; (4) failure to pay correct overtime rate in violation of NRS 608.018; and (6) failure to timely pay all wages due and owing under Nevada state law. To the extent that Plaintiff in the instant action also includes claims for hours worked and overtime under federal law, the underlying proof of those claims will be identical to the corresponding state law claims. Moreover, a class member cannot recover for a minimum wage or overtime violation under both state and federal law for the same violation, which would be tantamount to double recovery.

If the instant action is not dismissed, Defendant will be required to duplicate its law and motion work, including class certification briefing and written and oral discovery, in order to adequately litigate both the *Megia* action and this action separately, thereby prejudicing Defendant. Litigating the same claims for relief in two different forums will also waste judicial resources in both the state and federal courts and will result in piecemeal litigation. *American Int'l*, 843 F.2d at 1258. Similarly, allowing Plaintiff's counsel, the same in both *Megia* and the instant action, to litigate these duplicative lawsuits and potentially prevail and receive attorneys fees in *both* lawsuits would be a miscarriage of justice.

Moreover, the Court should dismiss this action so as to avoid inconsistent rulings with the *Megia* action. Indeed, permitting this action to proceed could result in two different courts deciding the same issue among the same parties but reaching different results. Specifically, there is a risk of inconsistent rulings regarding class certification issues, such as the need for and the scope of class notices regarding disclosure of employee information and discovery issues. *See Nakash v. Marciano*, 882 F.2d 1411, 1415-1416 (9th Cir. Cal. 1989).

Accordingly, because the same parties are involved in two different forums with the same alleged claims and there exists the risk of inconsistent rulings between this action and the *Megia* action, consideration of comity, conservation of judicial and financial resources, and judicial efficiency all strongly support abstention in this later-filed action.

> **2.   Abstention Is Appropriate Because The *Megia* Action And The Present Action Are Parallel Proceedings**

The *Megia* action is simultaneously litigating the same issues, and thus, allowing this action to proceed will result in an unnecessary and inefficient parallel proceeding.   "Parallel proceedings exist when substantially similar parties are contemporaneously litigating substantially similar issues in both federal and state courts."   *Nakash*, 882 F.2d at 1416 (exact parallelism between the claims is not required for dismissal); *Clark v. Lacy*, 376 F.3d 682 (7th Cir. 2004).   Inherent in the concept of abstention of a federal court proceeding is the presence of a pendent state action.   *Security Farms v. International Bhd. of Teamsters*, 124 F.3d 999 (9th Cir. 1997).   In fact, "[a]bstention can exist only where there is a parallel proceeding in state court." *Schulman v. California (In re Lazar)*, 237 F.3d 967, 981 (9th Cir. 2001; *In re Tucson Estates*, 912 F.2d 1162, 1167 (9th Cir. 1990).

The *Megia* action and this present action are being litigated contemporaneously and constitute "parallel proceedings."   Specifically, the *Megia* action and this action involve identical parties.   The Defendant in the present action is also the defendant in the *Megia* action.   In addition, the proposed class definitions by-and-large encompass the same group of former and current employees.   As set forth above, the present action defines the class in the exact same manner as the class in the *Megia* action: all hourly non-exempt workers employed by Defendant at anytime during the three years prior to the filing of the Complaint until the entry of judgment.   In each action, there are subclasses.   Here, the subclasses are: (1) the Uniformed Subclass; (2) the Satellite Bank Subclass; (3) the Overtime Rate Subclass; and (4) the Wages Due and Owing Subclass.   In *Megia*, the subclasses are: (1) the Overtime Rate Subclass; (2) the Uniformed Subclass; (3) the Rounding Error Subclass; and (4) the Waiting Time Penalty Subclass.   While there are some discrepancies between the two, these are largely overlapping, and ultimately will

break down to many of the exact same putative class members.  Moreover, the class period in the instant action, which begins on September 24, 2009, is encompassed in the class period in *Megia*, which begins on May 11, 2009.

Furthermore, as set forth above, the *Megia* action and this action involve largely identical claims for relief.  Indeed, both actions are garden-variety wage-and-hour class actions seeking unpaid wages, overtime, and waiting time penalties.   Because the *Megia* action and this action constitute "parallel proceedings," given the overlapping parties and claims for relief, the instant action should be dismissed and the claims should be resolved in the first-filed *Megia* action.

> ### 3.    The *Megia* Action Was Filed Before This Action And The State Court Has Assumed Jurisdiction Over Identical Issues

Given that the *Megia* action preceded this case, the Court should dismiss this action because the state court has already assumed jurisdiction over issues identical to those in the instant action.  Indeed, finding a state court assumed jurisdiction over the concurrent first-filed state action weighs in favor of dismissing a later-filed federal action. *Nakash*, 882 F.2d at 1415.

Since the state court assumed jurisdiction over *Megia* in May 2012, the state court will determine whether to certify the putative class and will handle discovery and notice issues.  Given that the state court has assumed jurisdiction over issues identical to the present action, it will make determinations on those claims for relief that could conflict with this Court's potential rulings on the merits of Plaintiff's claims for relief and possible discovery issues.  Thus, these circumstances create duplicative litigation that unfairly prejudices Defendant because Defendant must use its resources to defend against the same issues twice.

