Elayna J. Youchah, Bar No. 5837
youchahe@jacksonlewis.com
JACKSON LEWIS LLP
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 921-2460
Fax: (702) 921-2461

*Attorneys for Defendant*
*Nevada Property 1, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DARLENE LEWIS, on behalf of herself and all others similarly situated, | ) ) Case No.: 2:12-cv-01564-MMD-GWF |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| NEVADA PROPERTY 1, LLC, d/b/a the Cosmopolitan of Las Vegas; and DOES 1 through 50, inclusive, | ) ) ) ) |
| Defendants. | ) ) ) |

# DEFENDANT NEVADA PROPERTY 1, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CIRCULATION OF NOTICE PURSUANT TO 29 U.S.C. § 216(b)

# TABLE OF CONTENTS

**Page**

DEFENDANT'S OPPOSITION AND SUMMARY OF ARGUMENT ................................2

I.      MEMORANDUM OF POINTS AND AUTHORITIES ................................3

        INTRODUCTION ................................3

II.     STATEMENT OF FACTS ................................4

        A.      Nature of the Case and Allegations Made ................................4

        B.      Lewis Is a Putative Class Member in an Earlier Filed Nevada
                State Court Proceeding Raising Parallel Claims ................................5

        C.      Procedural History ................................6

        D.      Background Facts ................................7

III.    DISCUSSION ................................8

        A.      Given the First-Filed *Megia* Action, Notice in This Case Would
                Be Unwarranted ................................8

                1.      Class notice is inappropriate because the two cases are
                        substantially similar ................................9

                2.      Given the significantly greater progress made in the
                        *Megia* case, notice in this action would be wasteful,
                        duplicative and confusing ................................11

                3.      Due to the presence of significant common state-law
                        issues, the addition of federal claims in this case does
                        not warrant notice in separate proceedings................................11

        B.      There Is No Evidence That Plaintiff Is Similarly Situated to a
                Proposed Class................................12

                1.      Legal standards for conditional certificate and notice and notice ................................12

                        a.      The Court should approve notice only in an
                                appropriate case ................................12

                        b.      Plaintiff bears the burden of demonstrating through
                                substantial allegations and competent evidence that she
                                is similarly situated to the proposed class................................13

2.  Plaintiff has no evidence of a similarly-situated class of employees subject to a common plan or policy to change uniforms off the clock ................................................................14

    a.  Plaintiff has failed to identify similarly-situated members of the proposed class ................................................14

    b.  No evidence exists of any common practice ............................................16

3.  No evidence exists that there are similarly-situated individuals Individuals who were subject to a common plan or policy to "bank" off the clock ................................................................18

    a.  Lewis has failed to meet her burden of producing at least some evidence of a similarly-situated class ........................18

    b.  There is no common policy requiring employees to bank off the clock ................................................19

    c.  There is no evidence of any common practice regarding off-the clock "banking" ................................................20

4.  Prudence and judicial economy caution against class notice as to Plaintiff's claim regarding computation of the regular rate before the Court has addressed threshold legal issues ................................................................22

5.  Plaintiff has produced no evidence that similarly-situated others desire to opt in ................................................23

C.  Plaintiff offers no basis for tolling the statute of limitations ............................................24

D.  Objections to Plaintiff's proposed notice, consent and order ............................................25

1.  Plaintiff has failed to properly define a potential case ............................................25

2.  The proposed notice is inadequate and overreaching in other respects, and contains provisions that are necessary ............................................26

3.  Inadequacy of proposed form consent ............................................27

4.  Objections to proposed order ............................................27

IV.  CONCLUSION ............................................28

## TABLE OF AUTHORITIES

**Page**

*Acton v. City of Columbia*
Case No. 03-4159-CV-NKL
2004 U.S. Dist. LEXIS 19004 (W.D. Mo. September 10, 2004)
*aff'd* 436 F.3d 969 (8th Cir. 2006) ...............................................................................23

*Alvarez-Machain v. U.S.*
107 F.3d 696 (9th Cir. 1997) .........................................................................................24

*Am. Int'l Underwriters , (Philippines), Inc. v. Cont'l Ins. Co.*
843 F.2d 1253 (9th Cir. 1988) .........................................................................................9

*Banks v. Robinson*
Case No. 2:11-cv-004410RLH-PAL
2011 U.S. Dist. LEXIS 83939 (D. Nev. July 26, 2011)..........................................9, 15

*Bennett v. Hayes Robertson Group, Inc.*
Case No. 11-10105-CIV-KING
2012 U.S. Dist. LEXIS 100921 (S.D. Fla. July 20, 2012)...............................................26

*Berellez v. Alvarez-Machain*
522 U.S. 813 (1997)......................................................................................................24

*Bernard v. Houshold Int'l, Inc.*
231 F.Supp.2d 433 (E.D. Va. 2002) ...........................................................................13

*Bonilla v. Las Vegas Cigar Co.*
61 F.Supp.2d 1129 (D. Nev. 1999).............................................................17, 18, 24

*Camper v. Home Quality Mgmt, Inc.*
200 F.R.D. 516 (D. Md. 2000).....................................................................................13

*Castle v. Wells Fargo*
Case No. C06-4347
2008 U.S. Dist. LEXIS 106703 (N.D. Cal. February 20, 2008) .................................18

*Cerit v. Cerit*
188 F. Supp. 2d 1239 (D. Haw. 2002) ........................................................................11

*Clark v. City of Ft. Worth*
800 F.Supp.2d 776 (N.D. Tex. 2011) ..........................................................................24

*Colorado River Water Conservation Dist. v. U.S.*
424 U.S. 800 (1976) ...........................................................................2, 4, 6, 8, 9, 10

*Colson v. Avnet, Inc.*
687 F.Sup.2d 914 (D. Ariz. 2010) ..............................................................................13

*Cranney v. Carriage Services, Inc.*
559 F.Supp.2d 1106 (D. Nev. 2008).............................................................................24

*D'Anna v. M/A-COM*
903 F.Supp. 889 (D. Md. 1995)....................................................................................13

*Dybach v. Fla. Dep't of Corr.*
    942 F.2d 1562 (11th Cir. 1991) ..........................................................................23

*Gintz v. Jack In The Box, Inc.*
    Case No. C 06-02857 CW
    2006 U.S. Dist. LEXIS 88987 (N.D. Cal. November 28, 2006)..............................11

*Freeman v. Wal-Mart Stores, Inc.*
    256 F.Supp. 2d 941 (W.D. Ark. 2003)...................................................................13

*Gordon v. Kaleida Health*
    Case No. 08-cv-378S
    2009 U.S. Dist. LEXIS 95729 (W.D.N.Y. October 14, 2009) ................................27

*Grayson v. K-Mart Corp.*
    79 F.3d 1086 (11th Cir. 1996) .......................................................................12, 13

*Guan Ming Lin v. Benihana Nat'l Corp.*
    755 F. Supp. 2d 504 (S.D.N.Y. 2010).....................................................................14

*H & R Block, Ltd. V. Housden*
    186 F.R.D. 399 (E.D. Tex. 1999)...........................................................................13

*Hinojos v. Home Depot, Inc.*
    Case No. 2:06-cv-00108
    2006 U.S. Dist. LEXIS 95434 (D. Nev. December 1, 2006)....................17, 19, 21

*Hoffman-La Roche, Inc. v. Sperling*
    493 U.S. 165, 173 (1989)......................................................................................12

*Hoffman v. Sbarro, Inc.*
    982 F.Supp. 249 (S.D.N.Y. 1997) .........................................................................13

*Holt v. Rite Aid Corp.*
    333 F.Supp. 2d 1265 (M.D. Ala. 2004) ............................................................13, 23

*Koval v. Pac. Bell Tel. Co.*
    Case No. C-12-1627-CW
    2012 U.S. Dist. LEXIS 113196 (N.D. Cal. August 10, 2012)...................9, 10, 11

*Leuthold v. Destination Am., Inc.*
    224 F.R.D. 462 (N.D. Cal. 2004)......................................................................12, 13

*Lusardi v. Lechner*
    855 F.2d 1062 (3d Cir. 1988)..................................................................................12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
    460 U.S. 1 (1983)......................................................................................................9

*Nakash v. Marciano*
    882 F.2d 1411 (9th Cir. 1989) ...........................................................................9, 11

*Nesbit v. Fornaro*
    Case No. 2:11-cv-00092-PMP-GWF
    2011 U.S. Dist. LEXIS 52335 (D. Nev. March 31, 2011)
    aff'd 2011 U.S. Dist. LEXIS 52547 (D. Nev. May 12, 2011).................................10

*Pacheco v. Boar's Head Provisions Co., Inc.*
    671 F.Supp. 2d 957 (W.D. Mich. 2009) ........................................................14

*Parker v. Rowland Express, Inc.*
    492 F.Supp. 2d 1159 (D. Minn. 2007) ...................................................13, 24

*Purdham v. Fairfax County Pub. Schools*
    629 F.Supp. 2d 544 (E.D. Va. 2009) .....................................................17, 19

*Robbins-Pagel v. Puckett*
    Case No. 6:05-cv-1582-Orl-31DAB
    2006 U.S. Dist. LEXIS 85253 (M.D. Fla. November 22, 2006) .........................26

