1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DARLENE LEWIS, on behalf of herself and          )
all others similarly situated,                              )
                                              Plaintiff,          )        Case No.: 2:12-cv-01564-MMD-GWF
                                                                      )
vs.                                                                    )        **ORDER**
                                                                      )
NEVADA PROPERTY 1, LLC, d/b/a the             )
Cosmopolitan of Las Vegas; and DOES 1          )
through 50, inclusive,                                      )
                                                                      )
                                            Defendant.          )
_____)

     This matter is before the Court on Plaintiff Darlene Lewis's Motion for Circulation of Notice Pursuant to 29 U.S.C. § 216(b) (#11), filed on October 17, 2012; Defendant Nevada Property 1, LLC's Opposition to Plaintiff's Motion for Circulation of Notice Pursuant to 29 U.S.C. § 216(b) (#20), filed on November 19, 2012; and Plaintiff's Reply in Support of Motion for Circulation of Notice Pursuant  29 U.S.C. § 216(b) (#21), filed on November 29, 2012.  The Court conducted a hearing in this matter on December 18, 2012.

**BACKGROUND**

     Plaintiff Darlene Lewis has filed a Collective and Class Action Complaint (#1) on behalf of herself and other similarly situated persons who were employed by the Cosmopolitan Hotel and Casino ("Cosmopolitan") in Las Vegas, Nevada which is owned by Defendant Nevada Property 1, LLC.  Plaintiff alleges that Defendant failed to pay wages to her and other similarly situated hourly paid, nonexempt employees for certain employer mandated "off-the-clock" activities.  Plaintiff seeks recovery of regular and overtime wages for the time she was required to work without proper compensation.  The Complaint (#1) alleges causes of action under the federal Fair Labor Standards Act ("FLSA") for failure to pay wages in violation of 29 U.S.C. § 201, et seq.; failure to pay

1  overtime wages in violation of 29 U.S.C. § 207; and failure to pay the correct overtime rate in

2  violation of 29 U.S.C. § 207(e).  Plaintiff also alleges causes of action under Nevada law for failure

3  to pay wages for all hours worked in violation of Nevada Revised Statute (NRS) 608.140 and NRS

4  608.016; failure to pay minimum wages in violation of NRS 608.140 and NRS 608.250; failure to

5  pay overtime wages in violation of NRS 608.140 and NRS 608.018; and failure to timely pay all

6  wages due and owing upon termination pursuant to NRS 608.140 and NRS 608.020-.050.

7      **1.  Proposed FLSA Classes.**  Plaintiff argues that three classes of employees should be

8  conditionally certified for purposes of this FLSA collective action.  The first class, identified as the

9  "Uniform Class," consists of Defendant's hourly wage employees who were allegedly required to

10  change into company supplied uniforms after arriving at the Cosmopolitan prior to "clocking-in"

11  and were then required to change out of and return the uniforms after "clocking-out."  The second

12  class, identified as the "Satellite Bank Class," consists of Defendant's hourly wage employees who

13  were required to handle company money in the performance of their work duties and who were

14  allegedly required to obtain the money from a satellite bank before "clocking-in" and to return and

15  account for the funds to the satellite bank after "clocking-out."  The third class, identified as the

16  "Overtime Rate Calculation Class," consists of Defendant's hourly wage employees who were paid

17  a lunch stipend which was not included in their regular rate of pay and therefore was not included

18  in the calculation of overtime pay.  *Motion for Circulation of Notice (#11), pgs 1-2, 7.*

19      **2.  Plaintiff's Allegations.**  Plaintiff Darlene Lewis has submitted a Declaration in Support

20  of Plaintiff's Motion for Circulation of FLSA Notice.  *Motion (#11), Attachment 3, Lewis*

21  *Declaration.*  Ms. Lewis states that she was hired by the Cosmopolitan as a "guest services

22  representative" shortly before the Cosmopolitan opened for business in December 2010.[1]  Her

23  employment was terminated on May 7, 2012 for allegedly accessing unauthorized information on a

24  company computer.  Ms. Lewis states that Cosmopolitan employees, who are called "CoStars,"

25  were given uniforms which they were required to change into on the company premises.  Ms. Lewis

26  _____

27      [1]According to Defendant, Ms. Lewis was employed as a Slot Guest Service Representative in the
    Slot Operations Department.  *Defendant's Opposition to Motion for Circulation of Notice (#20), pg. 8.*

28  *Exhibit 1, Declaration of Daniel Espino*, ¶6.

further states:

> Each and every day, I would arrive at the casino prior to my regularly
> scheduled shift and head straight to the "Garment District." The
> Garment District was the fancy name the Cosmopolitan gave to the
> area where all employees were supposed to go to pick up their
> uniforms and get dressed. Once I arrived at the Garment District, I
> swiped my employee badge and I waited for a conveyor rack to bring
> down my washed and ready uniform. . . . Once I got my uniform, I
> would go to the changing area, change out of my regular work
> clothes, put on my uniform, and put my regular clothes in a laundry
> bag. I would then put my regular clothes back on the rack. Everyone
> I knew who wore a CoStar uniform had to do the same thing. That's
> what we were told to do by our managers and that was the written
> policy [sic] our employee handbook. I've attached a copy of the
> relevant policy to this declaration as Exhibit "A."

*Lewis Declaration,* ¶ 6.

Ms. Lewis states that as a customer services representative, she was required to carry a $3,000 cash bank. After changing into her uniform, Ms. Lewis states that she proceeded to the money reserve location, known as the "CoCage" where she would also swipe her employee badge to gain access to the cage, retrieve her bank from the cashier on duty, verify that the bank was complete and sign a form stating that the amount was correct. ¶7. She would then proceed to the work offices to obtain her keys, radio and daily work schedule as well as read the memo board. She would then walk to the casino location where she was scheduled to start her shift at which time she would clock in to the timekeeping system. ¶8. Ms Lewis estimates that it took her approximately 45 minutes each day to complete the foregoing tasks before clocking-in. ¶9. She repeated most of these activities in reverse order at the end of her shift after clocking-out, which she estimates also took about 45 minutes. Thus, Ms. Lewis estimates that she was required to perform work activities for 1.5 hours (90 minutes) each day for which she was not compensated. ¶¶ 10-11. Ms. Lewis further states that all CoStars, including herself, received an $8.00 daily lunch stipend to be used at the employee cafeteria for meals. To her knowledge, this stipend was never included in the calculation of her regular rate of pay used to determine the amount of overtime premium pay. ¶13.

Page 8 of the CoStar Guidebook, dated July 22, 2011, attached to Ms. Lewis's Declaration states in part as follows:

> All CoStars provided with uniforms are expected to report to the
> Garment District daily to obtain the uniform for the day and return

3

the uniform to The Garment District at the end of the shift.

You will receive a garment bag with your uniform from the Garment District. Place your personal clothing items in the bag for storage in the Garment District during your shift.

*Lewis Declaration, Exhibit A.*

Plaintiff has also submitted a copy of the Slot Operations Department Policies, Policy #8- Clock In/Out, effective December 5, 2010, which states in part as follows:

All personnel who require keys, radios, or pouch funds must obtain them before clocking in, so that they are available immediately for work.
. . .

Costars shall not clock-out until the end of their shift or if authorized by a manager to leave early, and then turn in their pouch, radio and keys.

*Plaintiff's Reply (#21), Declaration of Joshua D. Buck, Exhibit A.*

The Slot Operations Department Policy further states that overtime will not be granted to an employee who clocks in early, unless requested to do so by management. It also states that overtime will not be granted if it is a result of a pouch variance. *Id.* Plaintiff alleges that this written policy was not rescinded until July 9, 2012. *Motion (#11), pg. 4, n. 1.*

Plaintiff has submitted the Declaration of Brianne Adame in support of her motion. *Motion (#11), Attachment 4, Adame Declaration.* Ms. Adame states that she was hired by the Cosmopolitan on December 27, 2010 and was taken off the active work schedule on or about August 22, 2011 after she became pregnant. Ms. Adame has filed a sex discrimination charge with the Nevada Equal Rights Commission. *Adame Declaration*, ¶2. Ms. Adame states that she had two different jobs during her employment with the Cosmopolitan. She worked as a room service assistant from the date that she was hired until the end of January 2011 when she became a cashier in the Pizzeria. ¶3. As a room service assistant she was required to wear a uniform. Ms. Adame states that during her first week of employment, she took her uniform home and changed into it before going to work. She was reprimanded for doing so and was told that Cosmopolitan policy mandated that she change onsite. Ms. Adame also describes going to the Garment District to obtain and change into her uniform before clocking in and doing the reverse at the end of her shift after

4

clocking out. Ms. Adame's room service attendant job duties did not require her to carry a bank. She estimates that her off-the-clock time to change in and out of her uniform took approximately 45 minutes to one hour per shift.  ¶4-6.

