Elayna J. Youchah, Bar No. 5837
youchahe@jacksonlewis.com
Peter Navarro, Bar No. 10187
peter.navarro@jacksonlewis.com
JACKSON LEWIS P.C.
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 921-2460
Fax: (702) 921-2461

Paul DeCamp, Virginia Bar No. 76204
DeCampP@jacksonlewis.com
*Admitted Pro Hac Vice*
JACKSON LEWIS P.C.
10701 Parkridge Boulevard, Suite 300
Reston, Virginia 20191
Tel: (703) 483-8305
Fax: (703) 483-8301

*Attorneys for Defendant*
*Nevada Property 1, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

DARLENE LEWIS, on behalf of herself and
all others similarly situated,

   Plaintiff,

  vs.

NEVADA PROPERTY 1, LLC, d/b/a the
Cosmopolitan of Las Vegas; and DOES 1
through 50, inclusive,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:12-cv-01564-MMD-GWF

**DEFENDANT NEVADA PROPERTY 1, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
REGARDING PLAINTIFF'S FIFTH CAUSE OF ACTION**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant Nevada Property 1, LLC (the "Company" or "The Cosmopolitan") submits this Motion for Summary Judgment ("Motion") regarding Plaintiff's Fifth Cause of Action for Failure to Pay the Correct Overtime in Violation of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207(e).  This Motion is based upon the attached Memorandum of Points and Authorities, the attached exhibits, all pleadings and documents on file with the Court, and any argument that the Court deems proper.

Respectfully submitted this 13th day of January 2014,

JACKSON LEWIS P.C.


/s/ Elayna J. Youchah
Elayna J. Youchah

Elayna J. Youchah, Bar No. 5837
youchahe@jacksonlewis.com
Peter Navarro, Bar No. 10187
peter.navarro@jacksonlewis.com
JACKSON LEWIS P.C.
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 921-2460
Fax: (702) 921-2461

Paul DeCamp, Virginia Bar No. 76204
DeCampP@jacksonlewis.com
*Admitted Pro Hac Vice*
JACKSON LEWIS P.C.
10701 Parkridge Boulevard, Suite 300
Reston, Virginia  20191
Tel: (703) 483-8305
Fax: (703) 483-8301


*Attorneys for Defendant Nevada Property 1, LLC*

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

DEFENDANT NEVADA PROPERTY 1, LLC'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FIFTH CAUSE OF ACTION ...................................................................... 1

STATEMENT OF UNDISPUTED FACTS .................................................................... 2

I.   THE COSMOPOLITAN AND PLAINTIFF'S EMPLOYMENT ............................... 2

II.  THE COSMOPOLITAN REQUIRES EMPLOYEES TO REMAIN ON PREMISES DURING THEIR SHIFTS BECAUSE OF BUSINESS NEEDS ................................... 2

III. THE ONLY VIABLE DINING OPTION FOR EMPLOYEES IS TO PURCHASE FOOD IN THE EMPLOYEE DINING ROOM ........................................................... 4

IV. THE $8-PER-SHIFT CREDIT IN THE EMPLOYEE DINING ROOM REASONABLY APPROXIMATES THE MEAL COST INCURRED BY EMPLOYEES AS A RESULT OF THE COSMOPOLITAN'S POLICIES ......................................................................... 4

THE COSMOPOLITAN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FIFTH CAUSE OF ACTION ......................................................................................... 5

I.   THE SUMMARY JUDGMENT STANDARD ......................................................... 5

II.  BECAUSE THE MEAL CREDIT EMPLOYEES RECEIVE IS PREIMARILY FOR THE CONVENIENCE OF THE COSMOPOLITAN, PLAINTIFF'S FIFTH CAUSE OF ACTION FAILS AS A MATTER OF LAW ................................................................. 6

   A. STATUTORY AND REGULATORY FRAMEWORK .......................................... 7

   B. WHEN AN EMPLOYER REQUIRES EMPLOYEES TO REMAIN AT THE WORKSITE, MEALS THE EMPLOYER PROVIDES ARE FOR THE EMPLOYER'S CONVENIENCE AND ARE NOT WAGES ............................................................. 8

   C. THE COSMOPOLITAN PROPERLY EXCLUDES THE MEAL CREDIT FROM EMPLOYEES' REGULAR RATE ......................................................................... 11

      1. THE MEAL CREDIT IS FOR THE COSMOPOLITAN'S BENEFIT ............................. 11

      2. THE MEAL CREDIT REASONABLY APPROXIMATES THE COST OF AN EMPLOYEE'S MEAL AT THE EDR .......................................................................... 12

