1

2

3

4

**UNITED STATES DISTRICT COURT**

5

**DISTRICT OF NEVADA**

6

7

DARLENE LEWIS, on behalf of herself and
all others similarly situated,

8                                                    Plaintiff,

Case No.: 2:12-cv-01564-MMD-GWF

9        vs.

**ORDER**

10       NEVADA PROPERTY 1, LLC, d/b/a the
Cosmopolitan of Las Vegas; and DOES 1

**Renewed Motion for Circulation of
Notice Pursuant to 29 U.S.C.**

11       through 50, inclusive,

**§ 216(b) Re: Bank Class - #76**

12                                                   Defendant.

13

14            This matter is before the Court on Plaintiff's Renewed Motion for Circulation of Notice

15       Pursuant to 29 U.S.C. § 216(b) Re: Bank Class (#76), filed on January 24, 2014.  Defendant filed

16       its Opposition to Plaintiff's Renewed Motion (#91) on February 24, 2014.  Plaintiff filed her Reply

17       (#94) on February 27, 2014.  The Court conducted a hearing in this matter on March 3, 2014.

18                                              **BACKGROUND**

19            Plaintiff Darlene Lewis's First Amended Collective and Class Action Complaint (#6)

20       ("Complaint"), filed on September 24, 2012, alleges that Defendant failed to pay wages to Plaintiff

21       and other similarly situated hourly paid, nonexempt employees for certain employer mandated "off-

22       the-clock" activities.  The Complaint alleges that three classes of Defendant's employees should be

23       certified for purposes of the FLSA collective action and the Rule 23 class action.  The first class,

24       identified as the "Uniform Class," consists of employees who were allegedly required to change

25       into their work uniforms on Defendant's premises before clocking-in and to change out of their

26       uniforms and turn them in to the employer after clocking-out of the employee timekeeping system.

27       The second class, identified as the "Satellite Bank Class," consists of employees who use company

28       money in the performance of their job duties and who were or are required to obtain the money

from the Cosmopolitan's cashier or from an electronic banking system before clocking-in and to account for and return the funds after clocking-out. The third class, identified as the "Overtime Rate Calculation Class," consists of Defendant's hourly wage employees who were paid a lunch stipend which was not included in their regular rate of pay and therefore was not included in the calculation of overtime pay.

Plaintiff filed a motion for circulation of notice on October 17, 2012 requesting conditional certification of the three classes and that notice of the lawsuit be sent to the class members to afford them the opportunity to "opt-in" to the collective action in accordance 29 U.S.C. §216(b). *Motion (#11)*. On January 22, 2013, the Court conditionally certified the Uniform Class and authorized the sending of notice of this action to all of Defendant's present or former employees who were or are required to wear uniforms. *Order (#30), pg. 22.* The Court also conditionally certified the Satellite Bank Class, but limited it to employees who worked in the Slot Operations Department and Pizzeria. *Id.* According to Defendant, 903 individuals have opted-in to the Uniform Class. Nineteen individuals have opted-in to the Satellite Bank Class. Eighteen of these individuals were employed in the Slot Operations Department and one employee worked as a cashier in the Pizzeria. *Defendant's Opposition (#91), pg. 2; Exhibit 1, Navarro Declaration*, ¶¶ 4, 6, 7.[1]

In her Renewed Motion for Circulation of Notice (#76), Plaintiff requests that the Court expand the conditional certification of the Satellite Bank Class to all of Defendant's hourly paid, nonexempt employees who were/are required to obtain funds from the cashier or electronic banking system to perform their job duties. Plaintiff argues that there is new evidence showing that employees in other departments of the Cosmopolitan were also required to obtain their cash banks before clocking-in and to return them after clocking-out. Before addressing this new evidence and the arguments made by the parties, the Court first summarizes the basis for its January 13, 2013 order which limited the Satellite Bank Class to employees in the Slot Operations Department and the Pizzeria.

