Mark R. Thierman, Nev. Bar No. 8285
Joshua D. Buck, Nev. Bar No. 12187
Leah L. Jones, Nev. Bar No. 13161
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, Nevada  89511
Telephone: (775) 284-1500
Fax: (775) 703-5027

*Attorneys for Plaintiffs*

Elayna J. Youchah, Esq., Nev. Bar No. 5837
Peter D. Navarro, Esq., Nev. Bar No. 10168
JACKSON LEWIS LLP
3800 Howard Hughes Parkway
Suite 600
Las Vegas, NV 89169
Telephone:  (702) 921-2460
Fax:  (702) 921-2461

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DARLENE LEWIS, on behalf of herself and all others similarly situated,<br><br>             Plaintiff,<br>    vs.<br><br>NEVADA PROPERTY 1, LLC, d/b/a The Cosmopolitan of Las Vegas; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.:  2:12-cv-01564-RFB-GWF<br><br>**JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT**<br><br>[Motion for Attorneys' Fees and Costs filed concurrently herewith] |

Plaintiff Darlene Lewis ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her counsel of record, and Defendant NEVADA PROPERTY 1 LLC ("Defendant"), by and through its counsel of record, hereby move the Court for an order granting final approval of the Parties' "Joint Stipulation of Settlement and Release between Plaintiff and Defendant." *See* Joint Stipulation and Settlement Agreement, previously filed as Docs. 149-1 and 150 (hereinafter

"Settlement," "Agreement," or "Settlement Agreement").[1]  The Court preliminarily approved the Parties' settlement on August 12, 2015.  *See* Doc. 158.

This Motion is made pursuant to Federal Rule of Civil Procedure 23(e) and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.  This Motion is based on the following memorandum of points and authorities, the Parties' Settlement Agreement, the accompanying declarations, exhibits, and proposed order, all other papers on file in this action, and such other evidence or arguments the Court may receive before deciding this Motion.

Dated:  November 20, 2015                                  THIERMAN BUCK, LLP

                                               By: /s/Mark R. Thierman
                                                  Mark R. Thierman
                                                  Joshua D. Buck

                                                 *Attorneys for Plaintiffs*

Dated:  November 20, 2015                                  JACKSON LEWIS LLP

                                               By: /s/Elayna J. Youchah
                                                  Elayna J. Youchah
                                                  Peter D. Navarro

                                                 *Attorneys for Plaintiffs*

---

[1] For purposes of consistency, and unless otherwise noted, all terms herein shall have the same meaning and definition as in the Parties' Settlement Agreement.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Subject to Court approval, Plaintiffs have settled their claims and those of Class Members for a maximum Settlement Amount of $9,750,000 on a claims made basis. *See* Settlement at ¶¶ 12(c) and (d). The final class list consisted of 8,404 Class Members consisting of 819 class members in the Opt In Group and 7,585 class members in the Not Opt In Group. *See* Declaration of Jacki Hitomi ("Hitomi Dec.") at ¶ 5. Of those 8,404 Class Members, 8,309 class members, or approximately 99% of the class, received notice of the settlement by direct mail. Of the 8,404 Class Members, only 72 (approximately 8 tenths of one percent) of the Class Members have requested exclusion. As a result of this mailing, 2,592 class members or over 30% of the entire class have affirmatively claimed their pro rata share of the settlement amount. The average estimated settlement amount is $1,059.82, with the median being $1,066.91. The highest estimated settlement amount is $2,374.81. *See id.* at ¶ 16.

In sum, this is one of the most successful settlement distributions of a claims made settlement in the State of Nevada. The amount of money claimed by the class is $3,606,567.55, approximately 60.61 % of the Net Settlement Amount. Including attorneys' fees, costs, and the revised proposed enhancements, Defendants will pay out approximately 6,887,567.55, which is approximately 70% of the total settlement value. A "claims made" settlement is almost inevitable in an Fair Labor Standards Act ("FLSA") class action because of the mandatory "opt-in" requirements of Section 16(b) of the Act, 29 U.S.C. §216(b). Attorney's fees are less than half the amount of money actually to be paid and less than 30% of the total settlement fund.