> ### 4.    In The Alternative, The Court Should Stay The Proceedings Pending The Outcome Of The *Megia* Action Because Nevada Law Provides The Rule Of Decision On Many Of Plaintiff's Claims And Will Adequately Protect Plaintiff's Rights

Nevada law controls many of Plaintiff's claims and thus, the first-filed *Megia* action will sufficiently protect Plaintiff's rights under those claims.  Under the fifth *Colorado River* factor, Courts must consider abstention where there is no "peculiarly federal interest" that makes the federal court action preferable to state action. *Moses H. Cone*, 460 U.S. at 26; and *Microsoftware Computer Sys., Inc. v. Ontel Corp.*, 686 F.2d 531, 531 (7th Cir. 1982).

Here, many of Plaintiff's claims for relief are based solely on Nevada law, and interpretation of these Nevada statutes requires interpretation of Nevada Supreme Court decisions. Consequently, there is no risk that all rights asserted and the requests made by Plaintiff will go unaddressed. Defendant recognizes that there are some federal claims in this lawsuit that are not present in the *Megia* action. At a minimum, this Court should abstain from exercising supplemental jurisdiction over the state law claims in the instant action by staying this action, pending the outcome of the *Megia* action, thus allowing a single state forum to decide and adjudicate the state law claims and allegations.

## IV. CONCLUSION

The *Colorado River* doctrine factors warrant dismissal of Plaintiff's duplicative and parallel action. Indeed, the state court will adequately address the claims, the parties are the same, the two proceedings are parallel, the state court obtained jurisdiction first, the instant action is largely based on state law. Therefore, Defendant respectfully requests the Court dismiss, or in the alternative, stay this action in order to avoid duplicative litigation and dismiss Plaintiff's action in its entirety.

Dated this 15th day of October, 2012.

JACKSON LEWIS LLP


_____/s/ Elayna J. Youchah_____
Elayna J. Youchah, Bar #5837
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee Jackson Lewis LLP and that on this 15th day of October, 2012, I caused to be sent via U.S. Mail, postage prepaid, a true and correct copy of the above and foregoing **DEFENDANT NEVADA PROPERTY 1, LLC'S MOTION TO DISMISS PURSUANT TO THE _COLORADO RIVER_ DOCTRINE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS** properly addressed to the following:

Mark R. Thierman
Jason Kuller
Thierman Law Firm, P.C.
7287 Lakeside Drive
Reno, Nevada 89511

_Attorneys for Plaintiff_

                                                 /s/ Emily Santiago
                                     Employee of Jackson Lewis LLP

# EXHIBIT 1

# EXHIBIT 1

Electronically Filed
05/11/2012 11:33:52 AM

*[signature]*

CLERK OF THE COURT

Code: COMP
Mark R. Thierman, NV#8285 CAL#72913
Jason Kuller, NV#12244 CAL#228157
Joshua Buck, NV#12187 CAL#258325
THIERMAN LAW FIRM, P.C.
7287 Lakeside Drive
Reno, Nevada 89511
Tel: (775) 284-1500
Fax: (775) 703-5027

Attorneys for Plaintiff

# DISTRICT COURT
## CLARK COUNTY, NEVADA

| | |
|---|---|
| MELODEE MEGIA on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE COSMOPOLITAN RESORT AND CASINO, *aka* the Cosmopolitan Hotel and Casino, the Cosmopolitan of Las Vegas; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. A-12-661665-C<br>XXIII<br>**CLASS ACTION**<br>(EXEMPT FROM ARBITRATION PURSUANT TO N.A.R. 5)<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1) Failure to Pay for All Hours Worked in Violation of N.R.S. 608.016;<br>2) Failure to Pay for "Rounded Off" Time Worked in Violation of N.R.S. 608.016;<br>3) Failure to Pay for All Overtime Hours Worked in Violation of N.R.S. 608.018;<br>4) Failure to Pay the Correct Overtime Rate in Violation of N.R.S. 608.018;<br>5) Failure to Timely Pay All Wages Due and Owing in Violation of N.R.S. 608.020-050.<br><br>**INDIVIDUAL COMPLAINT FOR:**<br><br>6) Sex/Pregnancy Discrimination in Violation of N.R.S. 613.330, 613.335;<br>7) Wrongful Termination in Violation of Public Policy;<br>8) Intentional Infliction of Emotional Distress;<br>9) Negligent Infliction of Emotional Distress; and<br>10) Nonpayment of Wages by Negotiable Instrument in Violation of N.R.S. 205.130, 608.130. |

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1

1    COMES NOW Plaintiff MELODEE MEGIA, on behalf of herself and all others similarly

2    situated, and hereby alleges as follows:

3    All allegations in this Complaint are based upon information and belief except for those

4    allegations that pertain to the Plaintiff named herein and her counsel.  Each allegation in this

5    Complaint either has evidentiary support or is likely to have evidentiary support after a

6    reasonable opportunity for further investigation and discovery.