*Ross v. U.S. Bank N.A.*
    542 F.Supp. 2d 1014 (N.D. Cal. 2008) ..............................................9, 10, 11

*Sarviss v. Gen. Dynamics Info. Tech., Inc.*
    663 F.Supp. 2d 883 (C.D. Cal. 2009) ...........................................15, 17, 18

*Severtson v. Phillips Beverage Co.*
    137 F.R.D. 264 (D. Minn. 1991).........................................................12, 13

*Silverman v. SmithKline Beecham*
    Case No. CV 06-7272 DSF (CTx)
    2007 U.S. Dist. LEXIS 80030 (C.D. Cal. October 15, 2007).........................24

*Simmons v. T-Mobile USA, Inc.*
    Case No. H-06-1820
    2007 U.S. Dist. LEXIS 5002 (S.D. Tex. January 24, 2007).........................18

*Smith v. T-Mobile USA, Inc.*
    Case No. CV 05-5274 ABC
    2007 U.S. Dist. LEXIS 60729 (C.D. Cal. August 15, 2007).........................13

*Thiessen v. Gen. Elec. Capital Corp.*
    267 F.3d 1095 (10th Cir. 2001) ...................................................13, 14, 17

*Whittemore v. Seeno*
    Case No. 3:12-cv-00063-LRH-WGC
    2012 U.S. Dist. LEXIS 128995 (D. Nev. September 11, 2011).........................9, 11

**RULES AND STATUTES**

29 U.S.C. § 206 ..................................................................................5

29 U.S.C. § 207(e)(2)..........................................................................5, 22

29 U.S.C. § 216(b) ...........................................................................2, 12

NRS 608.016    ..................................................................5

NRS 608.018    ..................................................................5

NRS 608.020    ..................................................................5

NRS 608.050 .................................................................................5

NRS 608.140 .................................................................................5

NRS 608.250 .................................................................................5

**OTHER AUTHORITIES**

29 C.F.R. § 778.217(a).................................................................23

29 C.F.R. § 778.217(d).................................................................23

29 C.F.R. § 778.224(b).................................................................23

## DEFENDANT'S OPPOSITION AND SUMMARY OF ARGUMENT

Defendant Nevada Property 1, LLC ("Defendant" or "The Cosmopolitan"), by and through its counsel of record, submits its Opposition to Plaintiffs' Motion for Circulation of Notice Pursuant to 29 U.S.C. § 216(b) (the "Motion"). In a nutshell, Plaintiff's Motion should be denied because (1) Plaintiff's claims should be dismissed or stayed pursuant to the doctrine announced in *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976), as argued at length in Defendant's pending Motion to Dismiss; and (2) the Motion fails to meet even the lenient evidentiary standard required for conditional certification and approval of notice applied by the courts at this initial stage. Plaintiff has proffered no evidence that there are similarly-situated individuals who desire to opt into this action. Nor has she shown the existence of any common policy, plan or practice requiring employees to change into and out of uniforms, or to obtain and return cash banks, off the clock. Notice is also inadvisable at this stage with respect to Plaintiff's claim that The Cosmopolitan failed to include a meal card in the computation of her regular rate for purposes of calculating her overtime premiums. There are substantial legal arguments that such a practice is permitted under the Fair Labor Standards Act ("FLSA"), and it would be a waste of judicial economy and resources to allow notice to be given before this threshold legal issue is resolved by the Court.

This Opposition is based upon the below Memorandum of Points and Authorities, the attached exhibits, all pleadings and documents on file with the Court, and any argument that the Court deems proper.

Dated this 19th day of November, 2012.

JACKSON LEWIS LLP


_____/s/ Elayna J. Youchah_____
Elayna J. Youchah, Bar #5837
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169

*Attorneys for Defendant*
*Nevada Property 1, LLC*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

It is the plaintiff who has the burden of demonstrating that a proposed FLSA collective action is appropriate for conditional class certification and notice. Plaintiff Darlene Lewis ("Lewis") fails to carry her burden in this case.

For several reasons, this is not an appropriate case for issuance of notice. First, as argued below and elsewhere, this case should be dismissed in deference to the parallel and first-filed state court action filed against The Cosmopolitan by Melodee Megia ("Megia"), which moots the notice question. Second, it is well settled that a plaintiff's burden is not satisfied when the plaintiff fails to adduce evidence that she is similarly situated to a potential class. Here, Plaintiff presents no evidence of any Company-wide policy or practice requiring employees to change uniforms on premises but off the clock, or to obtain and return their daily cash "banks" without recording this time as part of time worked. Nor can she: no such policy exists, and no such practice was ever established.

Accordingly, Lewis cannot demonstrate that she is similarly situated to other non-exempt Cosmopolitan employees who wear uniforms at work. Of the three declarations she offers in support of her motion – her own, that of Megia, and that of former employee Brianne Adame – not one can show that uniform wearers at The Cosmopolitan were subject to a common policy or practice to change clothing on property without pay. In point of fact, the evidence reveals that most non-exempt Cosmopolitan employees, regardless of position, choose to wear their uniform to and from work and either do not know of any policy prohibiting them from doing so, or believe that if there was such a policy, it was either never enforced or abandoned soon after the property opened its doors. There simply is no identifiable class of individuals that together was the victim of a common policy, plan or practice – a necessary element for conditional class certification.

Likewise, Lewis has presented no evidence of any Company-wide policy or practice requiring employees to obtain and return cash banks off the clock. The banking procedures to which Lewis was subject were unique to her position. Employees holding other positions followed a different procedure and used a different process to obtain and return cash. As shown below, Lewis is not similarly situated to these employees.

Finally, Plaintiff's allegation that The Cosmopolitan erred in omitting the cost of employee meal cards in computing the regular rate for overtime compensation raises a threshold legal issue that should be resolved *before* the Court considers the propriety of sending notice to thousands of former and current hourly employees.  There is no reason to incur the sizeable cost and expense of class notice when no claim may exist as a matter of law.  For all of these reasons, the motion should be denied.

## II. STATEMENT OF FACTS

**A.     Nature of the Case and Allegations Made.**

The Cosmopolitan of Las Vegas is a luxury resort hotel and casino on the Las Vegas Strip which opened for business on December 15, 2010.  Declaration of Daniel Espino, attached as Exhibit 1 (hereinafter "Espino Decl.") ¶ 1.  Lewis worked for The Cosmopolitan as a casino Slot Guest Service Representative.  *Id.* ¶ 6.  She was discharged on May 8, 2012 for violation of Company policy and standards of conduct.  *Id.*

Lewis filed the instant action on August 31, 2012 on behalf of herself and all others similarly situated, alleging wage and hour violations under both the FLSA and Nevada law.  Lewis' federal claims are the only ones at issue in Plaintiff's Motion.  In asserting her federal FLSA claims, she alleges that The Cosmopolitan:

> (1)     required Lewis and other employees who wear uniforms at work to change into and out of their uniforms at a locker room in the "Garment District" but did not pay them for these activities, which they performed before signing into the time keeping system at the start of the shift and after signing out of the system at the end of the shift;[1]

> (2)     required Lewis and others whose duties included managing cash to retrieve a cash bank each day from a money repository before clocking in and to return the cash bank after clocking out, without payment; and

> (3)     paid Lewis and other putative class members a "lunch stipend" but failed to include its monetary value in the computation of the regular rate of pay used to calculate overtime compensation.

Dkt # 6, First Amend. Collective & Class Action Complaint (hereinafter "Lewis Compl.") ¶¶ 7-13; Plaintiff's Motion at 1-2.  Lewis contends in her first and second causes of action that the alleged "off-

---

[1]     This claim is identical to a claim made in the action filed by Melodee Megia in Nevada State Court.  *See* Defendant's Reply in Support of its Motion to Dismiss Pursuant to the *Colorado River*, filed simultaneously herewith, Exhibit 2 ¶ 8 and First Cause of Action ¶¶ 31-39.

the-clock" work violated the minimum wage and overtime provisions of the FLSA, 29 U.S.C. §§ 206 and 207. *See Lewis* Compl. ¶¶ 19-33. She also asserts in her fifth cause of action a FLSA claim under 29 U.S.C. section 207(e) for failure to pay the correct overtime rate based on the alleged erroneous computation of the regular rate of pay.[2] *See id.* ¶¶ 56-61.