Ms. Adame states that as a cashier in the Pizzeria, she was not required to wear a uniform. She was, however, required to have a cash bank which she picked up from the cashier. Ms. Adame states that she was required to pick up her cash bank before clocking in to start her shift and was required to clock-out before turning it in. Ms. Adame states that she was also reprimanded for refusing to follow the policy.  ¶7. Ms. Adame states that it took her approximately 20 to 30 minutes every shift to obtain and turn in her cash bank.  ¶9. Ms. Adame also states that she received the $8.00 lunch stipend which she does not believe was included in her regular rate of pay for calculation of overtime pay.  ¶11.

Plaintiff has also submitted the Declaration of Melodee Megia. *Motion (#11), Attachment 5, Megia Declaration.* Ms. Megia states that she was employed by the Cosmopolitan from November 27, 2010 until shortly after she disclosed that she was pregnant.  ¶2. Ms. Megia's declaration does not state the date that her employment ended. Ms. Megia has, however, filed a Nevada state court lawsuit against the Defendant alleging claims for sex/pregnancy discrimination, as well as class action claims under Nevada law for failure to pay minimum wages, overtime pay, failure to pay the correct overtime rate and failure to timely pay all wages due and owing. *Defendant's Opposition(#20), Exhibit 2, Second Amended Complaint in Megia v. Nevada Property 1, LLC, Case No. A-12-661665-C, District Court Clark County Nevada.* According to her state court complaint, Ms. Megia's employment was terminated on September 16, 2011.

Ms. Megia states that she was an hourly paid employee in the room service sales area of the casino and was required to wear a company uniform. She states that the "Cosmopolitan had a well known policy that uniformed employees had to change in and out of their uniforms on Company premises and we could not wear our uniforms outside the casino." *Megia Declaration* ¶3. She further states: "Everyone I knew who wore a CoStar uniform had to do the same thing. That's what we were told by our managers and that was the written policy of our employee handbook."  ¶4. Ms. Megia was not required to carry a bank as part of her job duties.  ¶5. Ms. Megia estimates that it

5

took her 45 minutes to one hour to change in and out of her uniform each workday, for which she was not paid. ¶7. Ms. Megia also received the $8.00 lunch stipend which she does not believe was included in her regular rate of pay for calculation of overtime compensation. ¶8.

Plaintiff has attached as Exhibit A to Ms. Megia's declaration, page 9 of the CoStar Guidebook, dated July 22, 2011, which states:

> **Time Keeping**
>  By following the Company's time keeping procedures, you will be properly paid. Federal and state laws require us to keep accurate records of CoStar work time in order to calculate CoStar pay and benefits. Time worked is the time actually spent on the job performing your assigned duties.
>
> If you are paid based on the number of hours you work, you must accurately record the time you begin and end work. . . .
>
> Leave yourself extra time to go to the Garment District and change into your uniform so that you are able to report to your work station at the start of your shift.

*Motion (#11), Megia Declaration, Exhibit A.*

**2. Defendant's Allegations.** Defendant's Vice President of People (Human Resources), Daniel Espino, states that the Cosmopolitan divides its operations into 13 functional divisions, each of which has multiple different departments. Altogether, the Cosmopolitan has 152 departments, each with its own management and supervisory structure. These departments independently manage their daily operations and the department management directs the activities of staff members, evaluates their performance and sets work hours and schedules. *Opposition (#20), pg. 7; Exhibit 1, Espino Declaration*, ¶3. The Cosmopolitan has approximately 3,700 employees who fill 180 different positions classified as hourly. ¶5. The Slot Operations Department in which Plaintiff Lewis was employed had 31 active employees in the Slot Service Representative job classification as of the date of Mr. Espino's declaration. ¶6.

Defendant denies that it has at any time maintained a companywide plan, policy or practice that required employees to change into or out of their uniforms on the company premises, and to do so off the clock. *Opposition (#20), pg. 16, Espino Declaration,* ¶14. Mr. Espino states that although the CoStars Guidebook stated that employees should report to the Garment District daily to obtain a uniform and return it at the end of the shift, the policy has not been enforced. Mr.

6

Espino states that based on his observation, the overwhelming majority of employees wear their uniforms to and from work.  To his knowledge no one has ever been disciplined for taking their uniform home rather than changing at work.  ¶12.  Mr. Espino's declaration also appears to suggest that the Time Keeping section of the CoStars Guidebook does not require employees to change into or out of their uniforms off the clock.  ¶¶ 10, 11, and 13.

Defendant has attached the declarations of 97 Cosmopolitan employees.  According to Defendant, 78 of these declarants state that they wear their uniforms to and from work.  Fifty-six of the declarants state that they have no knowledge of a policy that requires them to change into and out of their uniforms on the property.  Thirty-nine of the declarants understood that the Company has always allowed employees to elect whether to wear their uniforms to and from work, or to change into them at work.  Thirty-seven declarants stated that while they believed there once was a policy that required uniforms to be changed on site, the policy was either not enforced, or was enforced for only a short time and thereafter abandoned.  *Opposition (#20), pgs 16-17.*  Some employees state that they change in and out of their uniforms at work for convenience, and that it takes only a few minutes to do so.  *Opposition (#20), Exhibit 4, Declaration of Alain Leon*, ¶¶ 9, 10.; *Statement for Alexander Gonzalez,* ¶¶ 9, 10; *Declaration of Anthony Mantico* ¶9*; Declaration of Llina Trujillo,* ¶¶ 9, 10.

The declarants, who state that there was a policy that required employees to change into and out of uniform at work, give varying estimates as to when the policy was in effect.  *Declaration of Jeffawn Wilson*, ¶¶ 9, 10 (policy was in effect prior to February or January 2011); *Declaration of Jennifer Hopkins*, ¶ 9 (policy was in effect "less than a few months"); *Declaration of July Summers*, ¶ 8, (policy was in effect for approximately one week); *Declaration of Charlayne Patterson*, ¶ 8 (policy was in effect the first two months the property was open); *Declaration of Amy Parra*, ¶ 9 (policy was in effect a couple of weeks after opening, caused long lines and was abandoned, or not enforced).

Defendant also submitted the declaration of Leonida Palacio who works as a Slot Guest Representative in the Slot Operations Department where Plaintiff Lewis was employed.  Ms. Palacio states that she has been employed by the Cosmopolitan since November 29, 2010 and that

7

the Cosmopolitan's policy has always been to allow employees to change their uniforms at home if they prefer and that she has typically worn her uniform to and from work. *Opposition (#20), Exhibit 6, Palacio Declaration.*

Mr. Espino states that there has never been a companywide policy that employees who carry cash in the performance of their jobs are required to obtain their funds from the cashier or cash bank prior to clocking in, and return and account for the funds after clocking out. *Espino Declaration*, ¶15. Mr. Espino further states that the procedures of the Slot Operations Department were unique. Only employees in this classification obtain their cash from Cashiers at the Cage Employee Window. All other employees who carry cash do their "banking" at the Banking Electronic System ("BES") which is fully automated. Employees other than Slot Guest Services Representative would only use the Cage Employee Window if the BES was down. ¶16. Defendant has attached as Exhibit 11 to its opposition, a spreadsheet for October 2012 which shows that during that month cashier employees, with a few exceptions, used the BES system to obtain funds after clocking in and returned funds to the BES before clocking out. *Espino Declaration*, ¶16.

Defendant also submitted the Declaration of its Director of Labor Analysis, Michael Berry, who states that the Cosmopolitan has employees with cash bank duties in approximately 20 different job classifications, spread across approximately 34 different departments. *Opposition (#20), Exhibit 7, Berry Declaration*, ¶¶1, 2. Mr. Berry states that there is no companywide policy governing how employees must handle cash as part of their job duties. Nor is there any companywide policy that requires employees to perform banking activities off the clock. ¶4. Mr. Berry also states that the cash banking practices of the Slot Operations Department are unique in regard to how Slot Guest Representatives obtain their cash. ¶¶5, 6. Other employees use the automated BES. ¶ 9. Mr. Berry states that the Food & Beverage Department, which includes the Pizzeria in which Ms. Adame was employed, has standing operating procedures which require employees to clock in before obtaining their house-issued cash bank and to clock out only after the house-issued bank has been returned to the Employee Cage. ¶¶9, 10. Mr. Berry further states that to the extent any Slot Operations Department policy ever purported to require Slot Guest Service

8

Representatives to obtain cash from the Cage Employee Window before clocking in, or to return such funds after clocking out, it was contrary to overall Company policy and had no effect in any other department.  ¶12.