III. CONCLUSION ..................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acton v. City of Columbia*, No 03-4159-CV-NKL, 2004 U.S. Dist. LEXIS 19004
 (W.D. Mo. Sep. 10, 2004), *aff'd*, 436 F.3d 969 (8th Cir. 2006)..................................................8

*Acton*, at *19-20 ............................................................................................................................12

*Acton*, at *21-22 ............................................................................................................................11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).........................................................5

*Anderson*, 477 U.S. at 249 .............................................................................................................6

*Anderson*, 477 U.S. at 256 .............................................................................................................6

*Boyd Gaming Corp. v. Commissioner*, 177 F.3d 1096 (9th Cir. 1999) .........................................9

*Boyd Gaming Corp. v. Commissioner*, at 1097-1101 ..................................................................11

*Celotex Corp. v. Catrett*, 477 U.S. 317, 303 (1986) .....................................................................5

*Celotex*, 477 U.S. at 323 ................................................................................................................6

*Commissioner v. Kowalski*, 434 U.S. 77 (1977)............................................................................9

*Gold Coast Hotel & Casino v. United States*, 1996 U.S. Dist. LEXIS 22645, 17-18 (D. Nev.
 Sept. 19, 1996).............................................................................................................................10

*Gold Coast Hotel & Casino v. United States*, at *17-18 .............................................................11

*Wirtz v. Nurserymen's Supply Co.*, 1968 U.S. Dist. LEXIS 10129, *14
 (S.D. Fla. July 30, 1968)...............................................................................................................8

**Statutes**

Nev. Rev. Stat. §608.019(1) ..........................................................................................................10

**Other Authorities**

26 U.S.C. § 1.119............................................................................................................................9

29 U.S.C. § 207(a)(1).......................................................................................................................7

29 U.S.C. § 207(e) .................................................................................................................. i, 2, 7

29 U.S.C. § 207(e)(2).....................................................................................................................10

Dept. of Labor Advisory Opinion FLSA2004-3 (May 13, 2004)
 (discussing 29 C.F.R. § 778.217 ..................................................................................................7

**Rules**

29 C.F.R. § 778.217(a).............................................................................................................7, 10

29 C.F.R. § 778.217(a)(5)................................................................................................................8

29 C.F.R. § 778.217(b)(4)................................................................................................................7

29 C.F.R. § 778.217(c)...................................................................................................................12

29 C.F.R. § 778.217(d)....................................................................................................................7

Fed. R. Civ. P. 56.............................................................................................................................i

Fed. R. Civ. P. 56(c) ........................................................................................................................5

Fed. R. Civ. P. 56(e) ........................................................................................................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Courts, including the Ninth Circuit, uniformly hold that meals an employer provides to employees restricted from leaving the work site during their shifts are for the convenience of the employer rather than the convenience of the employee. As a result, under the FLSA, these meals do not constitute wages and therefore do not factor into an employee's overtime compensation. Here, the record demonstrates beyond dispute that Nevada Property 1, LLC dba The Cosmopolitan of Las Vegas ("The Cosmopolitan") requires employees to remain on site during their shift and leaves them with no viable dining option other than purchasing and eating their food in an on-site employee dining room (the "EDR"). For this reason, employees receive an $8-per-shift credit to spend in the employee dining room, an amount that reasonably approximates the cost of obtaining a meal at this location. Under well-settled law, this credit is not a wage and does not become part of the employees' regular rate of pay for purposes of calculating the overtime rate. As a result, Plaintiff's fifth cause of action fails as a matter of law, and The Cosmopolitan respectfully submits that the Court should enter partial summary judgment in its favor and against Plaintiff (and her alleged similarly situated class) on this claim.

### PROCEDURAL HISTORY

Plaintiff initiated this action on August 31, 2012 (Dkt. # 1), and filed an Amended Complaint on September 24, 2012 (Dkt. # 6).[1] On October 17, 2012, Plaintiff filed a Motion for Circulation of Notice Pursuant to 29 U.S.C. § 216(b) ("Motion for Circulation") seeking to conditionally certify three of the four subclasses set forth in the Complaint. Dkt. # 11. On January 22, 2013, the Court issued an order granting in part, and denying in part, the Motion for Circulation. Dkt. # 30. With respect to the "Overtime Class" as defined in the Amended Complaint, the Court deferred ruling on conditional certification to provide the parties an opportunity to conduct discovery regarding whether the meal credit belongs in the employees' regular rate of pay. *Id.* at 22-23. Specifically, the order on the Motion for Circulation provided that the parties would complete discovery related to the meal credit "within sixty (60) days of [that] order," after which The Cosmopolitan had 30 days to file a motion for partial

---

[1]   Plaintiff's First Amended Collective and Class Action Complaint (Dkt. # 6, the "Amended Complaint") is the operative complaint in this matter.

summary judgment concerning this issue.[2]  *Id.*   Subsequent stipulations and orders (Dkts. # 32, 35) extended discovery on the meal credit issue.  The Court ultimately set the close of discovery on that issue for December 12, 2013, and set a deadline of January 13, 2014 for the parties to move for summary judgment regarding this claim. Dkt. # 64.