---

[1] The parties stipulated to stay the conditional certification and running of the statute of limitations as to the "Overtime Rate Calculation Class" pending a decision regarding the legal viability of Plaintiff's claim with respect to this class. *Order (#30), pgs. 16-17.*

Plaintiff Darlene Lewis submitted a declaration in support of her initial motion for circulation of notice stating that she was employed by the Cosmopolitan as a guest services representative from November 10, 2010 until May 7, 2012.  Ms. Lewis testified that as a guest services representative, she carried a cash bank which she was required to obtain from the cashier at the CoCage prior to clocking-in to the employee timekeeping system.  She was also required to turn in her cash bank after clocking-out at the end of her shift.  *Lewis Declaration (#11-3)*, ¶¶ 7-10.  Ms. Lewis was employed in the Slot Operations Department.

Plaintiff also submitted a declaration of Brianne Adame who stated that she was employed as a cashier in the Cosmopolitan Pizzeria from the end of January 2011 until August 2011.  Ms. Adame stated that she was required to obtain her cash bank from the cashier at the CoCage.  She further stated that she was instructed by her manager that it was Cosmopolitan policy to have all employees who handle a cash bank to do so before they clock-in and after they clock-out of the timekeeping system.  Ms. Adame stated that she refused to follow this policy because she felt she should be compensated for the time expended in obtaining and returning her cash bank.  She stated that she was reprimanded by her manager for not complying with the policy.  *Adame Declaration (#11-4)*, ¶ 7.

Defendant submitted a declaration by Daniel Espino, "Vice-President of People" (Human Resources) denying that Defendant has at anytime had a companywide policy that required employees to obtain their funds from the cashier or electronic banking system prior to clocking-in and to return the funds after clocking-out.  *Opposition (#20), Exhibit 1, Espino Declaration.*  Defendant asserted that the procedures in the Slot Operations Department relating to employee cash banks were unique to that department.  Only employees in the Slot Operations Department obtain their cash bank from cashiers at the CoCage.  All other employees who carry cash do their banking at the Banking Electronic System ("BES") which is a fully automated system.  Defendant also produced a copy of a written Slot Department policy, with a revised date of July 9, 2012, stating that all personnel who require keys, radios or pouch funds must obtain them after clocking-in and must not clock-out until after they turn in their pouch, radio and keys.  Plaintiff, however, produced a written Slot Department policy dated December 5, 2010 which required employees to obtain their

keys, radios and pouch funds before clocking-in and to turn in their keys, radios and pouch funds after clocking-out.  Plaintiff's counsel has also asserted that Defendant changed its clock-in and clock-out policies in July-August 2012 after it became aware that Plaintiff's counsel was pursuing similar claims against other employers.

Defendant also submitted a declaration from its Director of Labor Analysis, Michael Berry, who stated that the Cosmopolitan has employees in approximately 20 different classifications spread across approximately 34 different departments who have cash bank duties.  *Opposition (#20), Exhibit 7, Berry Declaration.* Mr. Berry stated that only the employees in the Slot Operations Department obtain their cash bank from cashiers at the CoCage.  Employees in all other departments, including the Pizzeria, obtain their cash funds through the BES.  Mr. Berry also stated that there never has been any companywide policy that required employees to perform their banking activities off the clock.  He stated that the Food & Beverage Department, which includes the Pizzeria, has written "Standard Operating Procedures" ("SOP's") that require employees to obtain their cash banks after clocking-in and to return their cash banks before clocking-out.

Defendant submitted a Food & Beverage SOP regarding "Banking Electronic System," dated January 1, 2010, which stated that employees "must clock-in before attaining house issued bank," and clock-out only after the employee has dropped his/her house issued bank into the revenue drop slot.  *Id., Exhibit 9.*  Defendant also submitted a Food & Beverage SOP with a revised date of August 3, 2012 which had the same requirement.  *Id., Exhibit 10.*  Plaintiff disputes the validity of the January 1, 2010 SOP because the purported date of the document was many months before the Cosmopolitan opened for business.  Plaintiff also asserts that the SOP with the revised date of August 3, 2012, is consistent with Defendant's change of its clock-in/clock-out policies at or about that time.