The proposed Settlement satisfies all of the criteria for final settlement approval under federal law because it is fair, adequate, and reasonable. *See Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 575-76 (9th Cir. 2004). First, the settlement provides a payout of $2.06 per shift for workers who Plaintiff alleges worked an extra fifteen to thirty minutes each shift at $15.00 per hour "off the clock." Under the settlement, each Class Member's is being paid for approximately 8.5 minutes of work per shift worked during the Class Period, based on an average hourly wage among the Settlement Class of $15.00 per hour. As previously discussed

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027

- 3 -
MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT

with the court, this equals approximately 43% of the total potential recovery that could have been attained (without waiting penalties). As the recently acknowledged in the case *Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625 (N.D. Cal. June 22, 2015), a settlement fund **including attorney's fees and costs** of 30 to 35% of potential recovery is considered a fair and reasonable settlement. In this case, the result is 43% of expected recovery at trial, **without attorney's fees and costs**. The results for the class are outstanding, and therefore, final approval should be granted.

Second, the extremely high participation rate warrants approval. In Class Counsel's experience, this is a positive response. Counsel for Plaintiff has been the attorney or lead attorney in almost 300 class actions. In his experience, the claims rate in this case of more than thirty percent with more than 60% of the funds being claimed is a very positive result. *See* Declaration of Mark R. Thierman (Thierman Dec. at ¶ 44). Less than 1% of class members have excluded themselves from the settlement.[2] Furthermore, no objections have been filed with the Claims Administrator, Class Counsel, or the Court. (Hitomi Dec. at ¶ 13; Thierman Dec. at ¶ 44.)

This positive response by the Class Members to the Settlement—including minimal exclusions and ***no*** objectors—provides strong support that final settlement approval is appropriate. *See Stoetzener v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (finding that objections of 29 members out of a settlement class of 281—over 10 percent—"strongly favors settlement"); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding that objections from only 16 percent of a class was "persuasive" that a settlement was adequate). The high turnout also dispels any hint of collusion thereby relieving the court of the obligation to make further inquiry into the issue of attorney's fees. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011). Because the Settlement provides a substantial

---

[2] In Plaintiff's counsel experience, people exclude themselves for many reasons not related to the quality of the settlement itself. Some class members may be affiliated with the management of the company, or are ideologically opposed to claims against employers in general or litigation of any sort. Few, if any, withdraw and then sue on their own for a greater amount. The Court should not draw any negative inference against the settlement from these unexplained exclusions.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027

benefit to the Parties, Class Members, Plaintiffs request that the Court approve the parties' Settlement as fair, adequate, and reasonable, and enter judgment accordingly.

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs' Lawsuit

Plaintiff is a former hourly non-exempt employee of Defendant. Plaintiff alleges that she and other similarly situated employees were not compensated their regular rate of pay for all hours worked, or at one and one half (1 ½) times their regular hourly rate of pay for all the hours that they worked over eight (8) in work day or over forty (40) in a workweek. Plaintiff filed the First Amended Complaint on September 24, 2012. *See* Doc. 121 ("Plaintiff's FAC"). Plaintiff specifically alleged seven (7) causes of action against Defendant: (1) Failure to Pay Wages for All Hours Worked in Violation of 29 U.S.C. § 201, et seq.; (2) Failure to Pay Overtime in Violation of 29 U.S.C. § 207; (3) Failure to Compensate for All Hours Worked in Violation of NRS 608.140 and 608.016; (4) Failure to Pay Minimum Wages in Violation of NRS 608.140 and 608.250; (5) Failure to Pay Overtime in Violation of NRS 608.140 and 608.018; (6) Failure to Pay the Correct Overtime Rate in Violation of 29 U.S.C. § 207(e); (7) Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.140 and 608.020-050. *See id.* A Second Amended Complaint, which is the operative Complaint, was filed pursuant to the Settlement and includes two additional claims of (8) failure to include certain payments for commissions and non-discretionary gratuities and bonuses in the regular rate for purposes of correctly calculating the overtime rate and (9) employer errors in rounding time to the nearest fifteen minutes so as not to systematically favor the employer. *See* Doc. 161.

As a result of these allegations, Plaintiff seeks to recover unpaid minimum wages and all straight time wages, overtime, attorney's fees, costs, interest and penalties for themselves and the following class of individuals:

> The Uniformed Subclass: All current and former hourly paid employees who, at any time during the Class Period, were required to change into and/or out employer-mandated uniforms on company premises (collectively "Uniformed Subclass Members").
>
> The Satellite Bank Subclass: All current and former hourly paid

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027

employees who, at any time during the Class Period, were required to frequent the "satellite bank," or any other money reserve location pre-shift and/or post-shift (collectively "Satellite Bank Class Members").