7    **JURISDICTION AND VENUE**

8        1.    This Court has original jurisdiction over the claims alleged herein because the

9    amount in controversy exceeds $10,000 and a party seeking to recover unpaid wages has a

10   private right of action pursuant to Nevada Revised Statute ("N.R.S.") sections 608.050 and

11   608.140, among others. Plaintiff, putative class members, and Defendants, are residents of the

12   State of Nevada.

13       2.    Venue is proper in this Court because one or more of the Defendants named

14   herein maintains its principal place of business, or otherwise is found, in this judicial district and

15   the acts complained of herein occurred in Clark County.

16   **PARTIES**

17       3.    Defendant THE COSMOPOLITAN RESORT AND CASINO (hereinafter

18   "Defendant" or Cosmopolitan, also known as the Cosmopolitan Hotel and Casino, and "the

19   Cosmopolitan of Las Vegas (hereinafter "Defendant" or "Cosmopolitan") is a Nevada

20   corporation with a principal place of business at 3700 South Las Vegas Boulevard, Las Vegas,

21   NV.

22       4.    Plaintiff MELODEE MEGIA (hereinafter "Plaintiff" or "Ms. Megia") is natural

23   person who is and was a resident of the State of Nevada at all times relevant herein and was

24   employed by Defendant from November 7, 2010, until she was terminated on September 16,

25   2011, based on her pregnancy.

26       5.    The identity of DOES 1-50 is unknown at this time, and this Complaint will be

27   amended at such time when the identities are known to Plaintiff.  Plaintiff is informed and

28   believes that each of the Defendants sued herein as DOE is responsible in some manner for the

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

2

CLASS ACTION AND INDIVIDUAL COMPLAINT

1  acts, omissions, or representations alleged herein and any reference to "Defendant,"
2  "Defendants," or "Cosmopolitan" herein shall mean "Defendants and each of them."

3  <center>**FACTUAL ALLEGATIONS**</center>

4      6.    At all times relevant herein, Defendant employed Plaintiff as an hourly paid (non-
5  exempt) uniformed employee in the Room Service sales section of the hotel.

6      7.    Defendant would charge its hotel guests who ordered room service a service
7  charge (or mandatory gratuity) as a fixed percentage of the total bill, and Defendant paid Plaintiff
8  a fixed and pre-determined portion of this mandatory gratuity in addition to her hourly wage.
9  Defendant failed to include such non-discretionary bonus/commissions in the regular rate of pay
10  for purposes of calculating overtime premiums for Plaintiff and other hourly (non-exempt)
11  employees.

12      8.    Defendant required Plaintiff and other uniformed employees to change into their
13  uniforms at a common locker room but did not pay them for such changing time. Defendant paid
14  Plaintiff and other uniformed employees only after they arrived at their workstations and clocked
15  in. Similarly, Defendant immediately ceased paying Plaintiff and other uniformed employees
16  when they left their workstations for the changing area. Nor did Defendant pay Plaintiff and
17  other uniformed employees for time spent waiting for their uniforms to be distributed each day
18  on-site. To the extent Plaintiff and other employees worked 8 hours a day or 40 hours a week,
19  this unpaid time also constitutes unpaid overtime.

20      9.    Defendant also maintained timekeeping policies that always rounded work hours
21  in favor of the Defendant. Although Defendant maintained a rounding policy to the nearest 15
22  minutes, Defendant prohibited Plaintiff and other employees from clocking in more than seven
23  minutes early or more than a minute late. Similarly, Defendant prohibited Plaintiff and other
24  employees from clocking out less than a minute early or more than seven minutes late.
25  Defendant, in other words, prohibited Plaintiff and other employees from ever benefitting from
26  the rounding policy. In this way, Defendant's rounding policy did not "even out" or average out
27  over time and was, instead, always skewed in Defendant's favor. Since there was no practical
28  administrative difficulty in capturing – and paying for – actual hours worked, Defendant's one-

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

<center>3</center>

<center>CLASS ACTION AND INDIVIDUAL COMPLAINT</center>

1 | way rounding policy failed to compensate Plaintiff and other hourly employees for all hours

2 | worked. To the extent Plaintiff and other employees worked 8 hours a day or 40 hours a week,

3 | this unpaid "rounding" time also constitutes unpaid overtime.

4 |     10.    Furthermore, upon terminating Plaintiff from employment, Defendant did not pay

5 | Plaintiff at the time of termination but, consistent with company policy, paid Plaintiff on her next

6 | regular pay date. As a matter of company policy, Defendant did not timely pay other employees

7 | in accordance with Nevada law upon termination or separation from employment.

8 |     11.    Although Plaintiff brings this action on behalf of a class of similarly situated

9 | current and former employees of Defendant for various wage and hour violations under Nevada

10 | law, Plaintiff also brings individual claims for pregnancy discrimination, wrongful termination in

11 | violation of public policy, intentional and negligent infliction of emotional distress, and for

12 | nonpayment of wages by negotiable instrument with insufficient funds.