## B. Lewis Is a Putative Class Member in an Earlier-Filed Nevada State Court Proceeding Raising Parallel Claims.

On May 11, 2012, months before Lewis filed this case, Lewis's counsel filed a separate class action lawsuit against The Cosmopolitan, initially styled *Melodee Megia v. The Cosmopolitan Resort and Casino*, in the District Court for Clark County, Nevada, where it remains pending under case number A-12-661665-C.[3] Like Lewis, Megia alleges that The Cosmopolian required Megia and other putative class members to change into and out of a work uniform on Defendant's premises each day "off the clock," without payment. *Compare* Megia's Second Amended Class Action and Individual Complaint, attached as Exhibit 2 (hereinafter "Megia State Compl."), ¶ 8 *with* Lewis Compl. (Dkt # 6) ¶ 8. She further alleges that Defendant failed to include certain non-discretionary bonus payments in its computation of the regular rate of pay used to calculate overtime compensation, improperly rounded putative class members' in and out times, and failed timely to pay all wages due upon termination of employment. *See* Megia State Compl. (Exhibit 2) ¶¶ 7, 9-10. Megia's state-law claims seeks relief for failure to pay wages for all hours worked, to pay the minimum wage, and to pay overtime premiums and is largely identical to those asserted by Lewis.[4] *Compare* Exhibit 2 hereto, Megia State Compl., (First, Third and Fourth Causes of Action) *with* Lewis Compl. (Dkt. # 6) (Third, Fourth and Fourth [sic] causes of action). Furthermore, like Lewis, Megia also asserts a claim for failure to pay the correct overtime

---

[2]    In Plaintiffs third, two fourth and sixth causes of action, she assert parallel and derivative claims under Nevada law based on alleged violations of state-law provisions requiring payment of wages for all hours worked, of a minimum wage, and of an overtime premium (NRS 608.140, 608.016, 608.250, 608.018), and for payment of all compensation due upon termination of employment (NRS 608.140, 608.020-.050). *See* Lewis Compl. ¶¶ 34-55, 62-69.

[3]    As in this case, Megia initially misnamed the defendant as "Cosmopolitan Hotels & Resorts, Inc." but later amended to substitute the correct name, Nevada Property I, LLC, d/b/a The Cosmopolitan of Las Vegas. The defendants in both actions are identical.

[4]    The only differences are that Megia does not allege wage claims based on visits to the satellite bank, whereas Lewis has elected not to raise a claim based on improper rounding (asserted in Megia's second cause of action).

rate based on an alleged erroneous computation of the regular rate of pay (albeit based on the omission of bonuses rather than a meal card, and under state rather than federal law). *Compare* Exhibit 2, Megia State Compl. (Fifth Cause of Action) *with* Lewis Compl. (Dkt. # 6) (Fifth Cause of Action). And like Lewis, Megia seeks relief based upon an alleged failure to timely pay all compensation due upon termination of employment. *Compare* Exhibit 2, Megia State Compl. (Sixth Cause of Action) *with* Lewis Compl. (Dkt. # 6) (Sixth Cause of Action).

Importantly, Lewis and Megia seek to represent the identical putative class: "All hourly non-exempt workers employed by Defendant … at anytime during the three years prior to the filing of this Complaint until the date of judgment after trial herein (the "Class Period")." Lewis Compl. ¶ 15; Megia State Compl. (Exhibit 2) ¶ 18. Both would divide this class into four subclasses, which (with the exception of only one) they describe in identical or materially overlapping terms.[5] And both seek the same relief: unpaid wages at the regular rate or minimum rate, whichever is higher, overtime pay, and waiting time penalties under Nevada law. *See* Lewis Compl. (Dkt. # 6), Prayer; Megia State Compl. (Exhibit 2), Prayer.

## C.   **Procedural History.**

On October 15, 2012, Defendant filed a motion to dismiss or stay this action under *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976), in deference to the pending parallel state proceeding in the *Megia* case. Dkt # 10. Plaintiff filed her response in opposition to the motion on October 29. No scheduling order has as yet issued in this matter and no discovery has been initiated. Importantly, no opt-in consent to join this action has been filed by any person.

---

[5]     In particular, the two Complaints define the following: (1) the *Uniformed Subclass*, comprising "all current and former hourly paid employees who, at any time during the Class Period, were required to change into [and/or out of] employer-mandated uniforms on company premises"; (2) the "*Wages Due and Owing Subclass*" (identified in *Megia* as the "*Waiting Time Subclass*"), comprised of "all current and former hourly paid employees who, at any time during the Class Period, were terminated or otherwise separated from employment"; (3) the "*Overtime Rate Subclass*", comprised of "all current and former hourly paid employees who, at any time during the Class Period, were paid," in the *Lewis* case, a lunch stipend [or, in the *Megia* case, a percentage commission, mandatory gratuity, or other payment based upon a customer surcharge]; and (4) in the *Lewis* case, the *Satellite Bank Subclass*, comprised of "all current and former hourly paid employees who, at any time during the Class Period, were required to frequent the "satellite bank," or any other money reserve location, pre-shift and/or post-shift [or, in the *Megia* case, the *Rounding Error Subclass*, comprised of "all current and former hourly paid employees who, at any time during the Class Period, were subject to Defendant's 'rounding' policy." *Lewis Compl.* (Dkt. # 6) ¶ 16; Megia State Compl. (Exhibit 2) ¶ 20.

Just two days after The Cosmopolitan moved for dismissal, Lewis filed her Motion for Circulation of Notice pursuant to section 216(b) of the FLSA (hereinafter, the "Motion"). Dkt # 11. Plaintiff's Motion asks the Court to authorize Plaintiff to give notice of her claims under the FLSA not to any subclass, but rather to a sweeping putative "class" of more than 4,000 current and former hourly employees of The Cosmopolitan.[6] As shown below, there is no evidence that Plaintiff's off-the-clock and other claims arise from policies or practices commonly applicable to this class, or even to any of the subclasses proposed in the Complaint.

## D.    **Background Facts.**

The Cosmopolitan Las Vegas broadly divides its operations into 13 functional Divisions: Beverage, Casino, Corporate, Entertainment, F&B Administration, Food, General and Administrative, Hotel, Information Technology, Marketing and Advertising, Other Operating Income & Expense, Property Management and Retail. Exhibit 1, Espino Decl., ¶ 3. Each division, in turn, is composed of multiple different Departments. Some consist of individual food and beverage operations like bars or restaurants, while others relate to particular casino, hotel or corporate functions. *Id.* Altogether, there are 152 Departments, each with its own management and supervisory structure. *Id.* These Departments independently manage their daily operations  *Id.* Department management directs the activities of staff members, evaluates their performance and sets work hours and schedules. *Id.*

Approximately 3,700 employees, also known as "CoStars," presently fill 180 different positions classified as "hourly." *Id.* ¶ 5. Hourly employees hold such varying job titles as Dealer, Slot Technician, Mixologist, Administrative Assistant, Membership Representative, Carpenter Shop Engineer, Nail Technician, Parking Attendant, Lifeguard, Cook, Food Server and Linen Runner, performing widely divergent job duties. *Id.* Different departments may have overlapping job

---

[6]    Plaintiff does not ask the Court to certify a class or approve notice with respect to her claims under Nevada law, which largely replicate the state-law claims asserted in the *Megia* action. As discussed below, the parties have agreed to a carefully crafted time table in *Megia*, under which class certification will be considered once discovery regarding the proper scope of the class is complete. *See* Joint Case Conference Report (*Megia*), attached hereto as Exhibit 3 at 5. Plaintiff's decision here to segregate conditional certification of her FLSA claims from certification of her state-law claims highlights the piecemeal nature of this litigation, which strongly militates in favor of dismissing (or, at a minimum staying) this case and allowing all claims to be addressed in the first-filed state court proceeding.

1  classifications.  For example, there are Cashiers in several different and unrelated Departments.  *Id.*

2  While their job duties are similar, the daily activities of any particular Cashier are subject to the

3  direction of the manager responsible for the Department to which the Cashier is assigned.  *Id.*

4       In support of her motion, Lewis offers Declarations signed by herself (Dkt # 11, Exhibit 3),

5  Melodee Megia (Dkt # 11, Exhibit 5) and Brianne Adame (Dkt # 11, Exhibit 4).  Lewis worked for The

6  Cosmopolitan from November 29, 2010 until her termination on May 8, 2012 as a Slot Guest Service

7  Representative in the Slot Operations Department, which is part of the casino.  Exhibit 1, Espino Decl., ¶

8  6.  While Lewis seeks to send notices to approximately 4,000 current and former employees, there are

9  presently 31 active employees in the Slot Guest Service Representative job classification.  *Id.*

10       Megia was employed by The Cosmopolitan in the position of Dispatch/Order Taker in the Room

11  Service Department from November 10, 2010 and ceased actively working for The Cosmopolitan on

12  August 16, 2011.  *Id.* ¶ 7.  She was discharged for performance reasons.  *Id.*  The Cosmopolitan

13  presently employs approximately 17 Room Service Dispatch/Order Takers.  *Id.*  Adame was hired by

14  The Cosmopolitan on December 27, 2010 as a Busperson in the Room Service Department.  *Id.* ¶ 8.

15  Less than a month later, on January 21, 2011, she transferred to the position of Cashier, working in the

16  Pizzeria Department.  *Id.*  Adame's employment with The Cosmopolitan ceased in August 2011.  *Id.*

17  There are currently 21 Buspersons in Room Service and three Cashiers in the Pizzeria.  *Id.*

18       Both Megia and Adame have asserted personal claims against The Cosmopolitan after the

19  Company terminated their employment.  Adame has filed a charge of discrimination with the Nevada

20  Equal Rights Commission, claiming sex discrimination.  *See* Declaration of Brianne Adame, Dkt # 11,

21  Exhibit 4 (hereinafter "Adame Decl."), ¶ 2.  Megia's lawsuit, in turn, incorporates causes of action for

22  discrimination and other personal relief relating to the termination of her employment.  *See* Exhibit 2;

23  Declaration of Melodee Megia, Dkt # 11, Exhibit 5 (hereinafter "Megia Decl."), ¶ 2.

24                      **III. DISCUSSION**

25  **A.**    **Given the First-Filed *Megia* Action, Notice in This Case Would Be Unwarranted.**

26       As discussed in Defendant's Motion to Dismiss Pursuant to the *Colorado River* Doctrine (Dkt #

27  10), Plaintiff is a member of the putative class proposed in the earlier-filed *Megia* action.  The claims

28  asserted in this case are largely duplicative of those asserted in *Megia*.  There are strong grounds to

dismiss the present case in deference to the parallel state court proceeding. Class notice therefore would serve no purpose and not be an efficient use of judicial resources. *See Banks v. Robinson*, No. 2:11-cv-00441-RLH-PAL, 2011 U.S. Dist. LEXIS 83939, *17 (D. Nev. Jul. 26, 2011) ("it makes little sense to allow conditional certification of a Section 216(b) collective action while the motion to dismiss is pending").