Defendant has submitted a revised Slot Operations Department Clock In/Out policy dated July 9, 2012, which requires Slot Guest Service Representatives to obtain their keys, radios and pouch funds after they clock in and to return those items before they clock out.  *Opposition (#20), Exhibit 8.*  Defendant has also submitted copies of the Food & Beverage Standard Operating Procedures, dated January 1, 2010, December 1, 2011, and revised on August 3, 2012, which require employees to clock in before obtaining their cash banks and to clock out only after returning their cash banks.  *Exhibits 9* and *10.*

### DISCUSSION

Under the FLSA, an employee may initiate a collective action on behalf of herself and other similarly situated people.  29 U.S.C. § 216(b).  The requirements for class action certification under Fed.R.Civ.P. 23(a) do not apply to claims arising under the FLSA.  *Kinney Shoe Corp. v. Vorhes,* 564 F.2d 859, 862 (9th Cir. 1977); *Davis v. Westgate Planet Hollywood Las Vegas,*  2009 WL 102735 *8 (D. Nev. 2009).  Although a plaintiff may bring an action on behalf of herself and others similarly situated, "no employee shall be a party to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in which such action is brought."  29 U.S.C. § 216(b).  District courts have the discretion in appropriate cases to implement § 216(b) by facilitating notice to potential plaintiffs.  *Hoffmann-LaRouche, Inc. v. Sperling,* 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Edwards v. City of Long Beach,* 467 F.Supp.2d 986, 989 (C.D. Cal.  2006).

The Court must determine whether the potential plaintiffs are "similarly situated" to create an opt-in class under § 216(b).  *Davis v. Westgate Planet Hollywood Las Vegas*,  2009 WL 102735 at *9, citing *Grayson v. K-Mart Corp.,* 79 F.3d 1086, 1097 (11th Cir. 1996).  A named plaintiff seeking to create a § 216(b) opt-in class need only show that his/her position is similar, but not identical, to the positions held by putative class members.  *Sperling v. Hoffman-La Roche, Inc.,* 118 F.R.D. 392, 407 (D.N.J. 1988), aff'd in part and repealed and dismissed in part, 862 F.2d 439 (3rd

Cir.1988), aff'd, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). The similarly situated requirement of § 216(b) is more elastic and less stringent than the joinder and severance requirements found in Rule 20 and Rule 42 respectively of the Federal Rules of Civil Procedure.

### I.   Whether Plaintiff Has Made A Sufficient Showing for Conditional Class Certification.

The Ninth Circuit has not yet formulated a test to determine whether putative class members are similarly situated. Numerous district court decisions, however, apply a two-step approach for determining whether potential plaintiffs are similarly situated. *Davis v. Westgate Planet Hollywood Las Vegas*, *supra,* at \*9. At the first stage, the court makes a preliminary determination whether to conditionally certify a class under § 216(b) and send notice to potential class members and give them the opportunity to join the action. After discovery is completed, the defendant may move, at the second stage, to decertify the collective action and the court then makes a final determination, based on the evidence, whether the FLSA collective action should go forward.

At the first stage, the court relies "primarily on the pleadings and any affidavits submitted by the parties," [to decide] "whether the potential class should be given notice of the action." *Davis, supra,* at \*9, citing *Leuthold v. Destination America, Inc.,* 224 F.R.D. 462, 466 (N.D. Cal. 2004). A fairly lenient standard is applied at this stage because the court has "minimal evidence" to make its determination. *Mooney v. Aramco Services, Co.,* 54 F.3d 1207, 1213-14 (5th Cir.1995); *Kane v. Gage,* 138 F.Supp.2d 212, 214 (D. Mass. 2001). A plaintiff need only make substantial allegations that the putative class members were subject to a single decision, policy, or plan that violated the law. *Mooney,* 54 F.3d at 1214 n. 8. *See also Byard v. Verizon West Virginia, Inc.,* 2012 WL 5249159, \*2 (N.D. W.Va. 2012) ("District courts in this Circuit have found conditional certification appropriate where plaintiffs put forward at least a 'modest factual showing' that the members of the putative class were victims of a common policy or practice that violated the FLSA.") The Sixth Circuit has given implicit approval to the two step approach and the lenient standard applied at the first step. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-547 (6th Cir. 2006).

Although a lenient standard is applied at the initial stage, a plaintiff does not meet her burden through unsupported assertions of widespread violations. *Edwards v. City of Long Beach*, 467 F.Supp.2d 986, 990 (C.D. Cal. 2006). *See also Bernard v. Household Intern., Inc.*, 231 F.Supp.2d 433, 435 (E.D. Va. 2002) ("Mere allegations will not suffice; some factual evidence is necessary"); and *Smith v. Sovereign Bancorp., Inc.*, 2003 WL 22701017, *2 (E.D. Pa. 2003) (same). Affidavits in support of a motion for conditional certification must be based on the affiant's personal knowledge, which may be inferred based on what the affiant would have probably learned during the normal course of employment. *White v. MPW Industrial Services, Inc.*, 236 F.R.D. 363, 369 (E.D. Tenn. 2006). The court, however, does not resolve factual disputes, decide substantive issues on the merits or make credibility determinations at the first stage. *Fisher v. Michigan Bell Telephone Co.*, 665 F.Supp.2d 819, 826 (E.D. Mich. 2009); *Byard v. Verizon West Virginia, Inc.*, 2012 WL 5249159 at *5.

Some courts have held that a motion for conditional class certification must be based on admissible evidence. *Harrison v. McDonald Corp.*, 411 F.Supp.2d 862, 865-866 (S.D. Ohio 2005); *Richards v. Computer Scis. Corp.*, 2004 WL 2211691, *1 (D. Conn. 2004); and *Threatt v. Residential CFR, Inc.*, 2005 WL 463199, *5 (N.D. Ind. 2005). Other courts state, however, that evidence submitted in support of a motion for conditional certification does not have to meet the admissibility standard applicable to summary judgment motions. *White v. MPW Industrial Services, Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006); *Crawford v. Lexington-Fayette Urban County Government*, 2007 WL 293865, *2-*3 (E.D. Ky. 2007); *Bredbenner v. Liberty Travel, Inc.*, 2009 WL 2391279,*2 n. 1 (D.N.J. 2009); *Howard v. Securitas Security Services*, 2009 WL 140126, *3 (N.D.Ill. 2009); and *Longcrier v. HL-A Co., Inc.*, 595 F.Supp.2d 1218, 1224 n. 8 (S.D. Ala. 2008). *Fisher v. Michigan Bell Telephone Co.*, 665 F.Supp.2d at 826 states that "[b]ecause final disposition is not an issue at the conditional certification stage, requiring a plaintiff to present evidence in favor of a conditional certification that meets the hearsay standards of the Federal Rules of Evidence fails to take into account that the plaintiff has not yet been afforded an opportunity, through discovery, to test fully the factual basis of his case." (internal quotation marks and citations omitted). *See also Davis v. Social Service Coordinators, Inc.*, 2012 WL 5361746 (E.D. Cal. 2012).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This Court believes the evidentiary standard applied by *White* and *Fisher* at the conditional certification stage is the better view.

    **A.   Uniform Class.**  Defendant argues that Plaintiff has failed to present sufficient evidence to establish a companywide policy requiring uniformed employees to change in and out of their uniforms at work and while off the clock.  Defendant points out that Plaintiff has submitted only the declarations of herself, Ms. Adame and Ms. Megia in support of this allegation.  Defendant also notes that Ms. Adame only wore a uniform during the first four weeks of her employment before she transferred to the non-uniformed cashier position in the Pizzeria.  In opposition to Plaintiff's declarations, Defendant has submitted the declarations of its managerial officers, Mr. Espino and Mr. Berry, who state that to the extent the Cosmopolitan had a policy requiring employees to change in and out of their uniforms on the company premises, the policy was never enforced or was only enforced for a short time after the Cosmopolitan opened.  Defendant also disputes that employees were ever required to change into their uniforms on the premises before clocking in and to change out of them after clocking out.