## STATEMENT OF UNDISPUTED FACTS

### I.     THE COSMOPOLITAN AND PLAINTIFF'S EMPLOYMENT

The Cosmopolitan is a luxury resort hotel and casino on the Las Vegas Strip that opened for business on December 15, 2010.  **Exhibit 1, Declaration of Daniel Espino (hereinafter "Espino Decl.") ¶ 1.** The Cosmopolitan is open to the public 24 hours a day, seven days a week, 365 days a year, and on each and every one of those days strives to provide its guests with the highest level of service and professionalism in an environment that is both safe and secure.  **Espino Decl. ¶ 1.**

Plaintiff worked for The Cosmopolitan as a non-exempt hourly employee in the position of Slot Guest Service Representative until her termination on May 7, 2012. Am. Compl. ¶ 5.  Thereafter, Lewis filed a Complaint on behalf of herself and all others alleged to be similarly situated, asserting wage and hour violations under both the FLSA and Nevada law.  *Id.*  Among other allegations, Lewis claims that The Cosmopolitan:

> paid Plaintiff and Overtime Rate Subclass Members an eight dollar ($8.00) lunch stipend each and every day Plaintiff and all class members worked for Defendant. Defendants did not include the value of this stipend in the calculation of its regular rate of pay, nor did it include the value of the stipend in the regular rate of pay for purposes of calculating overtime compensation due.

Am. Compl. ¶ 57.  Lewis contends in her fifth cause of action that this policy results in the Company violating section 7(e) of the FLSA, 29 U.S.C. § 207(e), by failing to pay the correct overtime rate.  *See id.* ¶¶ 56-61.

### II.    THE COSMOPOLITAN REQUIRES EMPLOYEES TO REMAIN ON PREMISES DURING THEIR SHIFTS BECAUSE OF BUSINESS NEEDS

The Company requires employees to remain on the premises during their assigned shift, including breaks.  Leaving the premises during such times without authorization may result in discipline, up to and including immediate termination.  **Exhibit 2, October 30, 2013 Deposition of the Person**

---

[2]   The Order also allows Plaintiff to cross-move for summary judgment.

**Most Knowledgeable for The Cosmopolitan (hereinafter "PMK Dep.") at 119:6-20**.  Authorization to leave the premises during an employee's shift is granted at the discretion of the employee's supervisor and subject to the business needs of that employee's department.  **Espino Decl. ¶ 6.**

The Cosmopolitan currently employs an average of 3,700 non-exempt hourly employees and estimates that during a 24 hour period, between 1,930 and 2,200 employees work on property.  *Id.* ¶ 2. All employees must enter and leave the building through a single employee entrance, and the Company requires that they have their employee identification badges with them to verify their identity to security officers assigned to the employee entrance.  *Id.*  The Cosmopolitan assigns employees to several different shifts throughout each 24 hour period to ensure that proper staffing levels meet customer demand at all times.  *Id.* ¶ 3.  The Company posts security at the employee entrance 24 hours a day to help ensure the safety of everyone—customers, guests, employees, and vendors—on property.  *Id.* ¶ 2.

Given the size of its work force, the size of the property, and The Cosmopolitan's goal of providing the highest level of guest service, The Cosmopolitan requires all non-exempt employees working at the property to take breaks, including meal breaks, on site, unless prior authorization is given.[3]  **Espino Decl. ¶ 6.**  Requiring all meal breaks to be taken on property eliminates thousands of employees from leaving and returning from meal breaks throughout each 24 hour day, which allows the Company to avoid the significant logistical and attendance problems created when large numbers of employees come and go during meal times.  Requiring all non-exempt employees to remain on property during meal breaks also reduces security risks, the costs of increased security measures, and curtails any disruptions to guest services resulting from an employee returning late from a meal break.  *Id.* ¶ 7.