Pursuant to the lenient standard that applies to the conditional certification of an FLSA collection action class at the beginning of a case, *see Order (#30), pg. 10*, the Court found that Ms. Lewis's declaration, combined with the Slot Operations Department policy that was in effect prior to July 9, 2012, supported conditional certification of the Satellite Bank Class with respect to employees in that department.  Although evidence of such a policy was less persuasive with respect

4

to the Pizzeria, the Court found that Ms. Adame's statement that she was informed of the policy by her manager and was reprimanded for not following it, was sufficient to support conditional certification for employees who worked in the Pizzeria as well.  The Court concluded, however, that Plaintiff had not made a sufficient showing for conditional certification of the Satellite Bank Class with respect to Defendant's other departments or areas of operation.

On July 22, 2013, the Court approved the parties' Updated Stipulated Discovery Plan and Scheduling Order (#37) which stated that "[d]iscovery will be needed on all matters set forth in the Complaint and the defenses asserted by Defendant thereto."  *Scheduling Order, pg. 3.*  The discovery plan proposed two phases of discovery and further stated: "Phase 1: The parties will engage in discovery related to the determination of what, if any, is the proper scope of Rule 23 proposed class and/or sub-classes identified in Plaintiff's [Complaint] and the similarly situated requirements under the FLSA."  *Id., pg. 4.*  The parties requested 180 days to complete Phase 1 discovery.

Defendant states that during Phase 1 discovery, it noticed the depositions of 34 opt-in plaintiffs, of which 16 were completed.  Defendant also propounded requests for production of documents to Plaintiff.  In addition, Defendant states that it identified 12 company witnesses who have knowledge relevant to Plaintiff's claims, produced 331 pages of documents and provided a list of 7,231 current and former employees, as well as copies of timekeeping (punch-in and punch-out) data.  Defendant also identified as relevant, additional documents that were disclosed in a related state court action.  *Defendant's Opposition to Plaintiff's Renewed Motion (#91), Declaration of Peter Navarro*, ¶ 8.  Plaintiff deposed only Defendant's witness designated as the person most knowledgeable regarding banking duties.  *Id.*, ¶10.

On December 11, 2013, Defendant took the deposition of George Sproule who opted-in as a plaintiff in the Uniform Class.  Mr. Sproule testified that he has worked as a bartender/mixologist at the Cosmopolitan since November 10, 2010.  Under questioning by Plaintiff's counsel, Mr. Sproule testified as follows:

> Q.    Was there a time during your employment with the Cosmopolitan that you had to obtain your cash bank before you clocked in?

1

2          A.    There wasn't necessarily a requirement that I would have to
                 have my bank before I clocked in.  But they had some
3                contradictory policies that I had to be ready, behind the bar,
                 with all my equipment ready to go ten minutes before my
                 shift.  But I could only clock in seven minutes before my
4                shift.

5          Q.    So the policy was that you had to be ready and able to work as
                 of ten minutes prior to your shift?

6          A.    Yes.

7      *Renewed Motion for Circulation of Notice (#76), Exhibit B, Sproule Deposition, pg. 42:1-*

8      *13.*

9          Mr. Sproule further testified that during the first year and a half of his employment, prior to

10     clocking-in, he would first obtain currency from the automated banking system.  He then went to

11     the cashier cage to buy coinage, after which he clocked-in and proceeded to his bar/work station.

12     *Id., 45:15-23.*  Mr. Sproule testified that he returned the funds to the automated banking system

13     after clocking-out at the end of his shift.  *Id., 47:6-22.*  Mr. Sproule believed all of the other

14     bartenders at the Cosmopolitan were required to comply with this policy.  *Id., 55:20-56:2.*  He

15     testified that the policy or procedure was changed a year and a half into his employment.  "The new

16     procedure was that you had to be clocked in the entire time you had possession of your bank."  *Id.,*

17     *50:10- 14.*  He testified that under the latter policy, he has to clock-in early in order to obtain his

18     cash bank and be at his bar by the start of his shift.  Mr. Sproule stated that he has never been