The Overtime Rate Subclass: All current and former hourly paid employees who, at any time during the Class Period, were paid a lunch stipend and/or who were paid commissions and other non-discretionary bonuses, which sums were not included in the regular rate for purposes of calculating overtime (collectively "Overtime Rate Subclass").

The Rounding Class: All current and former hourly paid employees who, at any time during the Class Period, were subject to a policy of improper rounding of time worked,

The Wages Due and Owing Subclass: All current and former employees of Defendant who, at any time during the Class Period, were terminated or otherwise separated from employment (collectively "Wages Due and Owing Subclass Members").

The relevant time period (also known as the "Class Period") encompasses all the hours worked over 8 in a day or over 40 in a workweek from October 1, 2010 through April 30, 2015 ("Class Period").

### B. Negotiation and Settlement

Upon receipt of Plaintiffs' Complaint, the Parties conducted significant investigation of the facts and law. Such discovery and investigation have included, *inter alia*, the review and exchange of thousands of pages of documents, over 20 depositions (including the depositions of opt-in plaintiffs, and corporate persons most knowledgeable), class wide surveys, mediations, and interviews. The Parties engaged in settlement negotiations over the course several months. (Thierman Decl. at ¶ 45.) The parties first engaged in mediation with Jeffery Ross of Oakland who specializes in employment cases, but were unable to resolve the case at that time. Plaintiff and Defendant both retained experts to opine as to whether a class could be sustained, potential liability, and fairly and accurately quantify potential damages. As a result of the intensive investigation and motion practice conducted in this litigation, the parties were able to assess the relative strengths and weaknesses of each parties' positions, weigh the inherent risks and expenses of continued litigation, and agree upon the proper parameters of evaluating the

potential damages resulting from Plaintiffs' allegations. These discussions resulted in the settlement that has already been submitted to this Court. (*See* Doc. 149-1.)

### III. SUMMARY OF SETTLEMENT TERMS

The Parties' Settlement provides for significant monetary recovery on behalf of the Class, releases those claims alleged or related to the complaint, and sets forth the legally appropriate mechanism for providing notice to the Class of the terms and conditions of the Settlement.

#### A. The Recovery.

The Settlement provides for a maximum settlement amount of $9,750,000 (the "Maximum Settlement Amount"). Settlement ¶ 12(c). The following approximate breakdown applies to payments from the Maximum Settlement Amount as revised in light of this Court's discussion during the preliminary approval argument:

- $5,950,000 was the originally estimated settlement funds available to the class;[3]
- $3,606,567.55 was actually claimed by class members (60.61% of Net Settlement Amount amount)
- $57,000 in settlement administration costs as modified at the preliminary approval hearing;
- $50,000 enhancement to Plaintiff for her participation in the lawsuit;
- $36,000 ($2,000 x 18) in enhancement award to the eighteen opt-in plaintiffs who appeared for depositions in this matter ("Opt-In Deponents");
- $2,868,000 in attorneys' fees, which represents a reduction of $382,000, or almost 12%, in light of the Court's comments at the preliminary approval hearing;[4] and
- $230,000 in actual documented costs.[5] *Id.* ¶ 12(c); ¶ 12(d) and (e)(ii); and ¶ 14.

---

[3] This amount shall be referred to herein as the "Net Settlement Amount."

[4] Plaintiff's Motion for Attorneys' Fees and Costs is filed concurrently with this motion.

[5] The agreement provides for reimbursement of Plaintiff's counsel's actual costs up to $300,000. Plaintiff has produce documentation of actual costs for slightly more than $230,000, and limits its demand for reimbursement accordingly.

The Defendant will pay the employer's payroll taxes on that portion of the settlement amount deemed wages, but no payroll taxes are due on the portion deemed as compensation for liquidated damages, interest and penalties. Class Members' portion of payroll taxes for the corresponding amount will be deducted from the wage payments made to Class Members. *Id.* ¶ 12(c). Settlement awards for participating Class Members will be paid out of the Net Settlement Fund based on the formula described below. The total settlement amount was attained by calculating the total number of shifts worked by members of the class over the Class Period. Each class member is entitled to a proportionate amount based on the percentage of shifts the class member worked as compared with the total amount of shifts worked by the entire class. A shift was defined as more than 6 hours "on the clock". Accordingly, each class member's proportionate amount will equate to approximately 8.5 minutes of work for each shift worked by each class member during the Class Period. Based on an average hourly wage among the Settlement Class of $15.00 per hour, each class member will be eligible to receive approximately $2.06 per shift.