13 |     12.    Defendant terminated Plaintiff on or about September 16, 2011, when she was

14 | approximately 8 months pregnant. The stated reason for Plaintiff's termination was that she said

15 | "bye bye" instead of "good bye" on the telephone to a room service customer. In fact, this was

16 | merely a pretext as Plaintiff had been subject to harassing conduct and other pretextual discipline

17 | leading up to her termination since the time her pregnancy was learned by Defendant.

18 |     13.    In or around March 2011, when Plaintiff was requested to deliver a "pleasure

19 | packet" (consisting of condoms) to a hotel customer, Defendant's Director of Room Service told

20 | her: "Isn't it too late for that? You should have thought about it before getting knocked up."

21 | From that point forward, the Director of Room Service frequently gave Plaintiff dirty looks or

22 | shook his head disapprovingly. One day he commented, "So when are you having that?" in

23 | reference to Plaintiff's pregnant stomach. On another occasion, he asked Plaintiff "why" she got

24 | pregnant, and on yet another occasion he commented to a co-worker as Plaintiff began her shift:

25 | "That is what happens when you have sex."

26 |     14.    Upon information and belief, the real reason Defendant terminated Plaintiff was

27 | her pregnancy and the medical costs and other inherent costs associated therewith.

28 |

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

4

## CLASS ACTION ALLEGATIONS

15.    Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

16.    Plaintiff is and/or was an "employee" as that term is defined in N.R.S. 608.010 and her wage and hour claims are typical for all such claims by other hourly non-exempt employees.

17.    Plaintiff brings this action on behalf of herself and on behalf of all hourly non-exempt workers employed by Defendant (collectively "the Class" or "Class Members") at anytime during the three years prior to the filing of this Complaint until the date of judgment after trial herein ("the Class Period").

18.    Upon information and belief, Defendant employs, and has employed, in excess of 3,000 Class Members within the applicable Class Period. Because Defendant is legally obligated to keep accurate payroll records, Plaintiffs allege that Defendant's records will establish the members of the Class as well as their numerosity.

19.    The Class is subdivided into four subclasses of similarly-situated individuals (collectively "the Subclasses" or "Subclass Members"):

A.    **The Overtime Rate Subclass:**  All current and former Class Members who, at any time during the Class Period, were paid a percentage "commission," mandatory gratuity, or other payment based upon a customer surcharge (collectively "Overtime Rate Subclass Members").

B.    **The Uniformed Subclass:** All current and former hourly paid employees who, at any time during the Class Period, were required to change into employer-mandated uniforms on company premises (collectively "Uniformed Subclass Members").

C.    **The Rounding Error Subclass:** All current and former hourly paid employees who, at any time during the Class Period, were

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

5

subject to Defendant's "rounding" policy (collectively "Rounding Error Subclass Members").

D. **The Waiting Time Penalty Subclass:** All current and former employees of Defendant who, at any time during the Class Period, were terminated or otherwise separated from employment (collectively "Waiting Time Penalty Subclass Members").

20. Plaintiff's claims are typical of the claims of the Class Members of each Subclass, and each Subclass Member is and was subject to the same policies as Plaintiff.

21. Defendant failed to pay overtime to Plaintiff and Overtime Rate Subclass Members based upon their true "regular rate" of compensation, specifically, by failing to include all non-discretionary payments into the regular rate for purposes of paying overtime.

22. Defendant failed to pay Plaintiff and Uniformed Subclass Members for all time they were required to work, including time spent waiting for their uniforms to be distributed each day on-site, changing into the uniforms, and walking from the changing area to and from their clock-in locations.

23. Defendant failed to pay Plaintiff and Rounding Error Subclass Members for all time they were required to work, including "rounded off" time.

24. Defendant failed to pay Plaintiff and Waiting Time Penalty Subclass Members all wages due and owing at the time of their termination or separation from employment.

25. The acts complained of herein are company policy applicable to Plaintiff and all workers in the Subclasses described above. Plaintiff, like other Class and Subclass members, were subjected to Defendant's policies and practices of failing to pay wages and overtime for all hours worked, as well as other violations of Nevada law. Proof of a common or single state of facts will thus establish the right of each Class and Subclass member to recover.

26. Common questions of law and fact exist and predominate as to Plaintiff and Class Members, including, without limitation:

a) Whether Defendant failed to pay Plaintiff and Class Members one and one half times their regular rate for all hours worked in excess of 8 hours a day and/or 40 hours a week;

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

6

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

b)  Whether the regular rate of Plaintiff and Overtime Rate Subclass Members included all non-discretionary payments such as mandatory gratuities, hotel surcharges, "commissions," or other bonus payments based upon a formula or in motivation to perform work;

c)  Whether Plaintiff and Uniformed Subclass Members were required to change into uniforms on premises by Defendant;

d)  Whether Plaintiff and Uniformed Subclass Members were compensated for "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee" pursuant to the Nevada Administrative Code, N.A.C. 608.115(1), and N.R.S. 608.016;

e)  Whether Defendant's practices concerning rounding of hours worked failed to compensate Plaintiff and Rounding Error Subclass Members for all actual hours worked in violation of N.R.S. 608.016; and

f)  Whether Defendant delayed final payment to Plaintiff and Waiting Time Penalty Subclass Members in violation of N.R.S. 608.020-050.