Under *Colorado River*, a federal court may properly dismiss or stay a federal action in deference to concurrent state court proceedings based on "considerations of wise judicial administration."[7] *Colorado River*, 424 U.S. at 817. The *Colorado River* doctrine serves the important purpose of avoiding the piecemeal litigation that results when a first-filed state court action raises in essence the same matters as the later-filed federal case. *See Moses H. Cone,* 460 U.S. at 16 ("By far the most important factor in our decision to approve the dismissal [in *Colorado River*] was the clear federal policy . . . [of] avoidance of piecemeal adjudication..."). "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters,* 843 F.2d at 1258.

### 1. Class notice is inappropriate because the two cases are substantially similar.

However, "exact parallelism" between the state and federal proceedings is not required, so long as the cases are substantially similar. *Nakash,* 882 F.2d at 1416; *Ross v. U.S. Bank N.A.*, 542 F. Supp. 2d 1014, 1021 (N.D. Cal. 2008). Claims need not be identical for *Colorado River* to apply. *See Nakash,* 882 F.2d at 1417; *Whittemore v. Seeno*, No. 3:12-CV-00063-LRH-WGC, 2012 U.S. Dist. LEXIS 128995, *12 (D. Nev. Sep. 11, 2011) ("The fact that there is not complete overlap and that the federal action additionally involves claims and issues that are related in history but collateral to those core issues does not alter the court's conclusion."); *Koval v. Pac. Bell Tel. Co.*, No. C 12-1627 CW, 2012

---

[7] Courts weigh the following factors in determining whether to dismiss or stay all or part of an action due to concurrent state court proceeding: (1) whether the state or federal court has assumed jurisdiction over property, (2) the relative convenience of the two forums, (3) the desirability of avoiding piecemeal litigation, (4) the order in which the forums obtained jurisdiction, (5) whether state or federal law controls, and (6) whether the state proceeding is adequate to protect the parties' rights. *See Nakash v. Marciano,* 882 F.2d 1411, 1415 (9th Cir. 1989) (citing *Colorado River,* 424 U.S. at 818; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25-26 (1983)). These factors "are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" *Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.,* 843 F.2d 1253, 1257 (9th Cir. 1988) (quoting *Moses H. Cone,* 460 U.S. at 16).

U.S. Dist. LEXIS 113196, *10 (N.D. Cal. Aug. 10, 2012) (substantial-similarity test was satisfied because "[a]lthough the federal action cite [sic] violations of statutes [including FLSA] not included in the state action, both actions assert similar factual allegations, and the 'crux' of the cases is the same: whether or not Pacific Bell denied meal and rest period breaks to field personnel").

Likewise, the parties need not be identical. *See Ross*, 542 F. Supp. 2d at 1021 (where same putative class is alleged, the parties are sufficiently similar); *Nesbit v. Fornaro,* No. 2:11-cv-00092-PMP-GWF, 2011 U.S. Dist. LEXIS 52335, *7 (D. Nev. Mar. 31, 2011) (Mag. J.) ("In collective or class action lawsuits, it is the classes, and not the class representatives, that are compared."), *aff'd,* 2011 U.S. Dist. LEXIS 52547 (D. Nev. May 12, 2011).  Here, the exact same putative class is alleged in both the state and the federal case, the same plaintiff's counsel has appeared in both cases, and the class periods for both cases are close to the same.  Therefore, application of the *Colorado River* doctrine is appropriate, and no further action should be taken on the class claims here. *See Koval,* 2012 U.S. Dist. LEXIS 113196 at *10; *Ross*, 542 F. Supp. 2d at 1021-22.

In *Ross*, the substantial-similarity test was satisfied where the federal action asserted essentially the same state-law claims as actions the plaintiffs had filed in Oregon state court, even though the federal action included additional claims under the FLSA. *See id.* at 1022.  Because Lewis's claims could have been asserted in the *Megia* case, this factor weighs in favor of dismissal and against issuance of notice.[8] *See id.*; *Koval,* 2012 U.S. Dist. LEXIS 113196 at *11 ("this factor favors a stay where plaintiffs chose not to add their FLSA claim to the state court action").  Indeed, Megia's omission of Lewis's claim that meal cards were not included in computing the regular rate reflects the type of *ad hoc* picking and choosing that is at the heart of piecemeal litigation. *See Ross*, 542 F. Supp. 2d at 1022 (plaintiffs' unexplained failure to assert all available claims in the state court action created precisely "the kind of piecemeal litigation that the *Colorado River* doctrine intends to prevent"); *Koval,* 2012 U.S. Dist. LEXIS 113196 at *12 ("[plaintiff] offers no explanation for his failure to include a FLSA overtime claim in his complaint" and "his failure to do so has resulted in piecemeal litigation").

---

[8]     The only real difference between the two cases relates to the alleged requirement to frequent the satellite bank off the clock.  Should the Court conclude that dismissal or stay of this claim is unwarranted, the scope of any notice under consideration here should also be limited solely to this allegation.

2.      **Given the significantly greater progress made in the *Megia* case, notice in this action would be wasteful, duplicative and confusing.**

The order of jurisdiction also favors dismissal and cautions against notice. *See Ross*, 542 F. Supp. 2d at 1022; *Whittemore*, 2012 U.S. Dist. LEXIS 128995 at *15 (even though the actions were filed only five days apart, the fact that relatively more progress occurred in the state action than in the federal action was a factor warranting stay). Discovery in *Megia* is underway as demonstrated in Defendant's Reply in Support of its Motion to Dismiss, Exhibits 3-6. Moreover, in that case – unlike here – discovery is proceeding pursuant to an agreed, carefully crafted, phased discovery process and time table, with initial discovery directed specifically at identifying the proper scope of the class. *See* Joint Case Conference Report (*Megia*), attached hereto as Exhibit 3 at 5. No such discovery has taken place here. Under these circumstances, issuance of multiple class notices in different cases using divergent class definitions would not only waste precious resources but risk confusing potential class members.

3.      **Due to the presence of significant common state-law issues, the addition of federal claims in this case does not warrant notice in separate proceedings.**

Moreover, the FLSA claims asserted here are largely federal-law equivalents of both plaintiffs' state-law claims, over which the state court has concurrent jurisdiction. The mere existence of federal-law issues does not justify piecemeal and duplicative litigation. *See Ross*, 542 F. Supp. 2d at 1022 (existence of state-law wage and hour claims in addition to claims under the FLSA weighed in favor of a stay); *Koval*, 2012 U.S. Dist. LEXIS 113196 at *15 (accord, and noting additionally that resolution of the state-law issues will reduce the federal claim); *Whittemore*, 2012 U.S. Dist. LEXIS 128995 at *16 (source of law factor favored a stay where concurrent state jurisdiction existed); *Cerit v. Cerit*, 188 F. Supp. 2d 1239, 1250 (D. Haw. 2002) ("where state law issues predominate, the source of law is of diminished importance"); *Nakash*, 882 F.2d at 1416 ("If the state and federal courts have concurrent jurisdiction over a claim, [the source of law] factor becomes less significant."). Indeed, "allowing a substantially similar federal action to proceed would likely encourage forum shopping." *Koval*, 2012 U.S. Dist. LEXIS 113196 at *17 (quoting *Gintz v. Jack In The Box, Inc.*, No. C 06-02857 CW, 2006 U.S. Dist. LEXIS 88987, *20 (N.D. Cal. Nov. 28, 2006)).

In sum, in view of the pending first-filed *Megia* action, Plaintiff's Motion should be denied.

**B.**     **There Is No Evidence That Plaintiff Is Similarly Situated to a Proposed Class.**

    **1.**     **Legal standards for conditional certification and notice.**

Under the FLSA, an action to recover for alleged failure to pay minimum wage or overtime "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).   In 1947, Congress amended the FLSA to require a party wishing to join a collective action to file a written consent.[9]  *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989).  An employee who elects to file no consent is not bound by the outcome of the collective action.  *See Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004).