    Defendant's argument would be more persuasive were it not for the "CoStar Guidebook" which stated that "all CoStars provided with uniforms are expected to report to the Garment District daily to obtain the uniform for the day and return the uniform to The Garment District at the end of the shift."  The "Time Keeping" section of the same document also states that "[t]ime worked is the time actually spent on the job performing your assigned duties."  The Guidebook instructs the employees to: "Leave yourself extra time to go to the Garment District and change into your uniform so that you are able to report to your work station at the start of your shift."  Although the Defendant argues that the requirement to change into uniforms on company premises was never enforced, these provisions appear in a company manual dated July 22, 2011, which was more than seven months after the property opened.   The Time Keeping provisions could also be understood as requiring employees to change into their uniforms before they clock in.  These provisions are therefore consistent with the declaration of Ms. Lewis, Ms. Adame and Ms. Megia that they and other uniformed employees were required to clock in after changing into their uniforms and were required to clock out before changing out of and turning in their uniforms.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The 97 employee declarations submitted by Defendant do not refute the minimal showing made by Plaintiffs of a company policy in violation of the FLSA.  As the court stated in *Damassia v. Duane Reade, Inc.*, 2006 WL 285971, *7 (S.D.N.Y. 2006), "[g]iven that the Court must be 'lenient' in deciding whether plaintiff has met its 'minimal' burden at this stage, untested evidence such as affidavits submitted by defendant, cannot, under the circumstances here, defeat plaintiff's entitlement to a preliminary determination that they are similarly situated to other assistant night managers."  The Court also does not have information about the circumstances under which the employee declarations were obtained.  An employer is not precluded from obtaining such declarations.  There is, however, a potential for coercion or other abuse in the obtaining of such declarations.  *Ross v. Wolf Fire Protection, Inc.*, 799 F.Supp.2d 518, 526-527 (D. Md. 2011).  *See also Sjoblom v. Charter Commc'ns, LLC*, 2007 WL 5314916 (W.D. Wis. 2007) and *Longcrier v. HL-A Co.*, 595 F.Supp.2d 1218, 1229, 1231 (S.D. Ala. 2008).  Although there is presently no evidence of coercion or abuse in this case, Plaintiff is entitled to explore the circumstances relating to the obtaining of these declarations before they are accorded evidentiary weight by the Court.

Defendant's 97 employee declarations, although substantially more than Plaintiff's three declarations, still represent only a small percentage of the Cosmopolitan's 3700 employees.[2] Plaintiff's counsel does not have ready access to Defendant's workforce to obtain additional declarations that might support her, Ms. Adame's and Ms. Megia's allegations.  Requiring Plaintiff to obtain additional employee declarations prior to granting conditional certification would be contrary to the purpose served by conditional certification and court approved notice to potential plaintiffs.  Court approved and supervised notice ensures that potential class members are notified about the action in an accurate and impartial manner.  For these reasons, most courts do not require the plaintiff to obtain significant numbers of consents to join the action prior to granting conditional certification.  *See Hoffman v. Securitas Security Services*, 2008 WL 5054684, *5-6 (D. Idaho 2008); *Reab Electronic Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002).  *See also Davis v. Social Service Coordinators, Inc.*, 2012 WL 5361746, *20 (E.D. Cal. 2012) and *Mowdy v. Beneto Bulk Transp.*,

---

[2]The Court has not been given specific information as to the number of Cosmopolitan employees who are required to wear company supplied uniforms.

13

2008 WL 901546, *7 (N.D. Cal. 2008).  For the same reasons, the Court should not accord weight to the number of declarations obtained by Defendant in comparison to those submitted by the Plaintiff at this early stage of the action.

Plaintiff has made the required minimal showing of a company policy or practice that required Defendant's employees to change into their company issued uniforms on Defendant's premises prior to clocking in and then changing out of their uniforms after clocking out.  Sufficient grounds therefore exist to conditionally certify an FLSA collective action class consisting of Defendant's hourly paid, nonexempt employees who were allegedly required to change into and out of company issued uniforms on Defendant's premises without being paid for the time required to do so.

**B.  Satellite Bank Class.**  Plaintiff Darlene Lewis has made the required minimal showing that employees in the Cosmopolitan's Slot Operations Department "who require[d] keys, radios or pouch funds" to perform their jobs were required to obtain those items before clocking in and to return them after clocking out.  The existence of this policy is demonstrated not only by Ms. Lewis's declaration, but also by the written policy of the the Slot Operations Department.  *See Lewis Declaration, ¶¶7-10, Plaintiff's Reply (#21), Declaration of Joshua Buck, Exhibit A.*  It also appears that this policy may have been in effect until July 2012 when it was formally changed by Defendant.  *Opposition (#20), Exhibit 8.*

Brianna Adame states in her declaration that she was instructed by her manager in the Pizzeria that it was Cosmopolitan policy to have all employees who handle a cash bank to obtain their bank before they clock-in, and to return the bank funds to the employer after they clock-out. *Adame Declaration*, ¶7.  Ms. Adame does not state whether she is aware that any other employees in the Pizzeria or elsewhere in the Cosmopolitan were told that this was the policy or were reprimanded for not following it.  Defendant has submitted a copy of the Food & Beverage Department's Standard Operating Procedure, dated January 1, 2010, which expressly states that employees must clock in to work before obtaining their house issued bank and must clock out only after they have dropped their house issued bank into the revenue drop slot.  *Opposition (#20), Exhibit 9.*  Defendant states that the Pizzeria is in the Food & Beverage Department and is therefore

14

governed by this written policy.

Ms. Adame's declaration is certainly questionable, since the manager's alleged statement appears to be contrary to the Food & Beverage Department's written policy.  Defendant, however, has also indicated that the Slot Operations Department's written policy, which required employees to obtain and turn in their keys, radios or pouch funds off the clock, was not consistent with the Cosmopolitan's overall policy.  It is therefore conceivable that the Pizzeria manager adopted a policy contrary to the Food & Beverage Department's standard operating procedures.  The court, again, does not decide the merits the case or issues of credibility at this stage of the certification process.  Based on Ms. Adame's declaration, Plaintiff has made the minimally required showing that a policy also existed in the Pizzeria which required cashiers in that facility to obtain their cash banks before clocking in and to turn their cash banks in after clocking out.  Plaintiff has not shown, however, that such an  alleged policy existed outside the Slot Operations Department and the Pizzeria.

Plaintiff has met the requirements for conditional certification of a class of hourly paid, nonexempt employees in the Defendant's Slot Operations Department and the Pizzeria who were required to carry employer funds as part of their job duties and were allegedly required to obtain the funds and other work equipment such as keys and radios, before clocking in to the timekeeping system and to return the items to the employer after clocking out.

**3.  <u>Overtime Rate Calculation Class.</u>**  The issue regarding Plaintiff's third proposed FLSA class is primarily a legal one.  Plaintiff argues that Cosmopolitan's hourly wage employees receive an $8.00 lunch stipend for the employee cafeteria which is not included in their compensation for purposes of calculating employee overtime pay at 1 ½ times the employees' regular hourly rate.  Defendant argues the lunch stipend is not employee compensation and therefore does not have to be included in the regular hourly rate.  Defendant cites *Acton v. City of Columbia*, 2004 WL 2152297, *6, 2004 U.S. Dist. LEXIS 19004 (W.D.Mo. 2004), *aff'd* 436 F.3d 969 (8th Cir. 2006) in support of its position.  In *Acton*, the plaintiff firefighters alleged that a $12 meal allowance that they received for each 24 hour shift they worked should be included as compensation in determining their regular hourly rate for overtime pay.  The court stated that, as a general rule, expenses that employees incur

15

for their employer's convenience are not included in the employee's regular wage rate.[3] In holding that the allowance was not employee compensation, the court stated that firefighters were not allowed to return home during their 24 hour shifts.  The meal allowance was inherently for the employer's convenience in keeping the firefighters on 24 hour duty.  Here, the issue is whether the Cosmopolitan's lunch stipend is for the convenience of the employer, presumably because it encourages the employees to eat their meals on the premises and avoids the need for longer meal breaks.

In arguing against conditional certification of the Overtime Rate Calculation Class, Defendant states that "[t]here is little purpose in notifying vast numbers of individuals that they may have a legal claim for relief if, as a matter of law, no relief is available." *Opposition (#20), pg. 22.*  Defendant argues that the goals of judicial efficiency and economy are best served by deferring conditional certification of this class until the legal issue relating to the lunch stipend is decided.  Defendant states that it "does not oppose tolling the statute of limitations on this claim for prospective class members until the Court has ruled on this threshold matter." *Id, pg. 23.*  Plaintiff argues, however, that some discovery may be necessary to determine whether the lunch stipend is or is not compensation.  Ignoring Defendant's offer to toll the statute of limitations, Plaintiff argues that "since the statute of limitations continues to run on potential opt-in plaintiffs until they file a consent to sue with the Court, Plaintiff requests that notice be sent expeditiously to all members of the Overtime Rate Subclass." *Opposition (#21), pg. 13.*

The Defendant has a plausible argument that the lunch stipend should not be treated as employee compensation, although some discovery may be needed on this issue.  If this issue is decided in Defendant's favor, then the burden and expense of sending notice to all of Defendant's hourly, nonexempt employees will be avoided.  If the issue is decided in Plaintiff's favor, or if the Court finds there are issues of fact for trial on this claim, then notice can still be sent to Defendant's employees.  Because Defendant agrees to toll the statute of limitations on this claim, the need for

---

[3]Defendant also notes that 29 C.F.R. §778.224(b) states that the cost to the employer of conveniences furnished to employees such as parking, recreational facilities and on-the-job-medical care are excludable from the regular rate of pay. *Opposition (#20), pg. 23 n. 15.*

prompt conditional certification of the FLSA class is substantially lessened.