The Cosmopolitan allocates breaks (including meal breaks) to its employees at different times and for varying amounts of time depending on, among other things, the employee's position and the duration of the shift that the employee works.  *Id.* ¶ 4.  The Company compensates employees for all break time and does not require employees to clock out for any breaks unless they leave the property to tend to personal matters.  *Id.* ¶ 5.  Any employee seeking to leave the property for a meal break must first obtain permission, which is subject to the discretion of the employee's supervisor.  *Id.* ¶ 6.  If an employee leaves the property for a meal break, the employee must clock out and receives no pay for

---

[3]   Non-exempt employees are those employees subject to the FLSA's overtime pay requirements.

1 his/her meal break. *Id.* Employees must remain on site to receive compensation for a meal break. *Id.*

2 ¶ 5-6.

3

4 **III.** **THE ONLY VIABLE DINING OPTION FOR EMPLOYEES IS TO PURCHASE FOOD IN THE EMPLOYEE DINING ROOM**

5 While The Cosmopolitan does not prohibit employees from bringing their own food to work, it

6 provides no means for employees to store, refrigerate, or warm their food. **PMK Dep. 120:3-9.** In fact,

7 there are no refrigerators or microwaves provided by the Company for employees' personal use. **PMK**

8 **Dep. 140:23-141:7.** Company policy prohibits employees from carrying bags or items with them while

9 working, whether on the casino floor, in the hotel, or at the front desk. **PMK Dep. 141:8-11.**

10 Employees may not bring their own food into the EDR, as doing so is a violation of Company policy

11 and the health code. **PMK Dep. 141:12-14.** Furthermore, while The Cosmopolitan has numerous

12 dining venues available for its guests, employees may not patronize these establishments during their

13 shifts. **PMK Dep. 142:13-16.** The Cosmopolitan has no food court or fast-food establishment on

14 property. **Espino Decl. ¶ 9.**

15 These limitations, in place since opening, effectively require all non-exempt employees working

16 at The Cosmopolitan to purchase and eat meals during their meal breaks in the EDR. **Espino Decl.**

17 **¶ 10; PMK Dep. 119:3-5.** This is to the benefit of The Cosmopolitan because the Company is able to

18 reserve the use of its on-site eating establishments solely for its guests, adding to the polished

19 atmosphere that it strives to portray, while simultaneously helping to ensure that employees are able to

20 return to their work stations on time at the conclusion of their meal breaks. **Espino Decl. ¶ 10.**

21 Restricting employee meal breaks to the EDR also allows The Cosmopolitan to save on the expense and

22 administrative burden of providing additional meal break rooms (with various refrigeration and/or re-

23 heating appliances) to the 3,700 non-exempt employees, 1,930 to 2,200 of whom work on site within a

24 24-hour period. *Id.* ¶¶ 2, 10.

25 **IV.** **THE $8-PER-SHIFT CREDIT IN THE EMPLOYEE DINING ROOM REASONABLY APPROXIMATES THE MEAL COST INCURRED BY EMPLOYEES AS A RESULT OF THE COSMOPOLITAN'S POLICIES**

26

27 Because non-exempt employees working at The Cosmopolitan are effectively unable to leave the

28 property during their paid meal breaks and cannot otherwise eat on the property, they obtain meals in the

EDR and are provided a meal allowance in the form of an $8.00 credit that is loaded daily onto each employee's identification card. **Espino Decl. ¶ 11.** The EDR is open 24 hours a day and available to employees regardless of their assigned shift. **Employee Handbook at 7.**[4] The Cosmopolitan arrived at the $8.00 meal credit for use in the EDR based on an analysis of the cost of a variety of meals available at the EDR, and the determination that $8.00 reasonably approximates the cost of a healthy meal at a reasonable portion size in the EDR. **Espino Decl. ¶ 11.**[5]

The $8.00 credit can be used only for "purchases" in the EDR. *Id.* The credit has no value except in the EDR. The credit cannot be converted to cash or any other benefit. Any balance remaining at the end of the day is voided and does not carry forward to the next day. *Id.* Employees use their own money to purchase any additional food items from the EDR if they deplete their $8.00 daily meal allowance. **PMK Dep. 121:25-122:7.** The Cosmopolitan prohibits employees from using the meal credit and the EDR on days they are not working. *Id.* at **118:18-23;** *see also* **Employee Handbook at 7.** Company policy precludes employees' friends and family members from using the EDR. *Id.* Employees also must not take food, including condiments, out of the EDR. *Id.* *See also* **Employee Handbook at 7.** Covered beverages are the only items that employees may remove from the EDR. **Employee Handbook at 7.**

## THE COSMOPOLITAN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FIFTH CAUSE OF ACTION

### I. THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, discovery, and exhibits show there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 303 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty*

---

[4]   The Employee Handbook is authenticated as Exhibit 4 to the PMK Dep. and is included with the relevant excerpts attached hereto as **Exhibit 2.**

[5]   As Daniel Espino explained, "you can eat a really healthy meal with your $8." **PMK Dep. 120:18.** As an example, two chicken breasts and a container of brown rice costs exactly $8.00. *Id.* at **121:13-19.**

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In support of its motion for summary judgment, the moving party need not negate the opponent's claim.  *See Celotex*, 477 U.S. at 323.  The moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent.  *See Anderson*, 477 U.S. at 249.