19     disciplined for arriving late at his work station after clocking-in in a timely manner.  *Id. pg. 54:12-*

20     *22.*

21         In response to Mr. Sproule's testimony and Plaintiff's Renewed Motion, Defendant

22     submitted a declaration by Gregg Pattle, who has served as a Beverage Manager and is currently a

23     Bar Manager at the Cosmopolitan.  Mr. Pattle states that he has been employed in these positions

24     since January 2011.  Mr. Pattle states that during his employment at the Cosmopolitan:

25         [T]he Company's policy has always been to require mixologists (and
           where applicable, bartenders) to conduct their banking activities
26         while on-the-clock.  There is not, and to my knowledge there has
           never been, any Company-wide policy requiring employees to
27         perform baking (sic) activities before clocking in at the start of their
           shift or after clocking out at the end of the shift.  If an employee
28         chooses to engage in banking activities off-the-clock, he/she does so

                                           6

1

2

> in violation of Company policy.  Furthermore, there has never been a
> Company policy requiring an employee to conduct their banking
> activities prior to when the employee's shift actually begins.

3    *Opposition to Renewed Motion (#91), Exhibit 5, Pattle Declaration*, ¶ 7.

4         Mr. Pattle further states that he has never required a mixologist or bartender to conduct

5    banking activities off-the-clock.  He indicated that on two occasions, he observed a mixologist or

6    bartender attempt to engage in banking activities off-the-clock and instructed them to clock back in

7    before continuing with his/her banking activities.  *Id.*, ¶ 8.  He has never disciplined an employee

8    for conducting banking activities on-the-clock.  ¶ 9.

9         Defendant also submitted a declaration by Kent Green who has been the Cosmopolitan's

10   Director of Banquets since February 2010.  Mr. Green also states that to his knowledge there has

11   never been any companywide policy requiring employees to perform banking activities before

12   clocking in at the start of their shift or after clocking out at the end of the shift.  *Opposition to*

13   *Renewed Motion (#91), Exhibit 11, Green Declaration*, ¶ 4.

14        Defendant states that on December 19, 2013, Plaintiff's counsel requested a three month

15   extension of the Phase 1 discovery to conduct depositions.  Defendant agreed to a 30-day

16   extension.  *See Stipulation and Order to Extend Phase 1 Discovery Deadline (#71).*  Plaintiff,

17   however, did not notice any depositions during that 30-day extension.  *Defendant's Opposition to*

18   *Plaintiff's Renewed Motion (#91), Declaration of Peter Navarro*, ¶¶ 14-15.  Plaintiff has not

19   disputed Defendant's assertion that she did not conduct discovery in this case, other than the one

20   Rule 30(b)(6) deposition and to attend depositions of individuals that Defendant deposed.

21                                   **DISCUSSION**

22        Plaintiff argues that Mr. Sproule's deposition testimony supports her contention that

23   Defendant had a companywide policy that required employees to obtain their cash banks prior to

24   clocking-in and to turn in their cash banks after clocking-out.  Based on Mr. Sproule's testimony,

25   Plaintiff asserts that this policy or practice applied to employees who used the electronic banking

26   system, as well as to employees who obtained their cash funds from the cashier in the CoCage.

27   Plaintiff, therefore, argues that the Court should amend its previous order conditionally certifying

28   the Satellite Bank Class and authorize the sending of notice to all of Defendant's employees who

                                          7

1   used a cash bank to perform their jobs.

2        Plaintiff also argues that Mr. Sproule's testimony shows that even after the Defendant

3   changed its policy or practice, employees are still not being paid for the full amount of their work

4   time.  Plaintiff contends that employees must clock-in early so that they have enough time to obtain

5   their cash funds and report to their work stations at the start of their shifts.  Because Defendant also

6   applies a policy which "rounds" an employee's clock-in time to the nearest quarter-hour, however,

7   Plaintiff argues that employees are still deprived of pay for the actual time that they work.  Under

8   the rounding policy, an employee who clocks-in at 7:53 a.m. will be deemed to have clocked-in at

9   8:00 a.m.  (An employee who clocks-in at 7:52 a.m. is deemed to have clocked-in at 7:45 a.m.)