The number of shifts was determined from the employer's normal payroll records. The Parties agreed that any time less than six hours would not constitute a shift. The parties have resolved all disputes concerning covered shifts worked in favor of the employee without Defendant waiving its position to the contrary except in one instance. The one dispute resolved in favor of the employer involved a single individual who was promoted to a salaried supervisor during the class period. Salaried employees are not included in the class definition and are not covered by the settlement agreement. This is an off-the-clock case for hourly paid employees, and Plaintiff's counsel agrees it would be problematic to include salaried employees in any class wide recovery.

This monetary amount represents a significant recovery on behalf of the Class. The settlement pays approximately 43% of their expected maximum recovery at trial, without penalties, and there is a substantial risk of the court or a jury finding a shorter liability period. Thus, even if the class won at trial, damages might not exceed the amount of this settlement, and the judgment could be appealed, resulting in further lengthy delays. The biggest risk to

Plaintiff class is the date, if any, the policy of uniform changing on site is said to have ceased, and whether or not changing on site morphed into a voluntary rather than a mandatory job requirement. The 8.5 minutes per shift represents a compromise better than 43% of the value of the claim without penalties.

### B.     The Release.

Defendant continues to deny liability under any of Plaintiffs' claims. Settlement ¶ 6. The Settlement provides that, in consideration for the Settlement, Class Members who do not file valid requests for exclusion shall release all claims under state, federal[6] or local law arising out of the allegations made in the Action and that reasonably arise or could have arisen out of the facts alleged in the Action as to the Class Members, including but not limited to claims for or related to alleged unpaid wages of any kind, unpaid overtime, waiting time penalties, interest, attorneys' fees and costs, and all other claims and allegations made in the Action and that arise out of or could arise out of the facts alleged in the Action during the Class Period.[7] *Id.* ¶¶ 1(t), 7, and 19.

---

[6] For claims under the FLSA, a court supervised settlement is binding for all opt-in plaintiffs and those who made a claim in this litigation. For those who did not opt in, and did not file a claim, the statute of limitations on the federal claims has run. Unlike Rule 23 claims, which the Court can extinguish for unresponsive class members who receive notice, there is no tolling for FLSA claims under *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). In the context of FLSA collective actions, the "commencement" of the action—or when the tolling begins—is when a plaintiff files his written consent to opt into the lawsuit. 29 U.S.C. § 256 ("[I]n the case of a collective or class action ... [the action] shall be considered to be commenced in the case of any individual claimant ... on the subsequent date on which such written consent is filed in the court in which the action was commenced."). *See Groshek v. Babcock & Wilcox Tubular Products Div.*, 425 F.Supp. 232, 234 (E.D.Wis.1977) (tolling in a FLSA collective action begins when plaintiffs filed written consents and not on the original filing date).

[7] Specifically, "Released Claims" means that upon final approval by the Court, each member of the Settlement Class who has not submitted a timely and valid Request for Exclusion Form, fully and finally releases and discharges The Cosmopolitan, its present and former parent entities, subsidiaries, related or affiliated companies, shareholders, officers, directors, managers, members, employees, agents, attorneys, insurers, successors and assigns, and any individual or entity that could be jointly liable with The Cosmopolitan, arising from any and all applicable local, state and federal law wage-and-hour claims (including, but not necessarily limited to, contractual or common law claims for unpaid minimum wages, straight time wages if greater than minimum wage, unpaid overtime, waiting time or waiting time penalty claims under the

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027

### C. The Settlement Mechanism.

The Parties agreed to use a third-party Claims Administrator to administer the claims process. *Id.* ¶ 13. The Settlement provided for the Claims Administrator to send out notice explaining the terms and conditions of the Settlement to all Class Members. *Id.* ¶ 1(p); and ¶ 16. Following mailing of the Notice, Class Members had seventy-five (75) days to either do nothing to participate in the Settlement ("Opt-in members"), submit a claim ("Not Opt-in members"), request to be excluded from the Settlement, or object to the Settlement. *Id.* ¶ 16(a); ¶¶ 17-20. The Settlement provided that following the notice period the Court would hold a final "fairness" hearing to provide final review and approval of the Settlement. *Id.* ¶ 24 (a). The Notice advised Class Members about the fairness hearing and their opportunity to attend the hearing and make their views known. At the fairness hearing, the parties will address any issues raised by Class Members or the notice process itself, and the Court will have a second opportunity to review the settlement in full.