27.    Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclasses and has no interests that conflict or are antagonistic to the interests of Class and Subclass members. Plaintiff has retained counsel competent and experienced in complex class actions, including state labor and employment litigation.   Plaintiff and counsel are aware of their fiduciary responsibilities to Class members and are determined to discharge those duties diligently by vigorously seeking the maximum possible recovery for Class members.

28.    A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Each Class Member has been damaged and is entitled to recovery by reason of Defendant's illegal policy and/or practice of failing to compensate its employees in accordance with Nevada wage and hour law.  The prosecution of individual remedies by each Class Member will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class Members' rights and the disposition of their interest through actions to which they were not parties.

7

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

29.     To the extent Defendant claims there is any agreement or contract that attempts to prohibit the employees from engaging in "concerted activities for the purpose of collective bargaining or other mutual aid or protection" by waiving the employees' and former employee's right to bring a civil action on a class or collective basis over wages, or other terms and conditions of employment, whether by individual arbitration or otherwise, then such contract is declared by statute to be unconscionable and unenforceable pursuant to sections 2 and 3 of the Norris-LaGuardia Act, 29 U.S.C. §§ 102, 103. *See D.R. Horton Inc., and Michael Cuda*, 357 N.L.R.B. No. 184 (Jan. 3, 2012). Pursuant to section 3 of the Norris-LaGuardia Act, this Court lacks jurisdiction to enforce or give effect to any waiver of the right to bring a class action by an employee on behalf of herself and other employees over wages and terms and conditions of employment. Section 3 of the Norris-LaGuardia Act states that any "promise in conflict with the public policy declared in section 2 of this Act [29 U.S.C. § 102], is hereby declared to be contrary to the public policy of the United States, shall not be enforceable in any court of the United States and shall not afford any basis for the granting of legal or equitable relief by any such court . . . ."

## FIRST CAUSE OF ACTION

### Failure to Pay Wages for All Hours Worked in Violation of N.R.S. 608.016

(On Behalf of Plaintiff and Uniformed Subclass)

30.     Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

31.     Defendant required Plaintiff and Uniformed Subclass Members to change into a designated uniform at the employer's designated changing room without compensation.

32.     N.R.S. 608.016 states that "An employer shall pay to the employee wages *for each hour the employee works.*" (Emphasis added.) Hours worked means anytime the employer exercises "control or custody" over an employee. *See* N.R.S. 608.011 (defining an "employer" as "every person having control or custody of any employment, place of employment or any employee."). Pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time

8

worked by the employee that is outside the scheduled hours of work of the employee." N.A.C. 608.115(1).

33.     Under Nevada law, when an employer requires changing into or out of a required uniform at the employer's required changing rooms, the employee is entitled to compensation for time worked because the employee is subject to the "control or custody" of the employer (N.R.S. 608.011), or is otherwise acting "at the direction of the employer" (N.A.C. 608.115(1)).

34.     By failing to compensate Plaintiff and Uniformed Subclass Members for time spent waiting for their uniforms to be distributed each day on-site, changing into their uniforms, and walking from the changing area to and from their clock-in locations, Defendants failed to pay Plaintiff and Uniformed Subclass Members for all hours worked.

35.     Unlike federal law, Nevada has never adopted the limiting language contained in the Portal-to-Portal Act, 29 U.S.C. § 254, which renders ordinarily compensable time as non-compensable preliminary or postliminary activities.

36.     Because there is no express statute of limitations for violations of N.R.S. 608.016 and, the three-year statute contained in N.R.S. 11.190(3) for statutory violations applies.

37.     Wherefore, Plaintiff demands for herself and for Uniformed Subclass Members payment by Defendant for all hours worked during the Class Period, together with attorneys' fees and costs provided by law.

## SECOND CAUSE OF ACTION

### Failure to Pay Wages for "Rounded Off" Time Worked in Violation of N.R.S. 608.016

(On Behalf of Plaintiff and Rounding Error Subclass)

38.     Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

39.     By custom and practice, the workday begins at the time of punching in at the time clock, and ends when the employee punches out at the time clock. After punching in and before punching out, the employee is not free to do things other than work as assigned by the employer.

40.     Here, Defendant has instituted a rounding policy to the nearest quarter hour whereby time punches will be rounded up or down to the nearest 15-minute interval. Time

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

9

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

1   punches occurring earlier or later than 8 minutes into any given 15-minute interval will be

2   rounded down or up, respectively, to the beginning or end of the 15-minute period.  For example,

3   an employee who clocked in at 7:53 AM or 8:07 AM would be rounded forward or backward,

4   respectively, to the same 8:00 AM start time.  On the other hand, an employee who clocked in

5   just one minute earlier at 7:52 AM would have a start time of 7:45 AM and an employee who

6   clocked in one minute later at 8:08 AM would have a start time of 8:15 AM.  Under Defendant's

7   rounding policy, a one-minute time punch difference, when rounded, can yield an actual time

8   difference of 15 minutes.  Assuming employees punch in and out four times a day (i.e., at the

9   beginning and end of each workday and each meal period), there is a potential cumulative swing

10  of 60 minutes each workday based on which side of the 15-minute interval the time punch

11  occurs.