        *a.*     *The Court should approve notice only in an appropriate case.*

District courts have considerable discretion in managing FLSA collective actions, including whether certification of a collective action is appropriate, *see id.*, and how and when notice is provided, *see Hoffmann-La Roche Inc.,* 493 U.S. at 171-73.  Although the Ninth Circuit has not prescribed a single rule for the "similarly situated" analysis, in resolving these questions, a majority of courts have adopted the two-tiered approach espoused by *Lusardi v. Lechner*, 855 F.2d 1062, 1074 (3d Cir. 1988).  Under the *Lusardi* model, the first step, or "notice stage," is limited to determining, based on the pleadings and affidavits submitted by the parties, whether a putative class should be conditionally certified and members of the potential class be given notice.  *See Leuthold*, 224 F.R.D. at 467.  If notice is authorized, then once discovery is largely complete, the court considers, on a motion for decertification, whether a representative action should be allowed.  *See id.*

At both the notice and decertification stages, the court's task is to consider whether the named plaintiff is similarly situated to the proposed class.  *See Grayson v. K-Mart Corp.,* 79 F.3d 1086, 1096

---

[9]     The express purpose of the consent requirement was to "limit[] private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions." *Hoffman-La Roche*, 493 U.S. at 173.  To effectuate this goal, the U.S. Supreme Court has made it clear that a court should exercise its discretion to approve notice only "in appropriate cases."  *Id.* at 169-70 ("[c]court intervention in the notice process for case management purposes" is an appropriate use of the court's power, whereas the solicitation of claims is not); *see also Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991) (the court's power to authorize notice "is to be exercised … only in appropriate cases").

(11th Cir. 1996); *Smith v. T-Mobile USA, Inc.,* No. CV 05-5274 ABC, 2007 U.S. Dist. LEXIS 60729, *7-10 (C.D. Cal. Aug. 15, 2007). Conditional certification and notice are appropriate only if there are similarly-situated employees who would have the right to join the collective action and whom the plaintiff can properly represent. *See Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1102-03 (10th Cir. 2001); *Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997).

Thus, although the standard applied at the notice stage is admittedly more lenient, conditional certification is by no means automatic. *See Colson v. Avnet, Inc.,* 687 F. Supp. 914, 925 (D. Ariz. 2010). Both the court and the parties have a "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Severtson,* 137 F.R.D. at 267; *see also D'Anna v. M/A-COM,* 903 F. Supp. 889, 894 (D. Md. 1995) ("[A]n employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense."); *H & R Block, Ltd. v. Housden,* 186 F.R.D. 399, 401 (E.D. Tex. 1999) ("[T]his court is mindful that it, like practicing attorneys, has a responsibility to refrain from stirring up unwarranted litigation."). **Court-authorized notice should be denied if its only purpose is to "assist [plaintiffs] in their efforts to locate potential plaintiffs and thereby expand the scope of litigation."** *Severtson,* 137 F.R.D. at 266.

          b.     *Plaintiff bears the burden of demonstrating through substantial allegations and competent evidence that she is similarly situated to the proposed class.*

Importantly, it is Lewis who has the burden of showing the existence of other, similarly-situated members of the proposed class. *See Leuthold,* 224 F.R.D. at 466; *Holt v. Rite Aid Corp.,* 333 F. Supp. 2d 1265, 1270 (M.D. Ala. 2004). "[U]nsupported assertions of widespread violations" do not suffice to meet this burden. *Freeman v. Wal-Mart Stores, Inc.,* 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (denying conditional certification due to plaintiff's failure to show he was similarly situated to his proposed class of 7,000 current and former hourly employees). Rather, Lewis must "come forward with at least some evidence indicating that this is an 'appropriate case' for collective-action status." *Parker v. Rowland Express, Inc.,* 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007); *Bernard v. Household Int'l, Inc.,* 231 F. Supp. 2d 433, 435 (E.D. Va. 2002) (plaintiff may not simply rely on allegations; rather, "some factual evidence is necessary"); *Camper v. Home Quality Mgmt, Inc.,* 200 F.R.D. 516, 519 (D. Md.

2000) (the relevant inquiry "is not whether the Court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise discretion").

**Put differently, Lewis must show – through substantial allegations and competent evidence – that similarly-situated employees exist who are were each impacted by the effects of a common and illegal policy.** *See, e.g., Thiessen*, 267 F.3d at 1102-03 (at the notice stage, plaintiffs must provide "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan"); *Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 509 (S.D.N.Y. 2010) (requiring a "factual nexus" with evidence "sufficient to demonstrate that [current] and potential plaintiffs together were victims of a common policy or plan that violated the law'."); *Pacheco v. Boar's Head Provisions Co., Inc.*, 671 F. Supp. 2d 957, 961 (W.D. Mich. 2009) ("courts have consistently required the plaintiffs to show that the class members were together the victims of a single decision, policy, or plan before they will certify a collective action") (quotations omitted).

As discussed below, Lewis's Motion utterly fails to meet this burden. The Motion baldly asserts that The Cosmopolitan has "classwide policies of not paying compensation for all hours worked" that provide "a prima facie case for notice." Motion (Dkt # 11-1) at 3. But Lewis's own allegations and evidence do not bear this out. Lewis has offered **no evidence** of the existence of a common policy requiring employees to change into or out of uniforms or frequent a "satellite bank" off the clock or to pay employees a "lunch stipend" that must be included in the regular rate.

2. **Plaintiff has no evidence of a similarly-situated class of employees subject to a common plan or policy to change uniforms off the clock.**

   a. *Plaintiff has failed to identify similarly-situated members of the proposed class.*

Lewis' Complaint alleges that The Cosmopolitan maintained an illegal policy and practice of requiring Plaintiff and other uniformed employees to change into and out of their uniforms at a common locker room in what is called the "Garment District" without paying them for the time spent retrieving their uniforms and changing their clothing. *Lewis* Compl. ¶ 8. In support of her contention that this allegation merits conditional certification and notice, Plaintiff offers her own declaration, along with the declarations provided by Adame and Megia. Dkt # 11, 11-3, 11-4, and 11-5. But there is simply no evidence that the subjective experiences of a single Slot Operations Department employee and two

Room Service Department workers – one of whom was in the Department for less than a month – in any manner reflect conditions generally applicable to the broad proposed class to which Lewis seeks to send notice, comprising literally thousands of employees working in over 150 departments and filling 180 different positions. *See* Dkt # 11, Exhibit 6, Proposed Order Approving FLSA Notice (hereinafter "Proposed Order"), ¶ 2 ("Notice of this lawsuit will be sent to Defendant's hourly paid employees employed at its Las Vegas location within any time from August 31, 2009 to the date of this order.").

In her declaration, Lewis describes what she did to retrieve her uniform at the Garment District, how she changed out of her street clothes and into the uniform before collecting her cash bank, keys and radio and proceeding to her assigned work station at the start of her shift, and how she returned her equipment and changed her clothing at the end of her shift. *See* Declaration of Darlene Lewis, Dkt # 11-3 (hereinafter "Lewis Decl."), ¶¶ 6, 10.   She then declares that "[e]veryone I knew who wore a CoStar uniform had to do the same thing." *Id.* ¶ 6.

That statement, however, falls woefully short of demonstrating the existence of any Company-wide policy. *See Banks*, 2011 U.S. Dist. LEXIS 83939 at *18 (plaintiff who claimed she was misclassified as an independent contractor and whose declaration stated that to her knowledge "Defendants treated everyone like this" failed to provide sufficient factual evidence that others who worked for the defendants were similarly situated).   Notably, Lewis makes no effort to identify which other employees wore uniforms, the positions they held or the Departments in which they worked. *See Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 906 (C.D. Cal. 2009) (denying motion for conditional certification where plaintiff's declaration that he observed "other employees" failed to describe the context and to specify who the employees were or what positions they held).   Megia's declaration is equally devoid of detail. *See* Dkt. # 11-5, Megia Decl., ¶¶ 3-4.   Adame, who worked in the same Department as Megia and wore a uniform for only four weeks when the property opened, describes solely her own personal experience. *See* Dkt. # 11-4, Adame Decl., ¶¶ 4-5.

Plaintiff's Complaint alleges broadly that the requirement to change on-site applied to "all or almost all" of Defendant's employees, *Lewis* Compl. ¶ 7, but Lewis offers no factual support for this contention, which obviously cannot be based on personal observation alone.   In fact, far from all hourly employees wear a uniform.   Exhibit 1, Espino Decl., ¶ 12.   Adame's Declaration illustrates this point.

Adame states that she wore a uniform during her one-month assignment as a Busperson in Room Service, but she did not do so while working as a Cashier in the Pizzeria. *See* Dkt. # 11-4, Adame Decl., ¶¶ 4, 7. This claim therefore does not support the conclusion that notice to the entire class proposed by Plaintiff would be appropriate.

        *b.*    *No evidence exists of any common practice.*

Nor does Lewis offer evidence to support the conclusion that she is similarly situated even to the narrower subclass of uniformed employees. The Cosmopolitan has at no time maintained any Company-wide plan, policy or practice that required employees to change into or out of their uniforms while off the clock.[10] Exhibit 1, Espino Decl., ¶¶ 9, 14. The CoStar Guidebook, which is provided to all new employees, does state that CoStars provided with uniforms are expected to report to the Garment District to retrieve and return their uniforms each day.[11] *See* CoStar Style Policy, attached as Exhibit A to the Declaration of Darlene Lewis, Dkt. # 11-3. But this policy has, in actuality, **not been followed or enforced** as a matter of common practice. Exhibit 1, hereto, Espino Decl., ¶ 12.