The Court will therefore defer granting Plaintiff's motion for conditional certification of the Overtime Rate Calculation Class subject to the following conditions:  (a) The parties shall complete all necessary discovery relating to the employee lunch stipend within sixty (60) days of this order; and Defendant shall file a motion for partial summary judgment on this issue within ninety (90) days of this order (Plaintiff may file a cross or countermotion for summary judgment on this claim). The parties may stipulate to shorten the time for discovery and to file motions for summary judgment; (b) if the Court grants summary judgment in Plaintiff's favor on this claim or holds that there are issues of fact for trial on this claim, then the Court will conditionally certify the Overtime Rate Calculation Class; and (c) the statute of limitations applicable to the claims of prospective members of the Overtime Rate Calculation Class shall be tolled until ten (10) days after the Court issues a decision on the motion(s) for summary judgment or until ten (10) days after Defendant provides Plaintiffs with the names and last known addresses of all employees in this class, whichever time period is longer.

## II.   Whether Conditional Certification Should Be Denied or Deferred Pending the Decision on Defendant's Motion to Dismiss.

Defendant argues that Plaintiff's motion for conditional certification of the foregoing classes should be denied or deferred until a decision on Defendant's *Motion to Dismiss Pursuant to the Colorado River Doctrine (#10 )*, filed on October 15, 2012.  The motion to dismiss is fully briefed and awaiting decision by the court.  Defendant's motion to dismiss is based on the fact that Melodee Megia, through the same counsel that represents Plaintiff Lewis in this case, has filed an action in the Nevada District Court, Clark County, Nevada which alleges class action claims against Defendant under Nevada law.  *See Defendant's Opposition (#21), Exhibit 2, Second Amended Complaint.*  Ms. Megia's state court complaint alleges substantially the same claims under Nevada law with respect to the Uniform Class that Plaintiff Lewis alleges in this case pursuant to the FLSA and Nevada law.  Ms. Megia's state court complaint does not allege a class action claim regarding the Satellite Bank Class.  Although Ms. Megia's state court complaint alleges a class action claim regarding an Overtime Rate Calculation Class, that claim is predicated on Defendant's alleged

failure to include discretionary bonuses paid to employees within the regular hourly rate.  It is not based on the failure to include the lunch stipend in the employees' regular hourly rate.

Defendant argues that the District Court should either dismiss or stay this action in deference to the pending state court action, to avoid piecemeal litigation, the potential for inconsistent judgments, and in the interest of judicial economy.  Plaintiff argues, however, that the actions are not substantially similar to justify dismissal or a stay of this action under the *Colorado River* Doctrine.  There is authority supporting at least a partial stay of this action in deference to Ms. Megia's state court action with respect to Plaintiff's claims regarding the Uniform Class.  In *Ross v. U.S. Bank Nat. Ass'n*, 542 F.Supp.2d 1014 (N.D. Cal. 2008), the plaintiffs filed an action in federal district court alleging FLSA claims and state law claims upon behalf of defendant's employees in California, Oregon and Washington.  The same plaintiffs' counsel filed class action lawsuits against the defendant in Oregon state court alleging the same state law claims on behalf of defendant's Oregon employees that were alleged in the federal action.  The Oregon state actions did not allege claims under the FLSA.  In granting a stay of the federal action in regard to the claims made on behalf of Oregon employees pursuant to the *Colorado River* Doctrine, the court stated:

> As to the third factor, the danger of piecemeal litigation, plaintiffs argue that the filing of this case does not create piecemeal litigation because *Lowdermilk* and *Tate* do not include FLSA claims. However, plaintiffs' counsel fail to explain why they did not add their federal claims to their state actions on behalf of the Oregon class. The federal courts do not have exclusive jurisdiction over FLSA claims. *See* 29 U.S.C. § 216(b) (actions for violations of section 206 and 207 may be brought against an employer in any federal or State court). Plaintiffs' failure to bring all available claims for the Oregon class creates the kind of piecemeal litigation that the *Colorado River* doctrine intends to prevent. Therefore, this factor weighs in favor of staying the current action with respect to the Oregon class. However, this factor does not directly affect the California and Washington classes because these plaintiffs are not and cannot be included in the Oregon state actions.

*Ross*, 542 F.Supp.2d at 1022.

The court also rejected plaintiffs' argument against stay or dismissal on the grounds that Oregon law does not provide the rules in resolving their federal and state law claims.  The court stated:

> This is not true with respect to the claims brought by the Oregon

18

class. To the extent that the Oregon employees were regulated by the wage and hour law of Oregon, Oregon state courts are most suitable to provide the rules of decision on the merits. As for the FLSA claims brought by the Oregon class, the resolution of their Oregon state law claims may render these federal claims moot. This factor weighs in favor of staying the action with respect to the Oregon putative class but not the California class and the Washington class.

*Id.*

This Court is reluctant, however, to deny or defer a decision on Plaintiff's Motion for Circulation of Notice Pursuant to 29 U.S.C. § 216(b) (#11) pending a decision on Defendant's Motion to Dismiss (#10). It may be some time before the district judge is able to issue a decision on the motion to dismiss because of the court's heavy docket. Meanwhile, the two year statute of limitations under 29 U.S.C. §255(a) is beginning to expire on the claims of some potential plaintiffs who may wish to opt in to this case once they receive notice.[4] By permitting notice of the FLSA action to be circulated, the *status quo* of the action can be maintained during the pendency of the motion to dismiss. If the motion to dismiss has still not been decided by the end of the opt-in period, then the Court can stay further discovery and other pre-trial activity pending the decision on that motion. Although the sending of notice is burdensome, the burden falls primarily on the Plaintiff and her counsel who will bear the expense of sending notice. The chief burden on Defendant is having to produce the names and last known addresses of current and former employees in the subject classes.

If, however, the Defendant is willing to toll the running of the statute of limitations on Plaintiff's FLSA claims until ten (10) days after the filing of an order denying Defendant's motion to dismiss, then the Court will stay the sending of notice to potential class members until ten (10) days after the order on Defendant's motion to dismiss.

**III.  Plaintiff's Motion to Toll the Running of the Statute of Limitations.**

Plaintiff moves the Court to toll the running of the statute of limitations during the period that the instant motion has been pending and during the notice period. *Motion (#11), pg. 13.* As stated by the court in *Davis v. Westgate Planet Hollywood*, 2009 WL 102735, *14 (D. Nev. 2009),

---

[4]The statute of limitations period is three years for a willful violation. The Court makes no assumption, however, that willfulness will be established.

federal courts have applied the equitable doctrine of tolling in two situations: (1) when the plaintiffs are prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant; or (2) when extraordinary circumstances beyond plaintiffs' control make it impossible to file the claims on time. *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996). The district judges and magistrate judges in this district have generally not granted motions to toll the running of the statute of limitations where the defendant has filed a non-frivolous opposition to the motion for conditional certification of the FLSA class and there has been no undue delay by the court in deciding the motion. *See e.g. Davis v. Westgate Planet Hollywood*, at *14; *Phelps v. MC Communications, Inc.*, 2011 WL 3298414, *8 (D. Nev. 2011) (tolling not warranted); and *Williams v. Trendwest Resorts, Inc.*, 2006 WL 3690686, *8 (D. Nev. 2006) (tolling not warranted). In *Lucas v. Bell Trans*, 2010 WL 3895924, *5 (D. Nev. 2010), the court granted tolling because the delay in ruling on the motion was not caused by the parties and because Rule 23 class status had already been granted for plaintiff's state law claims.

Plaintiff filed her complaint in this action on August 31, 2012. The complaint was served on September 10, 2012, and Defendant filed its motion to dismiss on October 15, 2012. Because Plaintiff did not file her complaint until more than one year and nine months after her FLSA causes of action accrued, and nearly four months after her employment was terminated, it is not surprising that the FLSA claims of some potential opt-in plaintiffs may be barred, in or whole or in part, by the running of the two year statute of limitations under 29 U.S.C. §255(a). Defendant's opposition to Plaintiff's motion to circulate notice is not frivolous and Plaintiff has not shown that she or potential opt-in plaintiffs were prevented from asserting their claims by some kind of wrongful conduct by Defendant. As the district court in *Phelps v. MC Communications, Inc.*, *supra*, at *8 noted, "the fact that Defendants opposed the motion to circulate notice did not, in and of itself, preclude any potential plaintiff from asserting his or her claim." There have not been any other extraordinary circumstances, such as undue delay by the court in deciding the motion, that justifies the application of equitable tolling.