A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims.  *Celotex Corp.*, 477 U.S. at 323-24.  Stressing that summary judgment is "an integral part of the Federal Rules as a whole," and not a "disfavored procedural shortcut," the Supreme Court has stated:

> Rule 56 must be construed with due regard not only to the rights of persons asserting claims and defenses that are adequately based in fact to have those claims tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses had no factual basis.

*Id.* at 327.  Once the moving party has shown that no genuine issue of material fact exists, the non-moving party must go beyond the pleadings and come forth with sufficient proof to establish the elements of the party's case upon which that party bears the burden of proof.  *Id.* at 323-24.  The adverse party "may not rely merely on allegations or denials in its own pleading."  Fed. R. Civ. P. 56(e).  Rather, the non-moving party must set forth "specific facts" demonstrating the existence of a genuine issue for trial.  *Anderson*, 477 U.S. at 256.

As discussed below, there is no genuine issue of material fact as to Plaintiff's fifth cause of action, and The Cosmopolitan is entitled to judgment as a matter of law on that claim.

## II.   BECAUSE THE MEAL CREDIT EMPLOYEES RECEIVE IS PRIMARILY FOR THE CONVENIENCE OF THE COSMOPOLITAN, PLAINTIFF'S FIFTH CAUSE OF ACTION FAILS AS A MATTER OF LAW

As this Court observed in its January 22, 2013 Order, the issue presented in this motion "is primarily a legal one." (Dkt. #30 p. 15.)  And, as conceded in Plaintiff's Reply in support of the Motion for Circulation (Dkt. #21) ("Reply"), the only issue in dispute regarding the fifth cause of action is whether the lunch credit provided to employees "was for the employees' benefit or for Cosmopolitan's benefit."  Reply at 12:19-22.  To that end, Plaintiff's Reply asserted that "the parties must first engage in the discovery process to determine the relevant facts at issue."  *Id.* at 13:6-7.

Discovery has closed with respect to the meal credit, and the record demonstrates beyond dispute that The Cosmopolitan provides a meal credit as a result of its business needs, which essentially render

on-duty employees as "captives" of the Company.   As set forth herein, because the Company provides the meal credit to captive employees, the credit is for the benefit of the employer and therefore properly excluded from the regular rate of pay.

### A.    The Statutory And Regulatory Framework

The FLSA requires employers to pay covered employees one and one half times their regular hourly rate for each hour the employees work in excess of forty hours per workweek.   29 U.S.C. § 207(a)(1).   However, the FLSA expressly <u>excludes</u> from the regular rate "reasonable payments for traveling expenses, or **other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment**."   29 U.S.C. § 207(e)(2) (emphasis added).   Additionally, the Department of Labor ("DOL") implementing regulations that govern 29 U.S.C. § 207(e) state that as a general rule:

> <u>Where an employee</u> incurs expenses on his employer's behalf or where he <u>is required to expend sums solely by reason of action taken for the convenience of his employer</u>, section 7(e)(2) is applicable to reimbursement for such expenses. <u>Payments made by the employer to cover such expenses are not included in the employee's regular rate</u> (if the amount of the reimbursement reasonably approximates the expenses incurred).   <u>Such payment is not compensation for services rendered</u> by the employees during any hours worked in the workweek.