10  Thus, employees who clock-in no more than seven minutes before the start of their shift in order to

11  obtain their cash banks, will not be paid for that time because of the rounding policy.

12        The Court first addresses Plaintiff's allegation regarding the effect of Defendant's rounding

13  policy on employees who obtain their cash banks after clocking-in.  The Complaint alleges a claim

14  on behalf of Plaintiff Darlene Lewis and all other similarly situated employees who were required

15  to obtain their cash banks before clocking-in and to return their cash banks after clocking-out.

16  There are no allegations in the Complaint relating to the effect that Defendant's rounding policy or

17  practice has on employees who clock-in prior to obtaining their cash banks.  Moreover, the

18  representative Plaintiff, Darlene Lewis, does not claim that she was the victim of any such rounding

19  policy or practice.  She therefore cannot represent the interests of employees who fall within such a

20  class.  The Court agrees with Defendant that it would not be proper to conditionally certify an

21  FLSA class that is not predicated on a claim alleged in the Complaint and where the representative

22  plaintiff is not a member of the class for which conditional certification is sought.[2]

23  _____

24        [2] This does not preclude other employees from filing an action against Defendant based on its
    alleged rounding policies.  In *Alonzo v. Maximus, Inc.*, 832 F.Supp.2d 1122, 1126 (C.D. 2011), the court
25  noted that the United States Department of Labor has adopted a regulation, 29 C.F.R. § 785.48(b), which
    permits employers to use a rounding policy for recording and compensating employee time so long as the
26  employer's rounding policy does not consistently result in a failure to pay employees for time worked.  The
    court stated that an employer's rounding practices comply with § 785.48(b) if it applies a consistent
27  rounding policy that, on average, favors neither overpayment nor underpayment.  *Id.  See also Cummings v.*
    *Starbucks Corp.*, 2013 WL 2096435, *2 (C.D.Cal. 2013).
28

Turning to whether the Satellite Bank Class should be expanded to include employees in departments other than the Slot Operations Department and the Pizzeria, Plaintiff argues that the Court should apply the same lenient standard for conditional certification that applied to her initial motion for circulation of notice.  She further argues that under this lenient standard, Mr. Sproule's deposition testimony provides sufficient information to justify expansion of the class.

As stated by this Court in its previous order:

> At the first stage, the court relies "primarily on the pleadings and any affidavits submitted by the parties," [to decide] "whether the potential class should be given notice of the action."  *Davis, supra,* at *9, citing *Leuthold v. Destination America, Inc.,* 224 F.R.D. 462, 466 (N.D. Cal. 2004).  A fairly lenient standard is applied at this stage because the court has "minimal evidence" to make its determination. *Mooney v. Aramco Services, Co.,* 54 F.3d 1207, 1213-14 (5th Cir. 1995); *Kane v. Gage,* 138 F.Supp.2d 212, 214 (D. Mass. 2001).  A plaintiff need only make substantial allegations that the putative class members were subject to a single decision, policy, or plan that violated the law.  *Mooney,* 54 F.3d at 1214 n. 8.  *See also Byard v. Verizon West Virginia, Inc.,* 2012 WL 5249159, *2 (N.D. W.Va. 2012) ("District courts in this Circuit have found conditional certification appropriate where plaintiffs put forward at least a 'modest factual showing' that the members of the putative class were victims of a common policy or practice that violated the FLSA.") The Sixth Circuit has given implicit approval to the two step approach and the lenient standard applied at the first step.  *Comer v. Wal-Mart Stores, Inc.,* 454 F.3d 544, 546-547 (6th Cir. 2006).

*Order (#30), pg. 11.*

Based in part on this Court's decision in *Luksza v. TJX Companies, Inc.*, 2012 WL 3277049 (D.Nev. 2012), Defendant argues that because Plaintiff had the opportunity to conduct discovery related to the proper scope of the classes in this action, her renewed motion for circulation of notice should be evaluated under a higher evidentiary standard.