The notice and the settlement agreement provided a maximum amount that could be requested by Plaintiff for both Attorney's Fees and Enhancements, and that any final determination of these amounts was to be decided by the Court at the Final Approval stage of proceedings. During the hearing on the preliminary approval, the Court expressed concerns over the amount of the attorneys' fees and the amount of any enhancements for those class members who had opted into the lawsuit and were deposed by Defendant. Also during oral argument on the motion for Preliminary approval, Defendant's counsel accepted Plaintiffs' counsel offer to pay the increased costs of a second mailing (a post card reminder) and the creation of a website so class members could electronically file their claims, with Court approval. The Court granted preliminary approval, but specifically warned counsel to expect a reduction of these two

---

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., Nevada Revised Statutes Chapter 608, Nevada Administrative Code Chapter 608, and the Nevada Constitution), and rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, arising during the Class Period, and/or which arose out of or could have arisen out of the facts alleged in this action. The statute of limitations under the FLSA for those who have not filed consent to sue has long passed, so the release of those claims by non-opt-in class members is merely an exercise of caution.

amounts at the final approval hearing. Plaintiffs' counsel has submitted a separate motion for attorneys' fees to address the fee issue and addresses the opt-in deponent enhancement below.

### IV. THE COURT-APPROVED NOTICE PROCESS

#### A. Preliminary Approval

On August 12, 2015, the Court granted preliminary approval of the Settlement. *See* Doc. 158. In doing so, the Court authorized the sending of notice, claim forms, and exclusion forms to all Class Members, certified the Settlement Classes for settlement purposes, confirmed Plaintiff as Class Representative, confirmed Thierman Buck, LLP as Class Counsel, and confirmed CPT Group, Inc. as the Claims Administrator. *Id.*

#### B. Notice To The Class

The Notice process worked better than predicted by the Claims Administrator. At the preliminary approval hearing, Ms. Hitomi notified the Court that she expected to reach about 95% of the class via direct mail. In fact, the Claims Administrator was able to reach 99% of the class by direct mail. Hitomi Dec. at ¶ 11. In this case, as is typical in most employment class actions, direct mail was exceedingly effective in notifying virtually every class member about the lawsuit and the Settlement. Accordingly, this Court should be satisfied that virtually everyone who wanted to participate in this Settlement has been given a full opportunity to do so.

#### C. Class Participation and Settlement Awards

The class has approved this Settlement with over 60% of the available funds being claimed, less than 1% of class members filed requests to be excluded, and **no** class member filing written objections with the Court as of the date of the filing of this motion.[8] *Id.* at ¶ 16.

---

[8] A few class members have disputed the weeks that they worked, but these claims have been resolved administratively. The only remaining issue is an employee, Ms. Barbara Brana, who filed a claim for additional work weeks not realizing that when she was promoted to a salaried position she was no longer in the class and therefore those weeks would not be compensated. Counsel do not know whether or not Ms. Brana will appear of the final approval fairness hearing to object to the settlment, but if she does so, such an appearance would not techncially be an objection of the Settlement generally, but merely a dispute with the application of the Settlement to her claim, which can be resolved without delaying final acceptance and distribution of the funds to other members of the class.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027

The average settlement payment per Class Member is estimated at $1,059.82 *See id.* The highest estimated settlement payment is $2,374.81. *See id.* This positive response speaks to the fairness, reasonableness, and adequacy of the Settlement. *See* Thierman Dec. at ¶ 29.

## V. THE SETTLEMENT SHOULD RECEIVE FINAL APPROVAL

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004) (noting "strong judicial policy" favoring settlements reached through arms-length, non-collusive negotiations); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement); *Franklin v. Kaypro*, 884 F.2d 1222, 1227 (9th Cir. 1989) ("Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial . . . [t]he economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process."); *see generally Newberg On Class Actions* § 11.41 (4th ed. 2002) ("*Newberg*").