     41.   Although Defendant's rounding policy appears to be facially neutral, the rounding

13  favors the Defendant in almost every instance because of Defendant's other work rules.

     42.   Specifically, as a matter of both policy and practice, Defendant prohibits

15  employees from clocking in more than seven minutes early, and is not allowed to clock in more

16  than a minutes late without risk of discipline.  In addition, employees may not punch out early,

17  and may not punch out more than seven minutes late without permission to work overtime.

18  Defendant's rounding policy is thus rigged in favor of "the house."   It is the timekeeping

19  equivalent of "Heads I win, tails you lose."

     43.   As a practical matter, employees cannot benefit from Defendant's rounding

21  system without risking discipline:

22  a)  Employees cannot punch in more than 7 minutes early because the punch would round

23      backward requiring Defendant to pay for unworked time and potential overtime;

24  b)  Employees cannot punch in more than one minute after their start time without risking

25      discipline for tardiness when they should have 7 minutes of leeway under a true rounding

26      policy;

27

28

CLASS ACTION AND INDIVIDUAL COMPLAINT

c) Employees cannot punch out before their scheduled end time, when they should be able to punch out up to 7 minutes early, because Defendant will not pay for hours unless they are actually worked; and

d) Employees cannot punch out more than 7 minutes after their scheduled end time without permission to work overtime because the punch may round forward requiring Defendant to pay for unworked time and potential overtime.

44.    The upshot is Defendant's employees can clock in 7 minutes early (giving free labor to Defendant) but cannot clock out 7 minutes early. Similarly, Defendant's employees can clock out up to 7 minutes late (again free labor to Defendant) but cannot clock in more than a minute late. As such, Defendant's rounding policy systematically underreports actual hours worked by Plaintiff and Rounding Error Subclass Members.

45.    There is no administrative need for Defendant's rounding policy since the time clocks are accurate to the minute and Defendant relies on this minute-by-minute recording of time to enforce its tardiness and other attendance policies. Not only can the amounts of time involved here be recorded for payroll purposes, they actually are recorded – just not paid by Defendant.

46.    Under Nevada law, there is no "rounding exception" to N.R.S. 608.016 or under any regulation of the Nevada State Labor Commissioner.

47.    Wherefore, Plaintiff demands for herself and for Rounding Error Subclass Members payment by Defendant for all time worked during the Class Period without regard to any rounding policy, together with attorneys' fees and costs provided by law.

### THIRD CAUSE OF ACTION

### Failure to Pay Overtime Wages in Violation of N.R.S. 608.018

(On Behalf of Plaintiff, Uniformed Subclass, and Rounding Error Subclass)

48.    Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

49.    Plaintiff and Class Members routinely worked in excess of 8 hours a day and/or 40 hours a week.

50.     N.R.S. 608.018(1) provides as follows:

An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate prescribed pursuant to N.R.S. 608.250 works:

(a) More than 40 hours in any scheduled week of work; or

(b) More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.

51.     N.R.S. 608.018(2) provides as follows:

An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate prescribed pursuant to N.R.S. 608.250 works more than 40 hours in any scheduled week of work.

52.     By failing to compensate Plaintiff and Uniformed Subclass Members for all time worked with respect to their uniform changing duties, Defendants failed to pay Plaintiff and Uniformed Subclass Members overtime for all hours worked over 8 hours in a day and over 40 hours in a week in violation of N.R.S. 608.018.

53.     Furthermore, by failing to compensate Plaintiff and Rounding Error Subclass Members for all time worked without regard to any rounding policy, Defendants failed to pay Plaintiff and Uniformed Subclass Members overtime for all hours worked over 8 hours in a day and over 40 hours in a week in violation of N.R.S. 608.018.

54.     Because there is no express statute of limitations for violations of N.R.S. 608.018, the three-year statute contained in N.R.S. 11.190(3) for statutory violations applies.

55.     Wherefore, Plaintiff demands for herself and for Uniformed Subclass Members and Rounding Error Subclass Members that Defendants pay them one and one half times their "regular rate" of pay for all hours worked in excess of 8 hours in a workday and 40 hours a week during the Class Period, together with attorneys fees and costs provided by law.

/ / /

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

CLASS ACTION AND INDIVIDUAL COMPLAINT

THERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

## FOURTH CAUSE OF ACTION

### Failure to Pay the Correct Overtime Rate in violation of N.R.S. 608.018

(On Behalf of Plaintiff and Overtime Rate Subclass)

56.    Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

57.    Defendant paid Plaintiff and Overtime Rate Subclass Members a pre-determined fixed percentage "commission," mandatory gratuity, or other non-discretionary bonus each pay period but did not include such payments in the regular rate of pay for purposes of calculating overtime compensation due.

58.    Under the federal Fair Labor Standards Act, the "regular rate" at which an employee must be paid includes "all remuneration for employment paid to, or on behalf of, the employee, divided by hours worked in a workweek." 29 U.S.C. § 207(e).