Attached as Exhibit 4 are the sworn Declarations of 97 non-exempt hourly Cosmopolitan employees who are subject to the uniform requirement. The declarants represent a broad cross-section of affected Departments, including Bellstand, Butler, Cage, Casino Services/Bar, Concierge, Facilities, Food & Beverage, Front Desk, Garment District, Housekeeping, Identity/Membership, Parking/Valet, Pool, Public Area, Security, Slot Operations, Slot Repair, Spa, Stewarding and Table Games. *Id.* As the declarations reflect, **the vast majority of employees polled (78 declarants, or 80%) arrive at and leave the workplace wearing their uniforms.**[12] *See* Exhibit 5. Indeed, 56 declarants professed to have no knowledge of what the Company policy was with respect to changing their wardrobe on property. *Id.* Thirty-nine declarants understood, however, that the Company had always allowed employees to elect to

---

[10]    Indeed, the Company's Time Keeping Policy on page 9 of the CoStar Guidebook counsels employees to "accurately record the time you begin and end work." Time Keeping Policy, attached as Exhibit A to the Declaration of Melodee Megia, Dkt. # 11-5.

[11]    Nothing in this policy mandates that employees obtain and return uniforms, or change clothing, off the clock. Remarkably, even Plaintiff's Complaint does not allege the existence of such a policy, applicable to all uniformed employees. It merely asserts that Defendant paid employees only for time worked after they clocked in and before they clocked out – but that is a far cry from saying Defendant had a Company-wide policy of requiring employees to change on premises without pay. *Lewis* Compl. ¶ 8.

[12]    Eleven employees reported changing part of their uniforms at work, or changing at work some of the time.

wear their uniforms from home. *Id.* Another 37 declarants stated that, while they believed there once was a policy that uniforms be changed on site, it was either not enforced, or was enforced for only a short period and thereafter abandoned. *Id.*

The declarations reflect considerable inter- as well as intra-Departmental variability in employees' understanding of corporate policy and in actual practice with respect to changing on-site. This holds true even of the Slot Operations Department, where Lewis was employed: in stark contrast to Lewis, declarant Leonida Palacio Swing – who was a contemporary of Lewis and still works as a Slot Guest Service Representative – avers that The Cosmopolitan's policy has always been to allow employees to change into their uniforms at home and that she typically wears her uniform to and from work. Exhibit 6. Moreover, employees who do elect to change on premises can readily clock in and out at any one of the numerous time clocks spread throughout the property. Exhibit 1, Espino Decl., ¶ 11. In fact, **there are multiple time clocks directly outside the Garment District** as well as in other nearby locations. *Id.*

This evidence most decidedly does not permit of the conclusion that "the putative class members were together the victims of a single decision, policy or plan" of requiring employees to change on property – and to do so while off the clock. *Sarviss*, 663 F. Supp. 2d at 903 (quoting *Thiessen*, 267 F.3d at 1102); *see also Purdham v. Fairfax County Pub. Schools*, 629 F. Supp. 2d 544, 551-52 (E.D. Va. 2009) (internal policy memoranda did "not rebut the testimony submitted by Defendant showing that the amount paid to individual coaches ... is determined at the local level and varies widely between individuals," rendering the case an unsuitable vehicle for collective action). Whether or not Lewis herself engaged in off-the-clock activity, she has failed to carry her burden of presenting at least some evidence that her claim is representative of a potential class of similarly-situated individuals.

Under such circumstances, class notice is plainly inappropriate. *See Hinojos v. Home Depot, Inc.*, No. 2:06-cv-00108, 2006 U.S. Dist. LEXIS 95434, *6 (D. Nev. Dec. 1, 2006) (where court could not identify a "unifying nexus" among plaintiffs, conditional certification was inappropriate); *Bonilla v.*

*Las Vegas Cigar Co.,* 61 F. Supp. 2d 1129, 1138 n.6 (D. Nev. 1999) (a plaintiff "cannot proceed in a collective action if the action relates to other specific circumstances personal to the plaintiff rather than any generally applicable policy or practice") (quotations omitted).[13]

### 3.  No evidence exists that there are similarly-situated individuals who were subject to a common plan or policy to "bank" off the clock.

> *a.      Lewis has failed to meet her burden of producing at least some evidence of a similarly-situated class.*

The analysis is no different with respect to Plaintiff's allegation that she, like "[a]ll cashier and money handling employees" was required to retrieve cash from a banking location before clocking in and return it at the end of the shift after clocking out.  Lewis Compl. ¶¶ 9-10.  Lewis represents in her Declaration that "[c]ertain CoStar's [sic] who deal with money transactions have to carry what is commonly called a 'bank' of money throughout the day."  Dkt # 11, Exhibit 3 ¶ 7.  While this is correct, only a fraction of The Cosmopolitan's hourly, non-exempt employees must maintain a cash bank as part of their regular duties.  Exhibit 7, Declaration of Michael Berry (hereinafter "Berry Decl.") ¶ 2.  Those employees, however, are spread across approximately 20 different job classifications and 34 separate Departments, each with its own internal management structure.  *Id.*  As these Departments are individually managed, practices in effect in any one Department do not necessarily reflect practices in any other.  *Id.* ¶ 4; Exhibit 1, Espino Decl., ¶ 3.

This is particularly true for the Slot Operations Department, where Lewis worked.  *See* Exhibit 7, Berry Decl., ¶ 5.  The banking activities Lewis describes in her Declaration (*see* Dkt. # 11-3, Lewis Decl., ¶¶ 7-8, 10) are unique to Slot Guest Service Representatives in Slot Operations and are not representative of those conducted by cash-handling employees generally.  *Id.*; Exhibit 1, Espino Decl. ¶ 16.  **Slot Guest Service Representatives are the <u>only</u> Cosmopolitan employees who obtain their cash banks at the Cage Employee Window.**  Exhibit 7, Berry Decl., ¶ 5.  All other employees who maintain a cash bank obtain it from the Banking Electronic System ("BES"), where they return it at the

---

[13]      *See also Castle v. Wells Fargo,* No. C06-4347, 2008 U.S. Dist. LEXIS 106703, at *14 (N.D. Cal. Feb. 20, 2008) (denying conditional certification where plaintiffs worked in four different job categories and had differing accounts of company overtime policies); *Simmons v. T-Mobile USA, Inc.,* No. H-06-1820, 2007 U.S. Dist. LEXIS 5002, *24-25 (S.D. Tex. Jan. 24, 2007) (denying certification in off-the-clock claim for unpaid overtime alleging no common policy but individual decisions by supervisors).

end of the shift. *Id.* ¶ 8. The BES is located in the Employee Cage, directly behind the Cage itself. *Id.* Unlike the Cage, the BES is fully electronic, and the banking process is completely automated. *Id.* ¶ 9; Exhibit 1, Espino Decl., ¶ 16. Retrieving and returning cash involves no human interaction; all that is required is for the employee to scan an ID badge and enter a PIN. Exhibit 7, Berry Decl., ¶ 9. By contrast, all transactions at the Cage, including those at the Cage Employee Window, are handled by cashiers, who must manually dispense and receive funds. *Id.* ¶ 6. At the end of the day, both the Cage Cashier and the Slot Guest Service Representative must agree on reconciliation of cash banks being returned and sign a document indicating their agreement.

Given these fundamental differences in process and the resulting differences in time requirements, **Plaintiff's individual experience in frequenting the Cage Employee Window tells nothing about the banking experiences of employees in other job classifications and Departments**, all of whom obtain their cash from the BES. *See, e.g., Sarviss,* 663 F. Supp. 2d at 903; *Hinojos,* 2006 U.S. Dist. LEXIS 95434 at *6; *Purdham,* 629 F. Supp. 2d at 551-52. These employees – including Cashiers in the Pizzeria, like Adame – were simply not similarly situated to Lewis because they banked at the BES.

    *b.*  *There is no common policy requiring employees to bank off the clock.*

Neither the Complaint nor Plaintiff's Declaration identifies any Company-wide policy, plan or practice requiring banking activities to be performed off the clock, without compensation. None exists, nor has one ever existed. Exhibit 7, Berry Decl., ¶ 4; Exhibit 1, Espino Decl., ¶ 15. To the contrary, the Time Keeping Policy requires employees to record all time worked, and performing off-the-clock pre- or post-shift duties would violate this mandate. *Id.* The Motion purports to quote from an old Slot Department clock-in/out policy, no longer in effect, requiring pouch funds to be obtained before clocking in and returned after clocking out. *See* Dkt. # 11-1 at 4 and n. 1. No such policy was submitted as an exhibit. At most, this policy reflects the practice in a single Department, for a limited period of time. Plaintiff offers no evidence to support the contention in the Motion that it was "typical of all Departments." *Id.*

In fact, the opposite is true. The current Slot Department policy regarding clock-in and clock-out procedures expressly directs employees to obtain their pouch funds (*i.e.*, cash bank), radios and keys only <u>after</u> clocking in and to return them <u>before</u> clocking out. *See* Exhibit 7, Berry Decl., ¶ 13; Exhibit 8. This, moreover, has always been the procedure for the large group of Food and Beverage employees, which includes employees in the Pizzeria, other eating establishments, the Room Service Department, the Banquet Department and the various bars. Exhibit 7, Berry Decl., ¶ 10. According to the Food and Beverage Standard Operating Procedure ("SOP") governing use of the BES, employees "must clock-in to work before attaining house issued bank" and "[c]lock-out only after [they] have dropped house issued bank into revenue drop slot" (the last step in the cash bank return procedure). *See id.*; Exhibit 9. This policy has been in effect since The Cosmopolitan began to operate. *Id.* Similarly, the Food and Beverage SOP for cash handling, used by The Cosmopolitan's retail Departments, requires employees to clock in before attaining their house-issued cash bank and to clock out only after the house-issued bank has been returned to the Employee Cage. Exhibit 7, Berry Decl., ¶ 11; Exhibit 10.