The Court therefore denies Plaintiff's motion for equitable tolling of the statute of limitations. This does not prevent the Defendant from stipulating to toll running of the statute of

limitations, as it has agreed to do in regard to the Overtime Rate Calculation Class, or as the Court has suggested that it do if it wishes to defer the sending of notice to the Uniform Class and the Satellite Bank Class until the motion to dismiss is decided.

**IV.   Form of Notice(s).**

Defendant also objected the form of notice to Defendant's employees attached to Plaintiff's motion.  Plaintiff responded to some of these objections by attaching a revised form of notice to its Reply (#21).  Given the Court's decision regarding the appropriate classes in this case, the notice needs to be further revised.  Because conditional certification of the Satellite Bank Class is limited to employees who worked in Defendant's Slot Operations Department and Pizzeria, a separate notice should be sent to employees in that class.  Sending a single notice governing all three classes to all of Defendant's hourly paid nonexempt employees would likely cause confusion as to which employees are entitled to participate in the Satellite Class.  The number of former or current employees who are eligible to participate in the Satellite Class appears to be relatively small. Therefore, the increased cost of preparing and mailing separate notice to the members of that class should not be substantial.  The Court has drafted notice and consent forms for the classes based on the notice form previously approved by this Court in *Allerton v. Sprint Nextel Corp.*, Case No. 2:09-cv-01325-RLH-GWF, Order (#60), filed November 16, 2009.  The forms are also similar to those approved by the court in *Williams v. Trendwest Resorts, Inc.*, 2006 WL 3690686, at *9-*10. The parties may propose modifications to the attached notice and consent forms within 7 days of the filing of this order, and the Court will make any further modifications to the forms that it deems proper.

**V.   Time Limit for Potential Plaintiffs to Opt-In.**

Plaintiff argues that there should be no set time limit for potential plaintiffs to return consent forms to be eligible to participate in this lawsuit other than the applicable statute of limitations that may apply to individual opt-in plaintiffs.  The Court disagrees.  Federal courts generally set deadlines for consents to be returned and filed with the court for effective case management.  *See e.g. Davis v. Westgate Planet Hollywood*, 2009 WL 102735, at *13, *Phelps v. MC Communications, Inc.*, 2011 WL 3298414, at *6; and *Williams v. Trendwest Resorts, Inc.*, 2006 WL 3690686, at *7.

Individuals who do not return consents to participate in this action are, of course, free to file their own separate lawsuits, subject to the bar of the statute of limitations.  Given the potential size of the Uniform Class, an opt-in period of 90 days from the date Notice is sent is reasonable.   Although a shorter opt-in period for the Satellite Bank Class could be justified, a single opt-in period for all classes is probably more efficient.  The Court therefore adopts a ninety (90) day opt-in period from the date Notice is sent.

Defendant requests that it be given 21 days from the date of this order in which to provide Plaintiff with a list of former and current employees within the foregoing classes.  Defendant's time request is reasonable, is not opposed by Plaintiff, and is therefore granted.

## CONCLUSION

Based on the foregoing,

**IT IS HEREBY ORDERED** that Plaintiff Darlene Lewis's Motion for Circulation of Notice Pursuant to 29 U.S.C. § 216(b) (#11) is **granted**, in part, and **denied**, in part as follows:

1.   The Court grants conditional certification of an FLSA collective action class of all former and current hourly paid, nonexempt employees of Defendant who were or are required to change into company issued uniforms in the Defendant Cosmopolitan's Garment District prior to clocking in to the employee timekeeping system and who were or are required to change out of their uniforms in the Garment District after clocking out of the employee timekeeping system;

2.   The Court grants conditional certification of an FLSA collective action class of all former and current hourly paid, nonexempt employees who work or worked in Defendant's Slot Operations Department or Pizzeria and who were, or are, required to obtain a cash bank/employer funds or other equipment to perform their work duties prior to clocking in to the employee timekeeping system and who were, or are, required to return their cash bank/employer funds or other equipment after clocking out of the employee timekeeping system;

3.   The Court defers conditional certification of Plaintiff's proposed Overtime Rate Calculation Class subject to the following conditions:

(a) The parties shall complete all necessary discovery relating to the Plaintiff's claim regarding the employee lunch stipend within sixty (60) days of this order; and Defendant shall file a motion for partial summary judgment on this claim within 90 days of this order (Plaintiff may file a cross motion or countermotion for summary judgment on this claim).  The parties may stipulate to shorten the time for discovery and the filing of motion(s) for summary judgment;

(b) If the Court grants summary judgment in Plaintiff's favor on this claim or holds that there are issues of fact for trial on this claim, then the Court will conditionally certify the Overtime Rate Calculation Class; and

(c) the statute of limitations applicable to the claims of prospective members of the Overtime Rate Calculation Class shall be tolled until ten (10) days after a decision on the motion(s) for summary judgment regarding the employee lunch stipend or until ten (10) days after Defendant provides Plaintiffs with the names and last known addresses of all employees in this class, whichever time period is longer.

4.  Defendants shall provide Plaintiff with lists of the names, last known addresses and social security numbers of the former or current employees in the Uniform Class, and Satellite Class within twenty-one (21) days from the filing date of this order.  Plaintiff shall not disclose the personal identification of the employees to any third persons not involved in the conduct of this litigation.

5.  The form of the "Notice of Pendency of Collective Action Lawsuit under the Fair Labor Standards Act," and "Consent to Join Pursuant to 29 U.S.C. §216(b)" to be sent to members of the Uniform Class and Satellite Bank Class shall be in accordance with the forms in Exhibits 1 and 2 to this order. Either party may file a request for modification of the forms within seven (7) days of the issuance of this order.  The Court will enter an order modifying the forms to the extent it determines that modification is proper.

6.  Plaintiff's counsel or a claims administration company that Plaintiff selects to process the mailing and opt-in forms shall mail the Court authorized Notice and Consent forms, and a postage pre-paid return envelope to each member of the Uniform Class and

Satellite Bank Class within 30 days of this order.  Plaintiff shall file with the Court Clerk a document certifying the date that the Notice was mailed to the class members.

7.  Plaintiffs are required to file with the Court Clerk all "Consent to Join Pursuant to 29 U.S.C. §216(b)" within ninety (90) days from the date that Notice is mailed to the class members.  Any individual on whose behalf a "Consent to Join Pursuant to 29 U.S.C. §216(b)" is filed after the expiration of the deadline shall not be allowed to participate as an "opt-in plaintiff" in this action, unless for good cause shown, the Court enters an order permitting such individual to participate.

**IT IS FURTHER ORDERED** that Plaintiff's motion to toll the running of the statute of limitations during the pendency of the motion for circulation of notice and during the notice period is hereby **denied**, with the exception of the tolling of the statute of limitations as agreed to by the Defendant in regard to the Overtime Rate Calculation Class or as may be hereafter stipulated by the Defendant and ordered by the Court.

**IT IS FURTHER ORDERED** that if Defendant files with the Court a written stipulation to toll the running of the statute of limitations in regard to the Uniform Class and/or the Satellite Bank Class until ten (10) days after the entry of an order denying Defendant's *Motion to Dismiss Pursuant to the* Colorado River *Doctrine (#10)*, then the mailing of the "Notice of Pendency of Collective Action Lawsuit under the Fair Labor Standards Act" to members of the Uniform Class and Satellite Bank shall be stayed until ten (10) days after the entry of an order denying said motion to dismiss.

DATED this 22nd day of January, 2013.

*George Foley Jr.*

_____
GEORGE FOLEY, JR.
United States Magistrate Judge

**EXHIBIT 1.**

NOTICE OF PENDENCY OF COLLECTIVE ACTION
LAWSUIT UNDER THE FAIR LABOR STANDARDS ACT

TO:     All current and former hourly paid, nonexempt employees of Nevada Property 1, LLC, doing business as the Cosmopolitan of Las Vegas Nevada who were, or are, required to wear uniforms in the performance of their employment duties.

Re:     Lawsuit entitled: Darlene Lewis, individually, and on behalf of others similarly situated, Plaintiffs, versus Nevada Property 1, LLC, doing business as the Cosmopolitan of Las Vegas Nevada, Defendant, filed in the United States District Court for the District of Nevada, Case No. 2:12-cv-01564-MMD-GWF.