29 C.F.R. § 778.217(a) (emphasis added).   These regulations distinguish payments for expenses that are for the convenience of the employer from payments for expenses that are strictly personal to the employee.   Indeed, the regulations expressly recognize that in some circumstances meals can be primarily for the employer's benefit and, therefore, excludable from the regular rate.   *See* 29 C.F.R. § 778.217(b)(4) (providing "supper money" as an example and further stating that the list is "intended to be illustrative rather than exhaustive").[6]   Moreover, the distinctions drawn in the regulations (as well as case law interpreting those provisions) make clear that where an employer furnishes a meal credit in

---

[6]   The regulations also state: "If the employer reimburses the employee for expenses **normally incurred by the employee for his own benefit**, he is, of course, increasing the employee's regular rate thereby.   An employee **normally incurs** expenses in traveling to and from work, buying lunch, paying rent, and the like.   If the employer reimburses him for these **normal everyday expenses**, the payment is not excluded from the regular rate as "reimbursement for expenses."   29 C.F.R. § 778.217(d) (emphasis added).   However, this provision only speaks to such meals that are incurred in the "normal everyday" course of employment.   *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2004-3 (May 13, 2004) (discussing 29 C.F.R. § 778.217 and stating that "focusing on the context in which the meal occurs should clarify the regulatory guidance").

order to keep an employee on premises for a company's business needs, it follows that credit is primarily for the employer's benefit.

### B.   When An Employer Requires Employees To Remain At The Worksite, Meals The Employer Provides Are For The Employer's Convenience And Are Not Wages

Where the business needs of an employer result in its employees remaining on-site "captives" throughout their work day, courts have uniformly held that the meals an employer provides are for the convenience of the employer rather than the employees.  For example, in *Acton v. City of Columbia,* No 03-4159-CV-NKL, 2004 U.S. Dist. LEXIS 19004 (W.D. Mo. Sep. 10, 2004), *aff'd on other grounds*, 436 F.3d 969 (8th Cir. 2006), a federal district court held that a $12.00-per-day meal allowance paid to employees who remained on the employer's premises while working their shifts was for the convenience of the employer and not a personal expense.  *Id.* at *20.  The plaintiffs in *Acton* consisted of ninety-three firefighters alleging that their overtime rate should include the meal allowance.

Rather than providing its employees with a non-transferrable meal credit or access to an employee cafeteria, the employer provided employees with money in advance of their shifts to purchase food to be eaten while on shift.  Even in that scenario, where plaintiffs were arguably able to "pocket" their meal allowance instead of expending it on food, the court held that the captive nature of the employees' work rendered the meal allowance furnished for the benefit of the employer.  While noting that the plaintiffs in *Acton* could leave their employer's premises in case of an emergency, or with proper authorization, the Court did not view those exceptions as negating the practical effect of the employer's policy: to place the employees in a position where it was unrealistic and impractical to take a meal break off-site.

The court held that because the employer prohibited the firefighters from returning home to eat during their shifts, "the expenses they incur as part of this unusual work schedule are inherently for the convenience of [their employer]."  *Id.* at *19.  In reaching its decision, the Court determined that the firefighters' meal allowance program "does not fit neatly within any of the examples in the regulation,

but that the regulation specifically states its list of illustrations is not exhaustive." *Id.* (citing 29 C.F.R. § 778.217(a)(5)).[7]

The Ninth Circuit has reached the same conclusion in the closely analogous context of evaluating whether meals provided to captive employees are deductible expenses under the tax code.  In *Boyd Gaming Corp. v. Commissioner*, 177 F.3d 1096 (9th Cir. 1999), the Ninth Circuit examined the circumstances under which employer-provided meals are for the "convenience of the employer" as required to be deductible under 26 U.S.C. § 1.119.  *Boyd* involved hotel and casino properties that provided free on-site meals to employees during their work shifts as a consequence of requiring those employees to remain on business premises throughout their shifts.  The properties prohibited the employees from leaving the premises during their shifts unless they obtained prior authorization from a supervisor.  177 F.3d at 1097.  When the employers attempted to deduct the expenses associated with their employee cafeterias, the Internal Revenue Service ("IRS") denied the deductions, arguing that costs associated with the cafeterias were not deductible because the employers did not furnish the cafeterias for "the convenience of the employer".  *Id.*  The Tax Court agreed with the IRS and rejected the employers' assertion that the meals they provided to employees were for a substantial non-compensatory business reason.  *Id.* at 1100.

The Ninth Circuit rejected the IRS's position and reversed the Tax Court.  The court noted that the tax code does not define the phrase "convenience of the employer".  The court looked to *Commissioner v. Kowalski*, 434 U.S. 77 (1977), where the Supreme Court concluded that determining whether a company provides meals for the "convenience of the employer" requires an analysis under a "business necessity" theory.  *Id.* at 1101.  Applying this rationale, the Ninth Circuit held that the employers in that matter furnished meals to their employees as a consequence of the companies' "stay-on-premises" policies.  *Id.* at 1097.  "Common sense dictated that once the policy was embraced, the 'captive' employees had no choice but to eat on the premises." *Id.* at 1101.  Accordingly, the "furnished meals [] were, in effect, indispensable to the proper discharge of the employee's duties." *Id.* (internal