In *Luksza v. TJX Companies, Inc.*, 2012 WL 3277049, at *8-*9, this Court stated that where the parties have had an opportunity to conduct pre-certification discovery, courts tend to hold plaintiffs to a higher standard of proof.  *See, e.g.*, *Olivo v. GMAC Mortg. Corp.*, 374 F.Supp.2d 545, 548 (E.D. Mich. 2004) (requiring "modest" factual support for class allegations where discovery had been allowed on the issue of collective action certification); *Thiessen v. Gen. Elec. Capital Corp.*, 996 F.Supp. 1071, 1081 (D. Kan. 1998) (adopting an "intermediate" approach in analyzing the "similarly situated" issue where the parties had engaged in three months of

9

discovery); *Ray v. Motel 6 Operating, L.P.*, 1996 WL 938231 at 4 (D. Minn. 1996) (declining to apply lenient standard at the notice stage because the facts before the Court are extensive); *see also Hinojos v. Home Depot*, 2006 WL 3712944 (D. Nev. 2006) (applying second step analysis, noting that it was clear that the named plaintiffs were not similarly situated, and that the action would not be manageable).

In *Bouaphakeo v. Tyson Foods, Inc.*,  564 F.Supp.2d 870, 893 (N.D. Iowa 2008),  the court further examined the two-step process and noted that

> the level of proof required at each stage in the FLSA collective action certification process is largely dependent upon the amount of information before the court. At the first step, when less information is before the court, plaintiffs simply need to come forward with a "factual basis," *Dietrich*, 230 F.R.D. at 577, a "colorable basis," Smith, 404 F.Supp.2d at 1149, or "substantial allegations," that the existing plaintiffs and putative plaintiffs "were together the victims of a single decision, policy or plan," *Davis*, 408 F.Supp.2d at 815. At the second step, the court has much more information and is in a position to "make a factual determination on the similarly situated question," *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), and therefore "plaintiffs must clear a higher hurdle to continue," *Frank*, 2007 WL 2780504, at *3.

Although the court in *Tyson* found it proper to proceed with the first step analysis, the court stated that "it cannot overlook the almost six months of substantial class discovery that the parties have conducted and the valuable information before the court that is relevant to the certification of Plaintiffs' collective action under the FLSA." *Id.* at 895.  The *Tyson* court therefore adopted what courts have labeled an "intermediate approach."  Essentially, where the parties have conducted discovery, courts will consider all the evidence before it and apply a heightened standard in making a determination of conditional certification.  *See Villanueva-Bazaldua v. TruGreen Ltd. Partners*, 479 F.Supp.2d 411, 415 (D.Del. 2007) ("District courts in other circuits have adopted an intermediate approach to the 'similarly situated' inquiry when the parties voluntarily engage in discovery prior to a decision on conditional certification."); *Jimenez v. Lakeside Pin-nPac, LLC*, 2007 WL 4454295, at *3 (W.D. Mich, 2007) (stating, because the parties had engaged in six months of pre-certification discovery, that "the Court will review Plaintiffs' allegations and affidavits in conjunction with the evidence gleaned through discovery").

. . .

Application of the intermediate standard is consistent with this district's prior decisions in *Fetrow-Fix v. Harrah*, 2011 WL 6938594 (D.Nev. 2011) and *Hinijos v. Home Depot*. In *Fetrow-Fix*, plaintiffs sought class certification based on allegations that the defendants failed to pay non-exempt hourly employees straight time and overtime compensation for mandatory attendance at pre-shift meetings. 2011 WL 6938594, *1. The parties conducted extensive discovery prior to bringing the issue of conditional certification before the court. *Id.* In response to plaintiffs' arguments that the court should not evaluate factual disputes, credibility or merits of the claims at the first stage, the court noted,

> Given the extent of the discovery that has been conducted by the Plaintiffs, the court will not consider the evidence in the record supporting the Plaintiffs' claims they are similarly situated to the putative class, while ignoring the discovery suggesting they are not. Having reviewed the voluminous moving and responsive papers and attached deposition transcripts, declarations and other exhibits, the court is simply not persuaded that the Plaintiffs have established that putative class members were subjected to a common decision, policy or plan that violated the FLSA. For these reasons the court concludes that it would not serve the interests of judicial economy to attempt to resolve the potential claims of a putative class consisting of 85,000 employees in 35 separate properties nationwide in this action. The court will therefore deny the motion to conditionally certify a collective action.