The standard for final approval is whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A settlement is fair, reasonable, and adequate, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation, Fourth* § 21.61 (Fed. Jud. Ctr. 2006) ("*Complex Manual*"). The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). These factors include: (1) the amount offered in the settlement, (2) the reaction of the class to the proposed settlement, (3) the strength of the plaintiffs' case balanced against the "risk, expense, complexity, and likely duration of further litigation" and the "risk of maintaining class action status throughout the trial," (4) the "extent of discovery completed" and the "stage of the proceedings," and (5) the informed views of experienced counsel. *See Hanlon*, 150 F.3d at 1026; *Staton*, 327 F.3d at 959.

These factors are not exclusive, and one factor may deserve more weight than the others depending on the circumstances. *Torrisi v. Tucson Elec. Power Co.*, 8F.3d 1370, 1375 (9th Cir. 1993). In some instances, "one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* at 625 (internal citations omitted). It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness. *Id.* at 628. Indeed, the Court's "role in intruding upon what is otherwise a private consensual agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement taken as a whole, is fair, reasonable and adequate to all concerned." *Schiller v. David's Bridal, Inc.*, No 10-00616, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012) (citing *In re Imperial Corp of Am.*, 92 F.3d 1502, 1506 n.5 (9th Cir. 1996)).

### A. The Settlement Is Presumed To Be Fair.

Significantly, "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Newberg* § 11.42 (4th ed. 2002). Such is the case here. Class Counsel engaged in extensive factual investigation (informally and through formal discovery) and participated in direct settlement discussions. *See* Thierman Dec. at ¶ 45. Class Counsel are experienced in wage-and-hour litigation, and have obtained over half a billion dollars for class members since 1997. *See id.* at ¶ 24. Finally, there are no objectors to the Settlement and less than 1% of class members submitted requests to be excluded from the Settlement. *See, e.g., Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1289 (9th Cir. 1992)

(recognizing that fairness of a class action settlement may be inferred if few class members object to it). Accordingly, the Settlement should be presumed fair.

### B. The Settlement Value Supports Final Approval.

The Settlement provided for a maximum settlement amount of $9,750,000, which represents a significant recovery by Plaintiffs and class members. This is not a settlement where the aggregate figure is large simply because the size of the class is in the tens or hundreds of thousands. Instead, the class size here is relatively small, but class members are eligible for significant financial benefit—an average payment of $1,059.82.

Given the significant legal uncertainty, and the real risk of receiving nothing at the end of the day, the $9,750,000 settlement, and a total payout of $6,887,567.55, represents a reasonable recovery. Although a larger award was theoretically possible by litigating this case to the end of trial, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes" in exchange for certainty and resolution. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

### C. The Class Response Supports Final Approval.

The participating rate in this claims made settlement is high. Slightly over 60% of the entire class fund amount is being claimed. Furthermore, the fact that less than 1% of Class Members opted out and there are no objectors strongly favors final approval. *See Nat'l Rural*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed settlement action are favorable to the class members.")

### D. The Risks of Continued Litigation Support Final Approval.

Having engaged in meaningful discovery and significant discussions regarding their respective legal positions, both parties were able to assess the relative strengths and weaknesses of their claims and defenses. Class Counsel are experienced class-action litigators, and understand that the outcome of class certification, trial, and any attendant appeals are inherently uncertain, as well as likely to consume many more months, even years. *See* Thierman Dec. at ¶ 30-36. Having reviewed relevant data and employment information, counsel for the parties

arrived at a reasonable resolution through a protracted and arm's-length direct negotiation process, which continued into all details of the Settlement Agreement and ancillary documents.

In considering final approval, the Court should weigh the immediacy and certainty of settlement proceeds against the risks inherent in continued litigation. *See Complex Manual* § 21.62. The trial of this action, were it to occur, could easily exceed one month in length. Moreover, individual litigation would not be economical even for those with the finances, sophistication, and tenacity to secure legal representation and persevere through years of individual litigation. The parties' Settlement Agreement, on the other hand, provides immediate relief to all Class Members in a prompt and efficient manner and therefore is consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class-action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

### E. The Recommendation of Experienced Counsel Favors Final Approval.

"[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995). The "recommendations of plaintiffs' counsel should be given a presumption of reasonableness," particularly when counsel has significant litigation experience in similar cases. *Boyd v. Bechtel Corp.*, 485 Supp. at 622; *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."). Hence when evaluating a proposed settlement, a court—absent evidence of fraud, collusion, or the like—should be hesitant to substitute its own judgment for that of counsel. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975).