59.    Under the Code of Federal Regulations, non-discretionary bonuses, such as bonuses for attendance and commissions, must be included in an employee's "regular rate" of pay. See 29 C.F.R. § 778.107-.122; 29 C.F.R. § 778.211 ("Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category. They must be included in the regular rate of pay."); 29 C.F.R. § 778.331 ("[P]rizes paid for cooperation, courtesy, efficiency, highest production, best attendance, best quality of work, greatest number of overtime hours worked, etc., are part of the regular rate of pay.")

60.    By failing to include non-discretionary bonuses in the regular rate of pay of Plaintiff and Overtime Rate Subclass Members, Defendant thus failed to pay the correct rate of overtime premium compensation for each overtime hour worked in violation of N.R.S. 608.018.

61.    Wherefore, Plaintiff demands for herself and for the Overtime Rate Subclass that Defendants pay them the difference between any overtime compensation actually paid and one and one half times their correct "regular rate" of pay for all hours worked during the Class Period in excess of 8 hours in a workday and/or 40 hours in a workweek.

CLASS ACTION AND INDIVIDUAL COMPLAINT

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

### FIFTH CAUSE OF ACTION

#### For Waiting Time Penalties Pursuant to N.R.S. 608.020-.050

(On Behalf of Plaintiff and Waiting Time Penalty Subclass)

62.    Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

63.    N.R.S. 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

64.    N.R.S. 608.030 provides that "[w]henever an employee resigns or quits his or her employment," the employee must be paid no later than the earlier of: (1) seven days after the employee resigns or quits; or (2) the employee's regular payday.

65.    N.R.S. 608.040(1) imposes a penalty on an employer that fails to pay a former employee "[w]ithin 3 days after the wages or compensation of a discharged employee becomes due" or "[o]n the day the wages or compensation is due to an employee who resigns or quits." The penalty is that "the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less." N.R.S. 608.040(1).

66.    N.R.S. 608.050 grants a "lien" to former employees for "the amount of any wages or salary at the time the same becomes due and owing to them under their contract of employment, whether employed by the hour, day, week or month." Under this section, "[E]ach of the employees may charge and collect wages in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default." N.R.S. 608.050.

67.    By failing to pay Plaintiff and Class Members who are former employees of Defendant for all hours and overtime hours worked in violation of N.R.S. 608.016 and N.R.S. 608.018, and by failing to compensate Class Members at the correct overtime rate, Defendant

14

1   has failed to timely remit all wages due and owing to Plaintiff and Class Members who are

2   former employees.

3       68.    Despite demand, Defendant willfully refuses and continues to refuse to pay

4   Plaintiff and other Class Members who are former employees all the wages and compensation

5   due and owing upon their separation from employment.

6       69.    Because there is no express statute of limitations for violations of N.R.S. 608.020-

7   050, the three-year statute contained in N.R.S. 11.190(3) for statutory violations applies.

8       70.    Wherefore, Plaintiff demands for herself and for each Waiting Time Penalty

9   Subclass Member up to thirty days of pay for each and every day during the Class Period that

10  Defendant failed to pay wages or compensation due or owing upon their separation from

11  employment, together with attorneys' fees and costs provided by law.

### SIXTH CAUSE OF ACTION

### For Sex and Pregnancy Discrimination Pursuant to N.R.S. 613.330 and 613.335

(On Behalf of Plaintiff)

15      71.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set

16  forth herein.

17      72.    It is unlawful under Nevada's equal employment opportunity laws, N.R.S. §§

18  613.310-613.345 ("EEO Laws"), for an employer to discriminate against an employee based on

19  the sex of the employee.  Specifically, "it is an unlawful employment practice for an employer:

20  (a) To fail or refuse to hire or to discharge any person, or otherwise to discriminate against any

21  person with respect to the person's compensation, terms, conditions or privileges of employment,

22  because of his or her . . . sex . . .; or (b) To limit, segregate or classify an employee in a way

23  which would deprive or tend to deprive the employee of employment opportunities or otherwise

24  adversely affect his or her status as an employee, because of his or her . . . sex . . . ."

25      73.    In addition, under N.R.S. 613.335:

26      If an employer grants leave with pay, leave without pay, or leave without loss of

27      seniority to his or her employees for sickness or disability because of a medical

28      condition, it is an unlawful employment practice to fail or refuse to extend the

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

15

same benefits to any female employee who is pregnant. The female employee who is pregnant must be allowed to use the leave before and after childbirth, miscarriage or other natural resolution of her pregnancy, if the leave is granted, accrued or allowed to accumulate as a part of her employment benefits.

74.     By engaging in the conduct described earlier above, Defendant created a hostile work environment, and harassed and discriminated against Plaintiff on the basis of her sex and pregnancy.

75.     Plaintiff is informed and believes and, on that basis, alleges that Defendant's conduct was motivated by her sex and condition of pregnancy.

76.     At the time of this filing, Plaintiff has exhausted her administrative remedies with the Nevada Equal Rights Commission ("NERC"), or is in the process of exhausting those remedies.