**These policies not only highlight the lack of any overarching policy or directive mandating off-the-clock work, but demonstrate that for most employees in most Departments the policy has always been that time spent obtaining and returning cash banks must be recorded as time worked.** It is thus patently apparent that there is no identifiable class subject to a common illegal policy. This wholly eviscerates any argument Plaintiff may wish to make that notice should be approved.

      *c.*    *There is no evidence of any common practice regarding off-the-clock "banking."*

These conclusions are borne out by information regarding employees' actual practice. Notably, Lewis and Adame's subjective descriptions of their personal banking activities in their declarations differ vastly from available data regarding the practices of other cash-handling employees. Attached as Exhibit 11 is a record of the dates and times at which employees in the job classification of Cashier – the same position held by Adame – obtained and returned their cash funds in October 2012, as compared to

their clock-in and clock-out times.[14]  Exhibit 7, Berry Decl., ¶ 15.  Exhibit 11 demonstrates that, unlike Adame, **current Pizzeria Cashiers almost always clock in before, and clock out after, receiving and returning their cash bank for the day.**  *Id.*  With the exception of just two employees who repeatedly clocked out first and only then returned the bank during this time period, the same holds true across the board for all employees in the Cashier job classification.  *Id.*  This same lack of a pattern of off-the-clock banking holds true across positions and Departments; no single position and no single Department has a pattern or practice of frequenting the BES off the clock.  *Id.* ¶ 16.

To facilitate clocking in and out, time clocks are readily accessible throughout the property.  Exhibit 7, Berry Decl., ¶ 7; Exhibit 1, Espino Decl., ¶ 11.  Multiple time clocks are available in the Blue Room, which is located a short distance (120 feet) from the Cage and is used by the Gaming staff.  Exhibit 7, Berry Decl., ¶ 7.  Of particular note, the Slot Office time clock, where Slot Guest Service Representatives typically clock in, is just 180 feet away.  *Id.*  It is thus not difficult for staff to find a location to clock in or out, regardless of location.

The Company's BES banking practices have not changed since The Cosmopolitan opened its doors in December 2010.  Exhibit 7, Berry Decl., ¶ 17.  Lewis has pointed to no evidence based on which it could be concluded that a past policy or practice required off-the-clock banking.  As with the off-the-clock claim relating to uniforms, she has simply failed to make even the modest showing necessary to justify approval of class notice.  Lacking any evidence of a common, unifying policy, Lewis would have the Court conduct countless mini-trials to determine whether or each and every one of the proposed class members was properly paid.  "Such a result is the antithesis of collective action treatment and would overwhelm the judicial system and eliminate any judicial efficiency that might be gained through a collective approach."  *Hinojos*, 2006 U.S. Dist. LEXIS 95434 at *8.

---

[14]     Adame's declaration is limited strictly to her own experience while working as a cashier in the Pizzeria.  She declares that her manager told her it was policy to handle a cash bank before clocking in and after clocking out, but that she refused to comply and was reprimanded.  Dkt # 11-4 ¶ 7.  Adame does not state that she actually performed these tasks off the clock.  In any event, her allegations regarding the issue do not establish the existence of an off-the-clock practice outside the Pizzeria.  The manager's alleged statements are merely hearsay, and Adame does not profess to have any personal knowledge of practice with respect to other Departments.

1

> **4.** **Prudence and judicial economy caution against class notice as to Plaintiff's claim regarding computation of the regular rate before the Court has addressed threshold legal issues.**

2

3   Plaintiff alleges that The Cosmopolitan violated the FLSA by not including what she calls a daily

4   "lunch stipend" in the calculation of the regular hourly rate to compute overtime premiums.   The

5   Cosmopolitan does not dispute that it provides meal cards to employees.   It strongly disagrees, however,

6   that the FLSA requires inclusion of this type of benefit in the computation of the regular rate.   This is a

7   threshold legal issue.   If resolved in Defendant's favor, no claim exists, and no class arises.

8   There is little purpose in notifying vast numbers of individuals that they may have a legal claim

9   for relief if, as a matter of law, no relief is available.   Accordingly, Defendant submits that the goals of

10   judicial efficiency and economy are best served if the cost and effort of notifying thousands of current

11   and former hourly, non-exempt employees is deferred with respect to this claim until the Court has had

12   an opportunity to determine whether a claim exists as a matter of law.

13   Cosmopolitan employees are generally expected to remain on property during their paid meal

14   breaks.   Exhibit 1, Espino Decl., ¶ 18.   Because uniformed employees may not frequent food outlets

15   within the resort and casino, they typically consume meals in the employee dining room ("EDR").   *Id.* ¶

16   19.   As an incentive for employees to remain on property, The Cosmopolitan provides <u>all</u> employees –

17   non-exempt and exempt – with a meal card that is loaded each day with an allowance of $8.00.   *Id.*   The

18   card can only be used to obtain food or beverages in the EDR.   *Id.* ¶ 20.   It cannot be converted to cash

19   or any other benefit, and any amount not used on a particular day does not carry forward to the next day.

20   *Id.*   The Company places a limit on the daily amount in an effort to prevent overuse of the EDR, <u>not</u> to

21   provide employees with cash compensation.   *Id.*

22   The FLSA expressly <u>excludes</u> from the regular rate "reasonable payments for traveling expenses,

23   or other expenses, incurred by an employee in the furtherance of his employer's interests and properly

24   reimbursable by the employer; and **other similar payments to an employee which are not made as**

25   **compensation for his hours of employment.**"   29 U.S.C. § 207(e)(2).   The implementing regulations

26   further elaborate on this exclusion, stating that where an employee "is required to expend sums solely by

27   reason of action taken for the convenience of his employer, … [p]ayments made by the employer to

28   cover such expenses are not included in the employee's regular rate…. Such payment is not

compensation for services rendered by the employees during any hours worked in the workweek." 29 C.F.R. § 778.217(a). The regulations distinguish such payments from payments for expense that are strictly personal to the employee. *See id.* § 778.217(d).

The meal cards at issue here are far more than a personal benefit. They are provided to employees for the benefit of The Cosmopolitan, to facilitate the smooth operation of the business, and make it possible for The Cosmopolitan to require employees not to leave the grounds during paid meal breaks. A very similar situation was addressed in *Acton v. City of Columbia,* No 03-4159-CV-NKL, 2004 U.S. Dist. LEXIS 19004 (W.D. Mo. Sep. 10, 2004), *aff'd*, 436 F.3d 969 (8th Cir. 2006). There, the court held that a $12 per day meal allowance paid to firefighters while working their shifts was for the convenience of the employer and not a personal expense, because the firefighters were required to remain at the fire house for the duration of their shifts.[15] *Id.* at *20.

Substantial reasons exist, therefore, to dismiss this cause of action as a matter of law. Accordingly, Defendant asks that, if this case is not otherwise dismissed, the Court allow the filing of a motion for summary judgment focused on this issue and establish an appropriate briefing schedule, and that it defer a ruling on the motion for approval of notice with respect to this claim until the legal question is resolved. Defendant does not oppose tolling the statute of limitations on this claim for prospective class members until the Court has ruled on this threshold matter.

**5.     Plaintiff has produced no evidence that similarly-situated others desire to opt in.**

Class notice is also inappropriate in this case because Lewis has failed to show that there are any similarly-situated prospective class members who actually desire to join her case. Before giving notice to other putative members of a collective action, "the district court should satisfy itself that there are other employees of the defendant-employer who desire to 'opt-in' and are 'similarly situated' with respect to their job requirements and with regards to their pay provisions." *Holt*, 333 F. Supp. 2d at 1269; *see also Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991) (plaintiff must have actual

---

[15]     In addition, the cost to the employer of conveniences furnished to employees, such as parking, recreational facilities and on-the-job medical care, are likewise excludable from the regular rate. *See* 29 C.F.R. § 778.224(b). Alternatively, the meal cards, which grant access to the EDR, can be likened to a convenience intended to increase employee productivity, no less than access to onsite recreational or medical facilities, or free sodas and snacks.

"evidence . . . showing that there are a number of employees . . . who are 'similarly situated' and who may desire to 'opt-in'"); *Silverman v. SmithKline Beecham,* No. CV 06-7272 DSF (CTx), 2007 U.S. Dist. LEXIS 80030, *5 (C.D. Cal. Oct. 15, 2007) (requiring evidence of "some likelihood that the proposed class members are similarly situated and that more than a minimal number of prospective class members are interested in joining the suit").