INTRODUCTION

The purpose of this notice is to:

1. inform you of the existence of a lawsuit in which you may be "similarly situated" to the named plaintiff;

2. advise you how your rights may be affected by this lawsuit; and

3. instruct you on the procedure for participating in this lawsuit, if you choose to do so.

**NOTE:  The Court has taken no position in this case regarding the merits of the plaintiff's claims or the defendant's defenses.  This Notice is <u>not</u> an expression of any opinion by the Court about the merits of any claims or defenses asserted by any party to this action as those issues have not been decided.**

DESCRIPTION OF THE LAWSUIT

Plaintiff Darlene Lewis alleges that Defendant Nevada Property 1, LLC, doing business as the Cosmopolitan of Las Vegas Nevada ("Cosmopolitan") violated the Fair Labor Standards Act. Specifically, Plaintiff claims that she and other similarly situated hourly paid, nonexempt employees were required to change into company issued uniforms in the Cosmopolitan's Garment District prior to clocking in to the employee timekeeping system and were required to change out of their uniforms in the Garment District after clocking out of the employee timekeeping system. Plaintiff alleges that she and other similarly situated hourly paid, nonexempt employees are owed unpaid regular or overtime wages for time they spent changing into and out of their uniforms on the company premises prior to the beginning or after the end of their work shifts.

Plaintiff seeks the recovery of unpaid wages and liquidated damages (double damages) in an amount equal to the unpaid regular or overtime wages owed under the Fair Labor Standards Act.

Defendant disputes Plaintiff's claims and denies that it is liable to Plaintiff or other similarly situated employees for any unpaid wages.  Defendant states it did not and does not require uniformed employees to change into and/or out of their uniforms on the company's premises, and has not and does no require the employees to change into their uniforms on the company premises before clocking in to the timekeeping system, or to change out of their uniforms after clocking out of the timekeeping system.  Defendant Cosmopolitan therefore states that all of its hourly paid, nonexempt employees have been paid for all regular time and overtime worked during the course of their employment.

DESCRIPTION OF A COLLECTIVE ACTION

A collective action is a lawsuit in which the claims of a group or class of people are decided in a single court proceeding. In a collective action brought pursuant to the Fair Labor Standards Act, individuals who are within the class of persons on whose behalf the action is brought must consent to join in the action and have their individual claims decided in the action.

COMPOSITION OF THE CLASS

The Class of persons eligible to respond to this Notice and participate in this case are all current and former hourly, non-salaried, non-exempt employees who worked for Nevada Property 1, LLC, doing business as the Cosmopolitan of Las Vegas Nevada who were, or are, required to change into company issued uniforms in the Cosmopolitan's Garment District prior to clocking in to the employee timekeeping system and were, or are, required to change out of their uniforms in the Garment District after clocking out of the employee timekeeping system.

ELIGIBILITY TO PARTICIPATE IN THIS LAWSUIT

If you are an individual within the above described Class, then you are eligible to participate in this action. If you wish to participate in this action, then  you may join this lawsuit by mailing the enclosed "Consent To Join" form to Plaintiff's counsel at the following address:

**[name and address of counsel here.   The Consent may be sent to the address of Plaintiff's counsel's claim administrator, however the name of the addressee should be Plaintiff's counsel and not the administrator.]**

If you wish to join this lawsuit, you must send the "Consent To Join" form to **[Plaintiff's attorney name here]** so that he/she has time to file it with the Federal Court on or before NINETY (90) DAYS FROM THE DATE OF THE ISSUANCE OF THIS NOTICE which is _____**.**

If you do not return the "Consent To Join" form to **[Plaintiff's attorney name here]** in time for it to be filed with the Federal Court, you will not be able to participate in the Fair Labor Standards Act portion of this lawsuit.

LEGAL EFFECT OF JOINING THIS LAWSUIT

If you choose to join this case, you will become a plaintiff in this lawsuit and you will bound by the decision of the court, whether it is favorable or unfavorable.

The attorneys for the plaintiffs in this lawsuit are being paid on a contingency fee basis, which means that if there is no recovery, the plaintiffs will not have to pay attorneys' fee to plaintiffs' attorneys. If the plaintiffs prevail in this litigation, the attorneys for the plaintiffs will request that the federal court determine or approve the amount of attorneys' fees and costs that they are entitled to receive for their services.

If you sign and return the "Consent to Join" form, you agree to designate the Plaintiff Darlene Lewis as your agent:

1.      to make decisions on your behalf concerning the method and manner of conducting this lawsuit;

2.      to enter into an agreement with plaintiffs' counsel concerning attorneys' fees and costs; and

3.      to decide all other matters pertaining to this lawsuit.

The decisions and agreements made and entered into by the representative plaintiff will be

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

binding on you if you join this lawsuit. However, the court has the authority to determine the reasonableness of any attorneys' fees and costs that are to be paid to the plaintiffs' counsel if the plaintiffs succeed in this action.

## LEGAL EFFECT OF NOT JOINING THIS LAWSUIT

You do not have to join this lawsuit. If you do not wish to participate in this lawsuit, then do nothing. If you do not join this lawsuit, you will not be affected by any judgment or settlement rendered in this lawsuit, whether favorable or unfavorable to the Class. If you do not wish to join in this lawsuit, your right to file your own lawsuit under the Fair Labor Standards Act will not be affected.

## STATUTE OF LIMITATIONS ON POTENTIAL CLAIMS

The maximum period of time that you may collect unpaid wages under the Fair Labor Standards Act is two (2) years from when you worked the time for which you were not paid either regular or overtime wages. If the Defendant's failure to pay regular or overtime wages was willful, then the maximum period of time that you may collect unpaid wages under the Fair Labor Standards Act is three (3) years from when you worked the time for which you were not paid regular or overtime wages. The statute of limitations continues to run until you file with the court a written consent to join this lawsuit or you file your own lawsuit to collect unpaid wages.

## NO RETALIATION PERMITTED

Federal law prohibits Defendant from discharging you or retaliating against you because you have exercised your rights under the Fair Labor Standards Act.

## YOUR IMMIGRATION STATUS DOES NOT MATTER IN THIS CASE

You are entitled to be paid minimum wages and where applicable, overtime wages under the Fair Labor Standards Act even if you are not otherwise legally entitled to work in the United States. Your immigration status does not affect your right to participate in this case if you choose to do so.

## YOUR LEGAL REPRESENTATIVE IF YOU JOIN

If you choose to join this lawsuit and agree to be represented by the named plaintiff through her attorney, your counsel in this action will be:

**[list names and addresses of Plaintiff's attorneys here]**

FURTHER INFORMATION

Further information about this Notice, the deadline for filing a "Consent to Join" form, and information about the lawsuit may be obtained by contacting:

**[list names and addresses of Plaintiff's attorneys here]**

**DO NOT CONTACT THE CLERK OF THE COURT OR THE JUDGES' CHAMBERS REGARDING THIS NOTICE.**

**THE DATE OF ISSUANCE OF THIS NOTICE IS:  _____.**

27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONSENT TO JOIN PURSUANT TO 29 U.S.C. §216(b)**

Darlene Lewis v. versus Nevada Property 1, LLC, d/b/a Cosmopolitan
of Las Vegas Nevada, Case No. 2:12-cv-01564-MMD-GWF

TO:   THE CLERK OF COURT AND TO EACH PARTY AND COUNSEL OF RECORD

1.   I reside at: _____
                   (Street and include any apartment number)

_____
(City)

_____           _____
(State)                              (Zip code)

2.   My home telephone number is _____ (leave blank if you do not have a telephone)

3.   My current email address (if any) is _____

4.   I understand that a lawsuit has been brought under the Federal Fair Labor Standards Act.  I have read and I understand the notice accompanying this consent.

5.   I understand and agree that I designate the named plaintiffs as my agent and understand that I will be bound by the decisions and agreements made by and entered into by said plaintiffs.

6.   I understand that I will be represented by  **[list names of attorneys here]**  and that this Court has retained jurisdiction to determine the reasonableness of any settlement with the defendants and any agreement concerning the reasonableness of any attorneys' fees and costs that are to be paid to the plaintiffs' counsel.

_____
(Signature)

_____
(Type or Print Name)

READ, FILL OUT, SIGN AND RETURN TO:        **[list names and addresses of attorneys here]**1

28

**EXHIBIT 2.**

NOTICE OF PENDENCY OF COLLECTIVE ACTION
LAWSUIT UNDER THE FAIR LABOR STANDARDS ACT

TO:     All current and former hourly paid, nonexempt employees Nevada Property 1, LLC, doing business as the Cosmopolitan of Las Vegas Nevada who work or worked in the Slot Operations Department or Pizzeria and who were, or are, required to obtain a cash bank/employer funds or other equipment to perform their duties prior to clocking in to the employee timekeeping system and who were, or are, required to return their cash bank/employer funds or other equipment after clocking out of the employee timekeeping system.