---

[7]   *See also Wirtz v. Nurserymen's Supply Co.*, 1968 U.S. Dist. LEXIS 10129, *14 (S.D. Fla. July 30, 1968) ("meal expenses of long-haul truck drivers on the road are business related expenses incurred primarily for the benefit or convenience of the employer" and "such expenses are incidental to the job performed," as it "is undoubtedly to the employer's benefit for drivers to eat on the road and along the appointed route").

citations omitted). The court further held that its decision was consistent with IRS regulations that "envisioned that meals furnished to employees who are similarly confined to the business premises during meal times, but for different reasons (*i.e.*, remote location, insufficient eating facilities in the vicinity), are provided for the "convenience of the employer"). *Id.*[8]

These cases reflect principles of basic fairness. During shifts of more than a certain duration, employees need to eat.[9] An employee will typically eat a meal whether or not he or she is at work on a given day. When the employee is away from the workplace, he or she has the option of preparing an inexpensive meal at home or obtaining a comparably-priced fast food option. In many workplaces, employees are able to bring that same type of meal from home and to consume it during a meal break, or they have the option to purchase an inexpensive fast food meal either on site or nearby. In those circumstances, the employer's policies impose no cost on the employees relating to their meals.

When, however, an employer's policies make it difficult or impossible for employees to bring their own food to work or to purchase a meal at a cost comparable to what they would incur in bringing their own food, the employer's policies have imposed a business expense on the employees. This type of expense is no different from a situation where an employer directs an employee to incur other business-related expenses, such as travel or purchasing materials to be used on the job. When an employer's policies cause employees to incur an expense for the employer's convenience, the employer may reimburse that cost or offset it by providing the item the employee would otherwise need to purchase. Such reimbursement or providing the item is in no sense wages to the employee or remuneration or compensation for employment in the language of FLSA section 7(e), including 7(e)(2), and 29 C.F.R. § 778.217(a). Thus, when an employer's policies deny an employee the option of bringing a meal from home or purchasing a comparably inexpensive meal during the shift, the cost of a

---

[8] *See also Gold Coast Hotel & Casino v. United States*, 1996 U.S. Dist. LEXIS 22645, *17-18 (D. Nev. Sept. 19, 1996) (holding "convenience of employer" standard is met where casino provided free meals to employees: (1) to allow employees to be available if an emergency situation occurs; (2) to enable employees to return to their workstations on time; (3) where few alternatives existed for employees to obtain meals; and (4) to keep employees on site for meals to help in preparing schedules that will insure the presence of employees at the time their work is scheduled).

[9] Indeed, Nevada law requires that employers allow employees to take an un-paid meal period of at least 30 minutes for each continuous eight-hour work period. Nev. Rev. Stat. § 608.019(1).

1  meal the employer provides the employee for consumption during the shift is not wages and does not
2  become part of the employee's regular rate.

3
4  **C.     The Cosmopolitan Properly Excludes The Meal Credit From Employees' Regular Rate**

5  **1.     The Meal Credit Is For The Cosmopolitan's Benefit**

6          The Cosmopolitan clearly provides employees the meal credit for its own convenience and as a
7  necessary consequence of the Company's "stay-on-premises" policy. Off-site meal breaks are not
8  feasible for non-exempt employees of The Cosmopolitan given the size of the property and policies that
9  prohibit employees from leaving the premises without prior authorization. **PMK Dep. 119:6-20.**
10 Moreover, the Cosmopolitan has a significant business interest in reducing its security risks as well as
11 costs associated with any increase in security measures, and reducing the number of employees
12 entering/departing the property for meal breaks furthers that interest. **Espino Dec. ¶7.**

13         The Cosmopolitan further benefits from limiting employees to use of the EDR for their on-
14 premises meal breaks by reducing expenses and the administrative burden of providing meal break
15 rooms and employee access to equipment such as refrigerators and microwaves. *Id.* ¶ **10**  And, by
16 ensuring only its guests are using the public eating venues, The Cosmopolitan maintains the polished,
17 high-end atmosphere it seeks to achieve for its guests. *Id.* This is particularly true given that the
18 Cosmopolitan does not have a food court or any fast-food outlets on property. *Id.* ¶**9.**