*Id.* at *8.

In *Hinojos v. Home Depot*, plaintiffs alleged unpaid overtime under the FLSA. 2006 WL 3712944. After extensive discovery took place, the court stated that "there is a sufficient evidentiary record to determine whether this action can be managed on a collective basis." *Id.* at *2. The court applied a heightened standard and found that it was clear that the plaintiffs were not similarly situated and the proposed class would not be manageable. *Id.*

In this case, the parties had a seven month period in which to pursue discovery relating to the proper scope of the proposed Uniform Class and Satellite Bank Classes. Plaintiff does not dispute that she conducted very little discovery during that period. Other than Mr. Sproule's testimony which was obtained during his deposition taken at the end of the Phase 1 discovery period, Plaintiff did not pursue discovery regarding whether employees in departments other than Slot Operations and the Pizzeria were required to conduct their banking activities off-the-clock.

Mr. Sproule testified that during the first year and a half of his employment, he was required to perform his banking activities off the clock.  He also testified, however, that "there wasn't necessarily a requirement that I would have to have my bank before I clocked in."  Rather, the requirement that he be ready to start his shift ten minutes before it was scheduled to start and that he could only clock-in seven minutes before the start of his shift, made it necessary for him to obtain his cash bank before he clocked in.  Mr. Sproule's testimony, however, is contradicted by the declarations of Mr. Pattle and Mr. Green, both of whom state that there was no company policy that required bartenders or mixologists to do their banking activities off-the-clock.  Mr. Pattle also stated that he instructed employees who were doing their banking off-the-clock to clock-in.

Plaintiff argues that because the Court did not conditionally certify the Satellite Bank Class beyond the Slot Operations Department and Pizzeria, he was not authorized to conduct discovery to determine whether employees in other departments were required to do their banking activities off-the-clock.  This is not true.  The January 22, 2013 order only declined to conditionally certify the Satellite Bank Class on a broader basis because Plaintiff had not produced sufficient evidence to show that the alleged policy or practice applied outside the Slot Operations Department and Pizzeria.  The Court did not preclude Plaintiff from conducting further investigation or discovery in an attempt to demonstrate that the policy or practice regarding off-the-clock banking had broader application.  The discovery plan and scheduling order also did not limit discovery regarding the Satellite Bank Class to employees in the Slot Operations Department and the Pizzeria.  Nor is there any evidence that Defendant objected to or refused to produce discovery regarding whether employees in other departments were required to perform their bank activities off-the-clock.  It also appears that Plaintiff's counsel was able to question Mr. Sproule about his banking activities without any objection by Defendant's counsel that such questioning was outside the scope of discovery  permitted by Order (#30) or the discovery plan and scheduling order.

## CONCLUSION

In the face of the contrary declarations of Defendant's officers and managers, as well as the Food & Beverage Department's written policies, the Court finds that Mr. Sproule's deposition testimony fails to provide a sufficient basis for expansion of the Satellite Bank Class.  It would also

be unreasonable to apply the lenient standard for conditional class certification at this stage in the litigation, where Plaintiff has forfeited the opportunity to engage in class discovery.  To allow conditional certification of a broader Satellite Bank Class would result in a new round of discovery relating to the scope of that class and unnecessarily delay the resolution of this action.  It would also not be proper to conditionally certify a class based on the effect Defendant's alleged rounding policy has on employees' banking activities, where the Complaint alleges no such claim and the representative Plaintiff does not claim that she was a victim of such policy or practice.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Renewed Motion for Circulation of Notice Pursuant to 29 U.S.C. § 216(b) Re: Bank Class (#76) is **denied**.

DATED this 8th day of April, 2014.

GEORGE FOLEY, JR.
United States Magistrate Judge