Here Class Counsel, who have extensive experience prosecuting and litigating employment cases and complex class actions, and who conducted a legal and factual investigation into the claims in this case, and who have actively litigated this case for over a year, firmly believe the proposed Settlement is fair, reasonable, adequate and in the best interest of all Class Members. *See* Thierman Dec. at ¶ 29. Accordingly, this factor also weighs in favor of final approval.

## VI. THE CLASS REPRESENTATIVE ENHANCEMENT SHOULD BE APPROVED

The Named Plaintiff applies to the Court for a total of $50,000 in an enhancement payment for services rendered as a representative of the Class in prosecuting this Action, which is well within the range of reasonableness. *See Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving incentive awards of $300,000 to each named plaintiff in recognition of services to class by responding to discovery, participating in mediation process and taking the risk of stepping forward); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

Here, the Named Plaintiff provided valuable assistance to Class Counsel in explaining Defendant's pay policies and procedures and also incurred personal risk in bringing this lawsuit on behalf of other persons in the Class. *See* Declaration of Darlene Lewis ("Lewis Dec.") at ¶¶ 5-8. Ms. Lewis was an active participant in the discovery and settlement process. She attending mediations and was always available to discuss the substance of the claims on behalf of the class. She also took a substantial risk in stepping forward to act as a named-Plaintiff in this action both professionally and financially. Professionally, Ms. Lewis believes that her career has suffered as a result of her participation in this action. She believes that she has been denied numerous job opportunities because her action in this litigation is public information. *Id.* at ¶ 9. Financially, Ms. Lewis took a signification and real risk that she could be held liable for Defendant's costs if she was unable to prevail at trial. *Id.* at ¶ 10; s*ee also Koehl v. Verio,* 142 Cal. App. 4th 1313, 1328 (2006) (holding named plaintiffs in wage-and-hour class action liable, jointly and severally, for defendant's attorneys' fees where defendant prevailed at trial).)

Such service payments are recognized as serving an important function in promoting class action settlements. For example, in *League of Martin v. City of Milwaukee,* 588 F. Supp. 1004, 1024 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff additional relief, explaining that it is "not uncommon for class members . . . to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit. Given the Named Plaintiffs' active participation in this litigation, and their courage for asserting such an action despite the inherent risks involved in litigation and fear of reprisals, the

requested Enhancement Payment is fair and well-deserved. In addition, there have no objections by Class Members to the Enhancement Payment. Accordingly, the Court should approve Plaintiff's request.

### VI. THE DEPONENT ENHANCEMENT SHOULD BE APPROVED

An enhancement to the deponents in this action in the amount of $2,000 each should be approved given their valuable assistance to both parties in evaluating the strengths and weaknesses of Plaintiff's case. These opt-in plaintiffs were required to attend a deposition which, for most, was an intimidating process. Indeed, many other opt-in plaintiffs who were noticed for a deposition decided to abandon their claim. The opt-in plaintiffs who showed up to answer questions should be rewarded for their responsibility. Ultimately, this enhancement is appropriate and should be approved.

Moreover, the amount now requested by Plaintiff addresses the concern by this Court at the hearing on preliminary approval that the amount originally requested was disproportionate to the recovery of individual class members. An enhancement of $2,000 represents approximately 2 times the average settlement amount recovered by the class and is less than the highest settlement amount received by class members. The enhancement is thus in line with the settlement proceeds and does not disproportionately compensate opt-in deponents for their participation in one 2-3 hour deposition.

### VIII. FINAL CLASS CERTIFICATION SHOULD ALSO BE GRANTED.

No Class Member has objected to class certification or to the appointment of Named Plaintiff as Class representative or to the appointment of Class Counsel. Accordingly, the Court should grant final certification of the Settlement Classes as defined in the Settlement.

/ / /

/ / /

/ / /

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027

## IX. CONCLUSION.

For all these reasons, and based on the information provided, Plaintiffs respectfully ask the Court to enter the proposed Order of Final Approval and Judgment submitted contemporaneously with this Motion.

Dated: November 20, 2015                    THIERMAN BUCK, LLP


By: /s/*Mark R. Thierman*
    Mark R. Thierman
    Joshua D. Buck

*Attorneys for Plaintiffs*

Dated: November 20, 2015                    JACKSON LEWIS LLP


By: /s/*Elayna J. Youchah*
    Elayna J. Youchah
    Peter D. Navarro

*Attorneys for Defendant*

**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027