## SEVENTH CAUSE OF ACTION

### For Tortious Discharge in Violation of Public Policy

(On Behalf of Plaintiff)

77.     Plaintiff incorporates by reference all the allegations contained above as if fully set forth herein.

78.     The acts committed by Defendants and described above are contrary to substantial and fundamental public policies delineated in both state and federal laws, including but not limited to Nevada's EEO Laws and Title VII of the Civil Rights Act, 42 U.S.C. § 2000E-2(a). These state and federal laws articulate substantial and fundamental public policies in favor of a workplace environment free from harassment and discrimination on the basis of sex and condition of pregnancy.

79.     Plaintiff alleges that her termination was wrongful, tortious, and contrary to the public policies of Nevada and of the United States.

///

///

///

16

CLASS ACTION AND INDIVIDUAL COMPLAINT

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

**EIGHTH CAUSE OF ACTION**

**For Intentional Infliction of Emotional Distress**

(On Behalf of Plaintiff)

80.     Plaintiff incorporates by reference all the allegations contained above as if fully set forth herein.

81.     Defendant's conduct as alleged above was extreme and outrageous with the intention of, or reckless disregard for, causing emotional distress to Plaintiff.

82.     Plaintiff suffered severe or extreme emotional distress as a result of Defendants' conduct.

**NINTH CAUSE OF ACTION**

**For Negligent Infliction of Emotional Distress**

(On Behalf of Plaintiff)

83.     Plaintiff incorporates by reference all the allegations contained above as if fully set forth herein.

84.     Defendant owed a duty of care to Plaintiff not to harass her, discriminate against her, retaliate against her, or terminate her in violation of state or federal law or public policy.

85.     By engaging in the conduct described earlier above, Defendant breached the duty of care owed to Plaintiff.

86.     Plaintiff suffered severe or extreme emotional distress as the actual and proximate result of Defendant's conduct.

87.     Plaintiff's emotional distress is manifested by physical symptoms of panic, anxiety, and depression.

**TENTH CAUSE OF ACTION**

**For Nonpayment of Wages by Negotiable Instrument Pursuant to N.R.S. 205.130, 608.130**

(On Behalf of Plaintiff)

88.     Plaintiff incorporates by reference all the allegations contained above as if fully set forth herein.

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

17

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

89. In or around May 2011, Defendant issued a FirstData Money Network check ("Check") to Plaintiff as payment for wages due totaling $1,324.72. Plaintiff deposited the Check in her Wells Fargo bank account on or about May 16, 2011.

90. Thereafter, Plaintiff began making debits and withdrawals against her Wells Fargo account believing Defendant's Check to be valid, good, and otherwise sufficient.

91. In fact, Defendant's Check was returned for insufficient funds on or about May 18, 2011, causing Plaintiff's account to be overdrawn and causing Plaintiff to accrue return fees, overdraft fees, and "NSF" fees.

92. As a result of these fees and Plaintiff's overdrawn account, Wells Fargo closed Plaintiff's account on or about June 2, 2011.

93. Defendant has at all relevant times refused to reimburse Plaintiff for penalties, charges, fees, and other out-of-pocket costs ("Check Damages") incurred as a result of Defendant's bad Check.

94. N.R.S. 608.130(3) provides that "[a]n employer who knowingly issues to an employee a negotiable instrument in payment of wages for which there is insufficient money, property or credit with the drawee of the instrument to pay it in full upon presentation shall reimburse the employee for any penalty or charge incurred by the employee arising from his or her reliance on the validity of the instrument."

95. In addition, N.R.S. 205.130 provides for restitution and other penalties and remedies when any person "willfully, with an intent to defraud" issues a check or draft without sufficient money or credit.

96. Plaintiff alleges that Defendant's conduct as hereinabove described was willful, knowing, and with intent to defraud Plaintiff.

97. Wherefore, Plaintiff demands restitution and reimbursement for her Check Damages in an amount according to proof, as well as any other remedy or penalty provided by law, including attorneys' fees and costs.

/ / /

/ / /

18

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of Class members and all others similarly situated, prays for relief as follows:

1.     For an order certifying this action as a class action on behalf of the proposed Class and Subclasses;

2.     For an order appointing Plaintiff as representative of the Class and appointing her counsel as class counsel;

3.     For compensatory damages for the payment of all hours worked pursuant to N.R.S. 608.016, according to proof;

4.     For compensatory damages for the payment of overtime premium pay pursuant to N.R.S. 608.018, according to proof;

5.     For waiting time penalties pursuant to N.R.S. 608.040-.050;

6.     On Plaintiff's individual claims, for compensatory damages, including lost wages, front pay, lost employee benefits, out-of-pocket costs and expenses (including Check Damages and medical expenses), and punitive damages, as well as other special and general damages;

7.     For interest as provided by law at the maximum legal rate;

8.     For reasonable attorneys' fees authorized by statute;

9.     For costs of suit incurred herein;

10.    For such other and further relief as the Court may deem just and proper.

Dated this 11th day of May 2012                        THIERMAN LAW FIRM

By: _____
MARK R. THIERMAN
JASON J. KULLER
JOSHUA D. BUCK
*Attorneys for Plaintiff*

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

CLASS ACTION AND INDIVIDUAL COMPLAINT