Here, not even the two additional declarants Plaintiff has offered in support of her contention that there are similarly-situated putative class members have indicated a desire to opt into this lawsuit. *See Parker,* 492 F. Supp. 2d at 1165 ("plaintiff must do more than show the mere *existence* of other similarly situated persons"). Indeed, Megia has already filed a separate action asserting many of the same claims. Moreover, given the size of the proposed class, declarations from a single plaintiff and two other former employees simply do not make the requisite showing. *See Clark v. City of Ft. Worth*, 800 F. Supp. 2d 776, 780-81 (N.D. Tex. 2011) (declarations from only two additional non-party plaintiffs out of a potential class of 200 were insufficient to support conditional certification). For this reason alone, class notice should not be approved.

## C.   Plaintiff offers no basis for tolling the statute of limitations.

As the Ninth Circuit has recognized, federal courts have applied the doctrine of equitable tolling in two situations: (1) when the plaintiff is prevented from asserting her claims by some kind of wrongful conduct on the part of the defendant; or (2) when extraordinary circumstances beyond plaintiff's control make it impossible to file the claims on time. *See Alvarez-Machain v. U.S.*, 107 F.3d 696, 701 (9th Cir. 1997), *cert. denied sub nom. Berellez v. Alvarez-Machain*, 522 U.S. 813 (1997). There is no suggestion in this case that any wrongful conduct by Defendant has prevented or dissuaded any potential class member from asserting his or her claims. Nor are there any extraordinary circumstances beyond the control of any potential class members that make it impossible to file such claims in a timely manner. Accordingly, equitable tolling is not justified. *See Cranney v. Carriage Services, Inc.*, 559 F. Supp. 2d 1106, 1109 (D. Nev. 2008) (equitable tolling not warranted where plaintiffs failed to show wrongful conduct by defendants or extraordinary circumstances); *Bonilla*, 61 F. Supp. 2d at 1140.

**D.**   **Objections to Plaintiff's proposed notice, consent and order.**

Finally, even if notice were proper in this case – which Defendant strongly disputes – numerous problems plague the notice proposed by Plaintiff and render it wholly inappropriate. *See* proposed Notice, Dkt # 11-1 at 20-24. Not only does the proposed notice contain countless internal errors and inconsistencies, but it also includes provisions that are wholly inappropriate and overreaching given the nature of this case. Due to the sheer number of issues, Defendant asks that if the Court decides to authorize issuance of notice on any portion of Plaintiff's claims, the parties be directed to confer and jointly arrive at language that is mutually agreeable. For present purposes, this brief provides only a sampling of the concerns which render approval of the proposed notice inapposite.

**1.**   **Plaintiff has failed to properly define a potential class.**

Although conditional certification is a precondition to giving notice, Plaintiff does not even ask the Court to conditionally certify a class. This omission only highlights the problems inherent in her varying efforts at defining a class. Thus, both Plaintiff's Motion and proposed order would have the Court approve notice to over 4,000 individuals, representing all of Cosmopolitan's hourly paid employees employed at its Las Vegas location at any time since August 31, 2009 (three years before the filing of this action). *See* Motion, Dkt # 11-1 at 1; Proposed Order, Dkt # 11-6. As discussed in the foregoing, this class is vastly overbroad and cannot be justified under any reading of Plaintiff's claims.

Notwithstanding this request, Plaintiff's proposed Notice is directed only to:

> All current and former non-exempt employees who were employed by COSMOPOLITAN HOTELS & RESORTS INC. [sic] and/or any others [sic] similarly situated persons, within three years from the date of filing this complaint ("the Class Period") and **were required to frequent the "satellite bank," or any other money reserve location, pre-shift and/or post-shift.**

Proposed Notice, Dkt # 11-1, at 20 (emphasis in original). While one might presume that Plaintiff thus seeks to notify only members of her "satellite bank" subclass, yet a different description of the putative class appears in the very same proposed Notice under the heading "Definition of Who May Participate in this Lawsuit":

> To participate in this lawsuit, you must have been employed by Defendant at any time from [3 years from the date of filing the complaint] to the present and **were required to 1) change clothing on the premises "off the clock", 2) frequent the "satellite bank,"**

**or any other money reserve location, pre-shift and/or post-shift without payment at your regular rate (or overtime rate if applicable) for such time, and/or 3) had a food allowance amount that was not included in the calculation of your regular hourly rate of pay for purposes of paying any overtime premium pay at one and one half your regular rate.**

Proposed Notice, Dkt # 11-1, at 21-22 (emphasis in original).  Even this rendition, which is internally inconsistent with Plaintiff's three FLSA "subclasses" as described in the Complaint, fails to properly describe any class in light of the limiting factors discussed in this brief.  Lacking a properly defined class, Plaintiff cannot reasonably give notice to any potential class member, so that denial of this motion is appropriate.

2. **The proposed notice is inadequate and overreaching in other respects, and contains provisions that are unnecessary.**

The proposed Notice is rife with many other objectionable elements.[16]  For example, it specifies that opt-in consents be sent to Plaintiff's counsel, but then goes on to instruct putative class members to send consents to an unidentified Claims Administrator.  It buries the statement that the Court has made no finding as to the merits of this case on the final page of the proposed notice.  This statement should be more prominently stated up front.  It fails to advise recipients that there is no money available at this time and that, in fact, there may be no money available in the future.  And it fails to inform potential plaintiffs that "if they do opt-in and are unsuccessful on the merits of their claim, they may be responsible for the defendant's costs."  *Robbins-Pagel v. Puckett*, No. 6:05-cv-1582-Orl-31DAB, 2006 U.S. Dist. LEXIS 85253, *3 (M.D. Fla. Nov. 22, 2006).  In addition, it is unnecessary to include anti-retaliation language, nor is it appropriate to include potentially misleading language regarding the effect of any release or severance agreement.  There is likewise no evidence that anyone has been told they cannot file a claim because of their immigration status, rendering language concerning immigration status similarly inapposite.

---

[16]     Defendant submits that a notice similar to the one approved in *Bennett v. Hayes Robertson Group, Inc.*, No. 11-10105-CIV-KING, 2012 U.S. Dist. LEXIS 100921, *32-33 (S.D. Fla. July 20, 2012) is more appropriate to this case.

### 3.   Inadequacy of proposed form consent.

Defendant also submits that the proposed Consent to Join Form is inadequate. *See* Consent to Join, Dkt # 11-1, at 26-27. If the Court approves notice on any ground, the consent should contain fill-in provisions regarding the basis for joinder of the action. Accordingly, Defendant requests that, if the Court authorizes notice, it direct the parties to confer and prepare a mutually agreed consent form.

### 4.   Objections to proposed order.

As noted, Defendant objects to the class definition in Plaintiff's proposed order, which would have the Court approve notice to all hourly paid employees since August 31, 2009. To the extent any notice is authorized – which Defendant emphatically opposes – the class should be narrowly limited to the particular claims being asserted and to those persons similarly situated to Plaintiff. Plaintiff also requests that Defendant be required to provide improper personal information, such as Social Security numbers and email addresses, of putative class members. Any information beyond employee name and last known address is unwarranted and intrusive, and could encourage improper and unauthorized contact, and therefore should not be disclosed. *See Gordon v. Kaleida Health*, No. 08-CV-378S, 2009 U.S. Dist LEXIS 95729, at *31 (W.D.N.Y. Oct 14, 2009).

In addition, the 10-day time period for providing a list of prospective class members is too short given the need to pull relevant information for possibly hundreds, if not thousands, of former and current employees. Should notice be approved, Defendant requests that this time period be expanded to 21 days. Defendant also objects to the lack of any specified opt-in period in the order and requests that the opt-in period reasonably be limited to 45 days.

1  IV.    **CONCLUSION**

2          For each and all of the foregoing reasons, Defendant respectfully requests that Plaintiffs' Motion

3  be denied in its entirely.

4          Dated this 19th day of November, 2012.

5                                                  JACKSON LEWIS LLP

6

7                                                  _____/s/ Elayna J. Youchah_____
                                                   Elayna J. Youchah, Bar #5837
8                                                  3800 Howard Hughes Parkway, Suite 600
                                                   Las Vegas, Nevada 89169
9

10                                                 *Attorneys for Defendant*
                                                   *Nevada Property 1, LLC*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I hereby certify that I am an employee Jackson Lewis LLP and that on this 19th day of November, 2012, I caused to be served a true and correct copy of the above and foregoing **DEFENDANT NEVADA PROPERTY 1, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CIRCULATION OF NOTICE PURSUANT TO 29 U.S.C. § 216(B); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** via electronic mail, through the Court's ECF filing system, properly addressed to the following:

Mark R. Thierman
mark@thiermanlaw.com
Joshua Buck
josh@thiermanlaw.com
Thierman Law Firm, P.C.
7287 Lakeside Drive
Reno, Nevada 89511

*Attorneys for Plaintiff*

_____/s/ Emily Santiago_____
Employee of Jackson Lewis LLP