Re:     Lawsuit entitled: Darlene Lewis, individually, and on behalf of others similarly situated, Plaintiffs, versus Nevada Property 1, LLC, doing business as the Cosmopolitan of Las Vegas Nevada, Defendant, filed in the United States District Court for the District of Nevada, Case No. 2:12-cv-01564-MMD-GWF.

INTRODUCTION

The purpose of this notice is to:

1. inform you of the existence of a lawsuit in which you may be "similarly situated" to the named plaintiff;

2. advise you how your rights may be affected by this lawsuit; and

3. instruct you on the procedure for participating in this lawsuit, if you choose to do so.

**NOTE:  The Court has taken no position in this case regarding the merits of the plaintiff's claims or the defendant's defenses.  This Notice is <u>not</u> an expression of any opinion by the Court about the merits of any claims or defenses asserted by any party to this action as those issues have not been decided.**

DESCRIPTION OF THE LAWSUIT

Plaintiff Darlene Lewis alleges that Defendant Nevada Property 1, LLC, doing business as the Cosmopolitan of Las Vegas Nevada ("Cosmopolitan) violated the Fair Labor Standards Act. Specifically, Plaintiff claims that hourly paid, nonexempt employees in the Slot Operations Department or Pizzeria were required to obtain a cash bank/employer funds or other equipment to perform their duties from the employer prior to clocking in to the employee timekeeping system and were required to return their cash bank/employer funds or other equipment to the employer after clocking out of the employee timekeeping system.  Plaintiff alleges that the hourly paid, nonexempt employees are owed unpaid regular or overtime wages for time they spent obtaining and returning their cash bank/employer funds or other equipment prior to the beginning or after the end of their work shifts.  Plaintiff seeks the recovery of unpaid wages and liquidated damages (double damages) in an amount equal to the unpaid regular or overtime wages owed under the Fair Labor Standards Act.

Defendant Cosmopolitan disputes Plaintiff's claims and denies that it is liable to Plaintiff or other similarly situated employees for any unpaid wages.  Defendant Cosmopolitan therefore states that all of its non-salaried, non-exempt employees have been paid for all regular time and overtime worked during the course of their employment.

## DESCRIPTION OF A COLLECTIVE ACTION

A collective action is a lawsuit in which the claims of a group or class of people are decided in a single court proceeding.  In a collective action brought pursuant to the Fair Labor Standards Act, individuals who are within the class of persons on whose behalf the action is brought must consent to join in the action and have their individual claims decided in the action.

## COMPOSITION OF THE CLASS

The Class of persons eligible to respond to this Notice and participate in this case are all current and former hourly paid, nonexempt employees who worked for Nevada Property 1, LLC, doing business as the Cosmopolitan of Las Vegas Nevada in the Slot Operations Department or Pizzeria and who were, or are, required to obtain a cash bank/employer funds or other equipment to perform their work duties prior to clocking in to the employee timekeeping system and who were, or are, required to return their cash bank/employer funds or other equipment after clocking out of the employee timekeeping system.

## ELIGIBILITY TO PARTICIPATE IN THIS LAWSUIT

If you are an individual within the above described Class, then you are eligible to participate in this action.  If you wish to participate in this action, then  you may join this lawsuit by mailing the enclosed "Consent To Join" form to Plaintiff's counsel at the following address:

**[name and address of counsel here.   The Consent may be sent to the address of Plaintiff's counsel's claim administrator, however the name of the addressee should be Plaintiff's counsel and not the administrator.]**

If you wish to join this lawsuit, you must send the "Consent To Join" form to **[Plaintiff's attorney name here]** so that he/she has time to file it with the Federal Court on or before NINETY (90) DAYS FROM THE DATE OF THE ISSUANCE OF THIS NOTICE which is _____.

If you do not return the "Consent To Join" form to **[Plaintiff's attorney name here]** in time for it to be filed with the Federal Court, you will not be able to participate in the Fair Labor Standards Act portion of this lawsuit.

## LEGAL EFFECT OF JOINING THIS LAWSUIT

If you choose to join this case, you will become a plaintiff in this lawsuit and you will bound by the decision of the court, whether it is favorable or unfavorable.

The attorneys for the plaintiffs in this lawsuit are being paid on a contingency fee basis, which means that if there is no recovery, the plaintiffs will not have to pay attorneys' fee to plaintiffs' attorneys.  If the plaintiffs prevail in this litigation, the attorneys for the plaintiffs will request that the federal court determine or approve the amount of attorneys' fees and costs that they are entitled to receive for their services.

If you sign and return the "Consent to Join" form, you agree to designate the Plaintiff Darlene Lewis as your agent:

1.    to make decisions on your behalf concerning the method and manner of conducting this lawsuit;

2.    to enter into an agreement with plaintiffs' counsel concerning attorneys' fees and costs; and

3.    to decide all other matters pertaining to this lawsuit.

The decisions and agreements made and entered into by the representative plaintiff will be binding on you if you join this lawsuit. However, the court has the authority to determine the reasonableness of any attorneys' fees and costs that are to be paid to the plaintiffs' counsel if the plaintiffs succeed in this action.

## LEGAL EFFECT OF NOT JOINING THIS LAWSUIT

You do not have to join this lawsuit. If you do not wish to participate in this lawsuit, then do nothing. If you do not join this lawsuit, you will not be affected by any judgment or settlement rendered in this lawsuit, whether favorable or unfavorable to the Class. If you do not wish to join in this lawsuit, your right to file your own lawsuit under the Fair Labor Standards Act will not be affected.

## STATUTE OF LIMITATIONS ON POTENTIAL CLAIMS

The maximum period of time that you may collect unpaid wages under the Fair Labor Standards Act is two (2) years from when you worked the time for which you were not paid either regular or overtime wages. If the Defendant's failure to pay regular or overtime wages was willful, then the maximum period of time that you may collect unpaid wages under the Fair Labor Standards Act is three (3) years from when you worked the time for which you were not paid regular or overtime wages. The statute of limitations continues to run until you file with the court a written consent to join this lawsuit or you file your own lawsuit to collect unpaid wages.

## NO RETALIATION PERMITTED

Federal law prohibits Defendant from discharging you or retaliating against you because you have exercised your rights under the Fair Labor Standards Act.

## YOUR IMMIGRATION STATUS DOES NOT MATTER IN THIS CASE

You are entitled to be paid minimum wages and where applicable, overtime wages under the Fair Labor Standards Act even if you are not otherwise legally entitled to work in the United States. Your immigration status does not affect your right to participate in this case if you choose to do so.

## YOUR LEGAL REPRESENTATIVE IF YOU JOIN

If you choose to join this lawsuit and agree to be represented by the named plaintiff through her attorney, your counsel in this action will be:

**[list names and addresses of Plaintiff's attorneys here]**

FURTHER INFORMATION

Further information about this Notice, the deadline for filing a "Consent to Join" form, and information about the lawsuit may be obtained by contacting:

**[list names and addresses of Plaintiff's attorneys here]**

**DO NOT CONTACT THE CLERK OF THE COURT OR THE JUDGES' CHAMBERS REGARDING THIS NOTICE.**

**THE DATE OF ISSUANCE OF THIS NOTICE IS:   _____.**

31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONSENT TO JOIN PURSUANT TO 29 U.S.C. §216(b)**

Darlene Lewis v. versus Nevada Property 1, LLC, d/b/a Cosmopolitan
of Las Vegas Nevada, Case No. 2:12-cv-01564-MMD-GWF

TO:     THE CLERK OF COURT AND TO EACH PARTY AND COUNSEL OF RECORD

    1.     I reside at: _____
                  (Street and include any apartment number)

                 _____
                 (City)

                 _____   _____
                 (State)                  (Zip code)

    2.     My home telephone number is _____ (leave blank if you do not have a telephone)

    3.     My current email address (if any) is _____

    4.     I understand that a lawsuit has been brought under the Federal Fair Labor Standards Act.  I have read and I understand the notice accompanying this consent.

    5.     I understand and agree that I designate the named plaintiffs as my agent and understand that I will be bound by the decisions and agreements made by and entered into by said plaintiffs.

    6.     I understand that I will be represented by  **[list names of attorneys here]**  and that this Court has retained jurisdiction to determine the reasonableness of any settlement with the defendants and any agreement concerning the reasonableness of any attorneys' fees and costs that are to be paid to the plaintiffs' counsel.

                 _____
                 (Signature)

                 _____
                 (Type or Print Name)

READ, FILL OUT, SIGN AND RETURN TO:     **[list names and addresses of attorneys here]**