19         Thus, The Cosmopolitan provides the meal credit for its own benefit. Therefore, the meal credit
20 is not compensation for employment and does not factor into the employees' regular rate of pay. *See,*
21 *e.g.*, *Acton*, 2004 U.S. Dist. LEXIS 19004 at *21-22 (where an employee is provided with a meal
22 allowance as a result of the "restrictive environment" of his/her employment, that "meal allowance
23 compensation should not be included in their regular rate"); *Boyd*, 177 F.3d at 1097-1101 (cost of
24 employee cafeterias is "for the convenience of the employer" where "employees had no choice but to eat
25 on the premises"); *Gold Coast*, 1996 U.S. Dist. LEXIS 22645 at *17-18 (free meals to casino employees
26 for the "convenience of the employer" where few alternative dining options were available);
27 *Nurserymen's Supply*, 1968 U.S. Dist. LEXIS 10129, at *14 (recognizing meal expenses of long-haul
28 truckers as "business related" and "incurred primarily for the benefit or convenience of the employer").

**2.    The Meal Credit Reasonably Approximates The Cost Of An Employee's Meal At The EDR**

As set forth in the applicable regulation, only the actual or reasonably approximate amount of the expense is excludable from the regular rate.   29 C.F.R. § 778.217(c).   "If the amount paid as 'reimbursement' is disproportionately large, the excess amount will be included in the regular rate." *Id.* Here, The Cosmopolitan arrived at the $8.00 limit after analyzing the cost of meals available in the EDR and determining that this amount allows an employee to obtain a quality meal in reasonable portion sizes. **PMK Dep. 120:18, 121:13-19; Espino Decl. ¶ 11.** The quantity of food an employee can obtain with this credit—e.g., two chicken breasts and some brown rice **(PMK Dep. 121:13-19)**—is not meaningfully different from what an employee would typically consume in the absence of the meal credit.

Moreover, the very nature of The Cosmopolitan's meal credit program eliminates the risk of inadvertently reimbursing an employee for more than the actual or approximate cost of the meal provided to the employee.   Specifically, employees receive only the benefit of the amount of the credit that they use up to the $8.00 maximum.   Because the meal credit has no cash value or benefit except in the EDR and there is no carryover from day to day of amounts not used, if an employee uses less than the daily credit on any given day, there is no residual benefit to the employee.   Thus, by virtue of the restrictions placed on the use of the daily meal credit, it always reasonably approximates the expenses incurred by employees in purchasing food and beverages from the EDR on days they work. *See, e.g.,* *Acton*, 2004 U.S. Dist. LEXIS 19004 at *19-20 (holding a $12.00 meal allowance was a reasonable approximation of the expenses the plaintiffs incurred to supplement their meals given that they were unable to prepare meals at home while on duty).

In sum, the daily meal credit operates for the convenience and benefit of The Cosmopolitan, and reasonably approximating the expense incurred by employees.   Therefore, under section 7(e) of the FLSA, the meal credit is not part of the employees' regular rate.

## CONCLUSION

For these reasons, The Cosmopolitan is entitled to judgment as a matter of law on Plaintiff's fifth cause of action, and it requests that the Court enter partial summary judgment accordingly.

Respectfully submitted the 13th of January, 2014

JACKSON LEWIS P.C.

/s/ Elayna J. Youchah
Elayna J. Youchah

Elayna J. Youchah, Bar No. 5837
youchahe@jacksonlewis.com
Peter Navarro, Bar No. 10187
peter.navarro@jacksonlewis.com
JACKSON LEWIS P.C.
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 921-2460
Fax: (702) 921-2461

Paul DeCamp, Virginia Bar No. 76204
DeCampP@jacksonlewis.com
*Admitted Pro Hac Vice*
JACKSON LEWIS P.C.
10701 Parkridge Boulevard, Suite 300
Reston, Virginia 20191
Tel: (703) 483-8305
Fax: (703) 483-8301

*Attorneys for Defendant Nevada Property 1, LLC*

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that I am an employee Jackson Lewis LLP and that on this 13th day of January,

3   2014, I caused to be sent via U.S. Mail, postage prepaid, a true and correct copy of the above and

4   foregoing **DEFENDANT NEVADA PROPERTY 1, LLC'S MOTION FOR PARTIAL**

5   **SUMMARY JUDGMENT REGARDING PLAINTIFF'S FIFTH CAUSE OF ACTION,** properly

6   addressed to the following:

7

8          Mark R. Thierman
          Josh Buck

9          Thierman Law Firm, P.C.
          7287 Lakeside Drive

10         Reno, Nevada 89511

11         *Attorneys for Plaintiff*

12

13                                          /s/ Emily Santiago
                                           Employee of Jackson Lewis P.C.

14

15

16                                 4831-3865-7303, v. 3

17

18

19

20

21

22

23

24

25

26

27

28